# 13-1165-cv

# United States Court of Appeals
## for the
## Second Circuit

◆●◆

SHARI L. DEMBIN,

*Plaintiff,*

BURTON T. FRIED,

*Plaintiff-Appellant,*

– v. –

LVI SERVICES, INC., LVI PARENT CORP., SCOTT E. STATE,

*Defendants-Appellees.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

## JOINT APPENDIX
## Volume V of VI (Pages A-826 to A-1063)

JACKSON LEWIS LLP
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4006

– and –

LITTLER MENDELSON, P.C.
One Century Tower, Suite 300
265 Church Street
New Haven, Connecticut 06510
(203) 974-8700

*Attorneys for Defendants-Appellees*

THOMPSON WIGDOR LLP
85 Fifth Avenue
New York, New York 10003
(212) 257-6800

– and –

MADSEN, PRESTLEY & PARENTEAU, LLC
44 Capital Avenue, Suite 201
Hartford, Connecticut 06106
(860) 246-2466

*Attorneys for Plaintiff-Appellant*

i

# Table of Contents

**Page**

Lower Court Docket Entries .................................................... A-1

Motion by Defendants for an Order Granting Summary
    Judgment, Dated April 26, 2012 ........................................... A-13

Defendants' Local Rule 56(a)1 Statement,
    Dated April 26, 2012 ............................................................. A-15

Affirmation of Michael D. Mann, for Defendants, in Support
    of Motion, Dated April 26, 2012 ......................................... A-22

    Exhibit A to Mann Affirmation -
    Email from Brian Simmons to Burton T. Fried,
    Dated September 21, 2010 ................................................... A-28

    Exhibit B to Mann Affirmation -
    Excerpts from Deposition Transcript of Burton T. Fried,
    Dated May 20, 2011 ............................................................ A-30

    Exhibit C to Mann Affirmation -
    Complaint, Dated November 30, 2011................................. A-93

    Exhibit D to Mann Affirmation -
    LVI Services Investment Memorandum,
    Dated October 28, 2005 ..................................................... A-107

    Exhibit E to Mann Affirmation -
    Employment Agreement between Burton T. Fried and
    LVI Services, Inc., Dated November 16, 2005 .................... A-119

    Exhibit F to Mann Affirmation -
    Email from Burton T. Fried to Brian Simmons,
    Dated September 22, 2010 ................................................... A-123

    Exhibit G to Mann Affirmation -
    Email from Burton T. Fried to John Leonard and
    Paul Cutrone, Dated September 21, 2010 ........................... A-125

    Exhibit H to Mann Affirmation -
    Email from Brian Simmons to Scott E. State,
    Dated September 23, 2010 ................................................... A-127

    Exhibit I to Mann Affirmation -
    Email from Scott E. State to Brian Simmons
    and Rajay Bagaria, Dated October 29, 2010 ....................... A-130

ii

**Page**

Exhibit J to Mann Affirmation -
Excerpts from Deposition Transcript of Scott E. State,
Dated May 26, 2011 ............................................................  A-133

Exhibit K to Mann Affirmation -
Email from Burton Fried to Scott E. State,
Dated October 3, 2010 .......................................................  A-151

Exhibit L to Mann Affirmation -
Email from Burton T. Fried to Scott E. State,
Dated October 13, 2010 .....................................................  A-154

Exhibit M to Mann Affirmation -
Email from Robert Hogan to Brian Simmons,
Dated October 3, 2010 .......................................................  A-162

Exhibit N to Mann Affirmation -
Email from Robert Hogan to Scott E. State,
Dated October 5, 2010 .......................................................  A-165

Exhibit O to Mann Affirmation -
Email from Burton T. Fried to Scott E. State,
Dated October 14, 2010 .....................................................  A-168

Exhibit P to Mann Affirmation -
Email from Burton T. Fried to Scott E. State,
Dated October 14, 2010 .....................................................  A-170

Exhibit Q to Mann Affirmation -
Email from Scott E. State to Scott Simmons
and Robert Hogan, Dated October 14, 2010 .......................  A-173

Exhibit R to Mann Affirmation -
Email from Scott E. State to Scott Simmons,
Dated October 19, 2010 .....................................................  A-176

Exhibit S to Mann Affirmation -
Email from Burton T. Fried to Brian Simmons,
Dated October 28, 2010 .....................................................  A-179

Exhibit T to Mann Affirmation -
Email from Brian Simmons to Burton T. Fried,
Dated November 2, 2010 ...................................................  A-182

Exhibit U to Mann Affirmation -
Email from Burton T. Fried to Brian Simmons,
Dated June 23, 2006 ..........................................................  A-186

iii

**Page**

Exhibit V to Mann Affirmation -
Email from Burton T. Fried to Mike Lane,
Dated June 30, 2005 ............................................................   A-189

Exhibit W to Mann Affirmation -
Email from Brian Simmons to Scott E. State
and Rajay Bagaria, Dated November 10, 2010 ...................   A-191

Exhibit X to Mann Affirmation -
Excerpts from Deposition Transcript of Brian Simmons,
Dated May 25, 2011 ............................................................   A-193

Exhibit Y to Mann Affirmation -
Email from Brian Simmons to Burton T. Fried,
Dated November 16, 2010 ...................................................   A-209

Exhibit Z to Mann Affirmation -
Email from Scott E. State to Brian Simmons and
Rajay Bagaria, Dated November 16, 2010 ..........................   A-216

Exhibit AA to Mann Affirmation -
Email from Scott E. State to John Leonard,
Dated November 30, 2010 ...................................................   A-223

Exhibit BB to Mann Affirmation -
Complaint in *Fried v. LVI Services, Inc., et al.*, Southern
District Case No. 10-cv-9308, Filed December 13, 2010 ....   A-226

Exhibit CC to Mann Affirmation -
Amended Complaint in *Fried v. LVI Services, Inc., et al.*,
Southern District Case No. 10-cv-9308, Filed
February 3, 2011 .................................................................   A-254

Exhibit DD to Mann Affirmation -
Charge of Discrimination Filed with the State of Connecticut,
Commission on Human Rights and Opportunities on
May 16, 2011 ......................................................................   A-287

Exhibit EE to Mann Affirmation -
Stipulation of Dismissal with Prejudice in *Fried v.
LVI Services, Inc., et al.*, Southern District Case No.
10-cv-9308, Filed October 27, 2011 ...................................   A-303

iv

**Page**

Exhibit FF to Mann Affirmation -
Opinion and Order of the Honorable Jed S. Rakoff
in *Fried v. LVI Services, Inc., et al.*, Southern District
Case No. 10-cv-9308, Filed October 3, 2011...................... A-306

Exhibit GG to Mann Affirmation -
Docket Entries in *Fried v. LVI Services, Inc., et al.*,
Southern District Case No. 10-cv-9308 .............................. A-342

Exhibit HH to Mann Affirmation -
Email from Robert Hogan to Brian Simmons,
Dated September 19, 2010.................................................... A-360

Exhibit II to Mann Affirmation -
Release of Jurisdiction, Dated October 17, 2011, from the
State of Connecticut, Commission on Human Rights
and Opportunities ................................................................ A-364

Exhibit JJ to Mann Affirmation -
Notice of Appeal in *Fried v. LVI Services, Inc., et al.*,
Southern District Case No. 10-cv-9308, Dated
November 14, 2011 .............................................................. A-367

Exhibit KK to Mann Affirmation -
Scheduling Order of the United States Court of Appeals
for the Second Circuit, Dated March 1, 2012 ...................... A-370

Declaration of Shaffin A. Datoo, for Plaintiff, in Opposition
to Motion, Dated May 31, 2012 ........................................... A-372

Exhibit 1 to Datoo Declaration -
Complaint, Dated November 30, 2011
(Reproduced herein at pp. A-93–A-106)

Exhibit 2 to Datoo Declaration -
Answer, Dated February 16, 2011 ....................................... A-377

Exhibit 3 to Datoo Declaration -
Excerpts from Deposition Transcript of Rajay Bagaria,
Dated June 23, 2011 ............................................................. A-392

Exhibit 4 to Datoo Declaration -
Excerpts from Deposition Transcript of Paul Cutrone,
Dated June 1, 2011 ............................................................... A-405

v

**Page**

Exhibit 5 to Datoo Declaration -
Excerpts from Deposition Transcript of Gerald Girardi,
Dated May 23, 2011 ............................................................... A-431

Exhibit 6 to Datoo Declaration -
Excerpts from Deposition Transcript of Greg DiCarlo,
Dated June 2, 2011 ............................................................... A-449

Exhibit 7 to Datoo Declaration -
Excerpts from Deposition Transcript of John Leonard,
Dated June 3, 2011 ............................................................... A-464

Exhibit 8 to Datoo Declaration -
Excerpts from Deposition Transcript of John Schnabel,
Dated June 1, 2011 ............................................................... A-491

Exhibit 9 to Datoo Declaration -
Email from Scott E. State to David S. Hicks,
Dated November 5, 2010 ...................................................... A-507

Exhibit 10 to Datoo Declaration -
Excerpts from Human Resources "The Bible" .................... A-509

Exhibit 11 to Datoo Declaration -
Deposition Transcript of Scott E. State,
Dated May 26, 2011 ............................................................. A-513

Exhibit 12 to Datoo Declaration -
Deposition Transcript of Burton T. Fried,
Dated May 20, 2011 ............................................................. A-620

Exhibit 13 to Datoo Declaration -
Employment Agreement between Burton T. Fried and
LVI Services, Inc., Dated November 16, 2005
(Reproduced herein at pp. A-119–A-122)

Exhibit 14 to Datoo Declaration -
Document Entitled "VI Services Names Robert A.
McNamara as President and CEO," Dated
July 13, 2006 ....................................................................... A-769

Exhibit 15 to Datoo Declaration -
Declaration of Burton T. Fried in *Fried v. LVI Services,
Inc., et al.*, Southern District Case No. 10-cv-9308,
Dated June 20, 2011 ............................................................. A-772

vi

**Page**

Exhibit 16 to Datoo Declaration -
Email from Brian Simmons to Burton T. Fried,
Dated May 12, 2010 ............................................................... A-778

Exhibit 17 to Datoo Declaration -
Document Entitled "AIC Memorandum,"
Dated June 11, 2010 ............................................................... A-780

Exhibit 18 to Datoo Declaration -
Email from Scott E. State to Robert Hogan,
Dated September 14, 2010 ...................................................... A-799

Exhibit 19 to Datoo Declaration -
Email from Scott E. State to Robert Hogan,
Dated September 19, 2010 ...................................................... A-802

Exhibit 20 to Datoo Declaration -
Document Entitled "LVI Services Names Scott E. State
as President and CEO," Dated September 27, 2010 ............ A-806

Exhibit 21 to Datoo Declaration -
Email from Scott E. State to Scott Simmons,
Dated October 19, 2010
(Reproduced herein at pp. A-176–A-178)

Exhibit 22 to Datoo Declaration -
Minutes of Meeting of the Boards of Directors
of LVI Parent Corp. ................................................................ A-809

Exhibit 23 to Datoo Declaration -
Excerpts from Deposition Transcript of Jeffrey Smith,
Dated June 8, 2011 ................................................................. A-813

Exhibit 24 to Datoo Declaration -
Letter from Douglas H. Wigdor to Scott E. State,
Dated November 15, 2010 ...................................................... A-826

Exhibit 25 to Datoo Declaration -
Handwritten Notes by Gerald Girardi,
Dated November 15, 2010 ...................................................... A-832

Exhibit 26 to Datoo Declaration -
Email from Brian Simmons to Burton T. Fried,
Dated November 16, 2010
(Reproduced herein at pp. A-209–A-215)

vii

**Page**

Exhibit 27 to Datoo Declaration -
Scott E. State's Objections and Answer to Plaintiff's First
Set of Interrogatories in *Fried v. LVI Services, Inc., et al.*,
Southern District Case No. 10-cv-9308, Dated
March 14, 2011 .................................................................... A-834

Exhibit 28 to Datoo Declaration -
Brian Simmons' Objections and Answer to Plaintiff's First
Set of Interrogatories in *Fried v. LVI Services, Inc., et al.*,
Southern District Case No. 10-cv-9308, Dated
March 24, 2011 .................................................................... A-851

Exhibit 29 to Datoo Declaration -
Gerald Girardi's Revised Objections and Answers
to Plaintiff's First Set of Interrogatories in *Fried v.
LVI Services, Inc., et al.*, Southern District Case No.
10-cv-9308, Dated March 24, 2011 ..................................... A-866

Exhibit 30 to Datoo Declaration -
Rajay Bagaria's Revised Objections and Answers
to Plaintiff's First Set of Interrogatories in *Fried v.
LVI Services, Inc., et al.*, Southern District Case No.
10-cv-9308, Dated March 24, 2011 ..................................... A-881

Exhibit 31 to Datoo Declaration -
Letter from Burton T. Fried to the Board of Directors
of LVI Parent Corp., *et al.*, Dated November 30, 2010 ....... A-896

Exhibit 32 to Datoo Declaration -
Order of the Honorable Jed S. Rakoff in *Fried v.
LVI Services, Inc., et al.*, Southern District Case
No. 10-cv-9308, Dated September 2, 2011 .......................... A-898

Exhibit 33 to Datoo Declaration -
Excerpts from Deposition Transcript of Brian Simmons,
Dated May 25, 2011 ............................................................ A-901

Exhibit 34 to Datoo Declaration -
Email from Scott E. State to Scott Simmons and
Robert Hogan, Dated October 14, 2010
(Reproduced herein at pp. A-173–A-176)

viii

**Page**

Exhibit 35 to Datoo Declaration -
Opinion and Order of the Honorable Jed S. Rakoff in
*Fried v. LVI Services, Inc., et al.*, Southern District
Case No. 10-cv-9308, Filed October 3, 2011
(Reproduced herein at pp. A-306–A-341)

Exhibit 36 to Datoo Declaration -
Email from John Leonard to Scott E. State,
Dated October 14, 2010, with Attachments ......................... A-912

Exhibit 37 to Datoo Declaration -
Email from Burton T. Fried to Brian Simmons,
Dated September 22, 2010
(Reproduced herein at pp. A-123–A-124)

Exhibit 38 to Datoo Declaration -
Email from Burton Fried to John Leonard and Paul
Cutrone, Dated September 23, 2010 ................................... A-918

Exhibit 39 to Datoo Declaration -
Amended Complaint in *Fried v. LVI Services, Inc., et al.*,
Southern District Case No. 10-cv-9308, Filed
February 3, 2011
(Reproduced herein at pp. A-254–A-286)

Exhibit 40 to Datoo Declaration -
Stipulation of Dismissal with Prejudice in *Fried v.
LVI Services, Inc., et al.*, Southern District Case
No. 10-cv-9308, Filed October 27, 2011
(Reproduced herein at pp. A-303–A-305)

Exhibit 41 to Datoo Declaration -
Charge of Discrimination Filed with the State of
Connecticut, Commission on Human Rights and
Opportunities on
May 16, 2011
(Reproduced herein at pp. A-287–A-302)

Exhibit 42 to Datoo Declaration -
Release of Jurisdiction, Dated October 17, 2011, from the
State of Connecticut, Commission on Human Rights
and Opportunities
(Reproduced herein at pp. A-364–A-366)

ix

**Page**

Exhibit 43 to Datoo Declaration -
Excerpts from Memorandum of Law in *Fried v.
LVI Services, Inc., et al.*, Southern District Case
No. 10-cv-9308, Dated June 10, 2011 ................................. A-920

Exhibit 44 to Datoo Declaration -
Notice of Appeal in *Fried v. LVI Services, Inc., et al.*,
Southern District Case No. 10-cv-9308, Dated
November 14, 2011
(Reproduced herein at pp. A-367–A-369)

Exhibit 45 to Datoo Declaration -
Brief of The Equal Opportunity Commission *Amicus
Curiae*, Filed in the United States Court of Appeals
for the Second Circuit on March 5, 2012 ............................ A-922

Plaintiff's Local Rule 56(a)2 Statement,
    Dated May 31, 2012 ............................................................ A-965

Notice of Appeal, Dated March 28, 2013 ............................... A-974

## OTHER RELEVANT DOCUMENTS

Charge of Discrimination Filed with the Equal Employment
    Opportunity Commission ..................................................... A-976

Answer to Amended Complaint in *Fried v. LVI Services, Inc.,
    et al.*, Southern District Case No. 10-cv-9308, Dated
    April 18, 2011 ...................................................................... A-981

Memorandum of Law by Defendants in Support of Motion in
    *Fried v. LVI Services, Inc., et al.*, Southern District Case
    No. 10-cv-9308, Dated June 10, 2011 ................................. A-1003

Memorandum of Law by Plaintiff, in Opposition to Motion
    in *Fried v. LVI Services, Inc., et al.*, Southern District Case
    No. 10-cv-9308, Dated June 20, 2011 ................................. A-1032

Reply Memorandum of Law, by Defendants, in Further
    Support of Motion in *Fried v. LVI Services, Inc., et al.*,
    Southern District Case No. 10-cv-9308, Dated
    June 27, 2011 ...................................................................... A-1064

Transcript of Oral Argument Proceedings held before the
    Honorable Jed S. Rakoff, Dated July 6, 2011 ...................... A-1078

x

**Page**

Appellant's Brief in *Fried v. LVI Services, Inc., et al.*,
    Second Circuit Docket No. 11-4791-cv, Dated
    February 27, 2012 .............................................................. A-1113

Appellees' Brief in *Fried v. LVI Services, Inc., et al.*,
    Second Circuit Docket No. 11-4791-cv, Dated
    May 29, 2012 ...................................................................... A-1170

Appellant's Reply Brief in *Fried v. LVI Services, Inc., et al.*,
    Second Circuit Docket No. 11-4791-cv, Dated
    June 12, 2012 ..................................................................... A-1228

Transcript of Proceedings in *Fried v. LVI Services, Inc., et
    al.*, Southern District Case No. 10-cv-9308, Dated
    October 5, 2012.................................................................. A-1260

Mandate in *Fried v. LVI Services, Inc., et al.*, Second Circuit
    Docket No. 11-4791-cv, Dated December 26, 2012 ............ A-1309

A-826

# Exhibit 24

**THIS PAGE INTENTIONALLY LEFT BLANK**



## Thompson Wigdor & Gilly LLP ATTORNEYS AND COUNSELORS AT LAW

85 Fifth Avenue
New York, NY 10003
Tel 212.257.6800
Fax 212.257.6845
www.twglaw.com

Douglas H. Wigdor
dwigdor@twglaw.com

November 15, 2010

**CONFIDENTIAL COMMUNICATION**
**FOR SETTLEMENT PURPOSES ONLY**

**VIA HAND DELIVERY**

Mr. Scott E. State
President and Chief Executive Officer
LVI Services, Inc.
80 Broad Street
New York, NY 10004

      Re:    <u>Burton T. Fried</u>

Dear Mr. State:

We represent Burton T. Fried, the highly dedicated and long-standing Chairman and former Chief Executive Officer ("CEO") of LVI Services, Inc. ("LVI" or the "Company"), in connection with his employment with the Company. Specifically, Mr. Fried has retained our Firm in connection with recent attempts by the Company to unlawfully strip Mr. Fried of all his substantive job duties, including those services he has historically been performing as Chairman since 2006, and drastically reduce his role in the Company on account of his age and in breach of Mr. Fried's employment contract, the terms of which are memorialized in a November 16, 2005 contract with Mr. Fried (the "Contract").

As you are well aware, Mr. Fried is a long-tenured and exceedingly valuable employee of LVI, having served as the Company's CEO for two distinct periods totaling over 20 years. During Mr. Fried's tenure as CEO, he built LVI into the multi-million dollar company it is today and contributed immeasurably to the Company's years of success. Now, despite Mr. Fried's long track record of success and strong desire to continue as Chairman, the Company abruptly and unlawfully seeks to relegate Mr. Fried to the role of a mere figurehead on account of the fact he is seventy years of age. Because of his steadfast commitment to the Company and desire to remain with the Company that he has worked hard to build, this letter seeks to provide you with an opportunity to resolve this matter without commencing litigation against LVI.

Throughout his tenure with LVI, Mr. Fried has been indispensable to the Company's annual growth in both profits and revenue, presiding over the sale of the Company multiple times to

BF_066

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

Mr. Scott E. State                    **CONFIDENTIAL COMMUNICATION**
11/15/2010                            **FOR SETTLEMENT PURPOSES ONLY**
Page 2

new investors. As a result of Mr. Fried's efforts engineering these sales, LVI management has benefited greatly by reinvesting capital from these sales. The latest of these sales occurred on November 16, 2005, when Code Hennessy Simmons ("CHS") purchased a majority equity interest in LVI. On that same date, Mr. Fried entered into an employment contract with the Company where Mr. Fried agreed to remain as Company President and CEO until a replacement could be found. In recognition of Mr. Fried's expertise in the area and the respect he was formerly accorded, Mr. Fried was entrusted with the task of finding his own replacement. After Mr. Fried conducted interviews of all the candidates for the position and selected the finalists, both Mr. Fried and CHS agreed that Bob McNamara should replace Mr. Fried as CEO.

In June 2006, Mr. McNamara officially replaced Mr. Fried as CEO. In recognition of Mr. Fried's indispensability to the Company, Mr. McNamara conditioned his acceptance of the position on Mr. Fried continuing with the Company in the position of Chairman. Mr. Fried indeed stayed on as the Company's Chairman, accepting a pay cut to $600,000 a year and agreeing to work four days a week. That arrangement lasted only a week, however, as Mr. Fried quickly returned to full-time duty, albeit while continuing to honor his prior agreement to accept a reduced salary. Mr. Fried worked five days a week as the Chairman of LVI until Mr. McNamara resigned, effective April 2010. During that time, the Company's Earnings Before Interest, Taxes, Depreciation and Amortization fell from $65 million in Mr. Fried's last full year as CEO to only $20 million in 2009. Upon Mr. McNamara's resignation, the Company again looked to Mr. Fried's expertise and leadership by asking him to step in as interim CEO and conduct the search for his replacement. At that time, the Company increased Mr. Fried's salary to its former $750,000 level, with Brian Simmons, Managing Partner of CHS Capital LLC and member of the LVI Board of Directors, telling Mr. Fried in a May 12, 2010 email that "you are earning every penny of [your salary]."

Mr. Fried continued his invaluable service to the Company throughout his term as interim CEO by leading the Company through the period of negotiation of a recapitalization and restructuring to eliminate $100 million in debt. After the restructuring and recapitalization closed, CHS specifically applauded Mr. Fried's work during that process and informed Mr. Fried that the Company survived only because of his leadership during the negotiation period. The positive sentiment expressed by CHS and Mr. Simmons dissipated in mere months as the Company, and you, as its new CEO, in addition to individual directors, came to believe that Mr. Fried's age necessitated removal of all his day-to-day responsibilities.

As he had done in the previous search for a CEO, Mr. Fried spearheaded the efforts earlier this year to find someone to take over for him on a permanent basis. After he interviewed about ten candidates, Mr. Fried provided your resume to Russell Reynolds, the firm retained by LVI as the recruiter for the CEO position, as well as Brian Simmons. From there, your resume was passed on to Apollo and Falcon, the two private equity firms poised to come on as equity partners with CHS. As a result of Mr. Fried's introductions, you became the first choice to fill the CEO position. Mr. Fried's efforts on your behalf did not stop after putting your name forward as an

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

Mr. Scott E. State                          **CONFIDENTIAL COMMUNICATION**
11/15/2010                                  **FOR SETTLEMENT PURPOSES ONLY**
Page 3

interested candidate. Indeed, both you and the Company sought Mr. Fried's advice during the contract negotiation process as CHS became concerned that you would not accept the position due to your worries that Mr. Fried would play too big of a role in the Company. Mr. Fried allayed the concerns of both you and CHS, convincing you that you would operate as CEO and that Mr. Fried would support you fully in the role of Chairman. Due to Mr. Fried's tireless efforts, you accepted the position as CEO and began work on or about October 1, 2010.

On October 19, 2010, just shortly after you commenced employment with LVI, Mr. Fried met with you to present you with a list of the responsibilities Mr. Fried had as Chairman under Mr. McNamara. Instead of discussing these responsibilities with Mr. Fried, you informed him that his duties would be transitioned to other LVI managers and that, effective immediately, he would cease working on various projects that he had been effectively managing prior to your hiring. After Mr. Fried sought a reason for this drastic and unnecessary step, you told Mr. Fried, "You are 71 years old. How long do you expect to continue working?" Mr. Fried immediately left the meeting due to this shocking and obviously discriminatory conduct. Although Mr. Fried hoped that this discriminatory animus was not shared by others at LVI and gave you every opportunity to repudiate your discriminatory comment, the discriminatory and demeaning treatment of Mr. Fried has continued to this day. To Mr. Fried's disappointment, you took further action to humiliate Mr. Fried and minimize his role at the Company by directing senior managers not to call Mr. Fried and to route all inquiries to Mr. Fried through you.

While you may have been the only one to outwardly express your belief that Mr. Fried's age necessitates removal of all his job duties, others at LVI obviously harbor the same animus. For instance, an email from Mr. Simmons to Mr. Fried on November 2, 2010 expressed his opinion that Mr. Fried should be phased out of the Company due to his age. Indeed, at the same time that Mr. Simmons commended Mr. Fried for selecting you as CEO, he told Mr. Fried that all of his responsibilities should be distributed to other LVI managers. Mr. Simmons concludes his email by revealing his true motivations behind reducing Mr. Fried's responsibilities, telling him that "while the team has relied on you for advice and counsel for many years, they must now take on true ownership of daily challenges, be asked to produce results on their own, and be evaluated based upon the outcome." Mr. Simmons clearly shares your belief that Mr. Fried's age necessitates pushing him to the background and giving away his responsibilities to younger employees.

Most recently, at a closed session of the LVI Board of Directors, Mr. Fried gave an impassioned speech detailing his years of outstanding service to the Company and expressing his desire to continue as LVI Chairman with substantive responsibilities. As a courtesy, Mr. Fried again gave you a chance to repudiate your discriminatory comment, yet, you did not take the olive branch offered by Mr. Fried. Instead, you squandered this chance to begin the process of rectifying the situation by refusing to deny that you had indeed told Mr. Fried that his age required his constructive ouster from the Company.


**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

Mr. Scott E. State                    **CONFIDENTIAL COMMUNICATION**
11/15/2010                            **FOR SETTLEMENT PURPOSES ONLY**
Page 4

Although Mr. Fried has devoted a substantial portion of his life to LVI, the Company now evinces a total lack of respect for Mr. Fried's years of steadfast and exemplary service. At his present age, Mr. Fried has shown no signs of slowing down and has expressed only an unwavering commitment to staying with the Company in more than the "advisory" capacity LVI now envisions him in. In spite of Mr. Fried's vitality, the Company seeks merely to exploit Mr. Fried's relationship with Richard Ferrucci and Arch Surety ("Arch" or the "Surety") in order to ensure that the $200 million surety line remains open to LVI. Now, the Company attempts to have it both ways by distributing all of Mr. Fried's substantive responsibilities to younger employees but still leaving Mr. Fried at LVI with the ceremonial title of Chairman in order to take advantage of his ten year relationship with the Surety. Mr. Fried will not lend his name and reputation to any effort to represent to the Surety that he is anything less than a vibrant and active executive involved in approval of projects before a bond request is made to Arch; nor, will Mr. Fried stand by idly as LVI promotes his active participation in the Company in its press releases while behind the scenes the Company seeks only to relieve him of any meaningful role.

As the Company is no doubt aware, stripping Mr. Fried of his responsibilities, including those additionally assigned duties and responsibilities he has performed since Mr. McNamara joined the Company in June 2006, would also be in breach of the Contract he signed with LVI on November 16, 2005. As per the terms of this agreement, Mr. Fried is entitled to maintain the position of Chairman, with "primary responsibility for strategic growth." Contrary to this promise, the Company now seeks to make Mr. Fried merely your "on call resource" and to give you full discretion to decide "if there are areas of the business or specific situations where [you] want[] [Mr. Fried's] direct involvement." Providing you with such unlimited discretion is directly contrary to Mr. Fried's employment agreement, a point realized by Mr. Simmons as he tells Mr. Fried in his November 2 email that he wishes "to replace [his] existing employment arrangement with a consulting agreement." Mr. Simmons clearly realizes the illegality of the proposed changes in Mr. Fried's employment and is unsubtly attempting to make an end run around the clearly defined parameters of Mr. Fried's employment contract.

Based on our knowledge of LVI's callous and discriminatory conduct to date, it is abundantly clear that the Company is pursuing a course of conduct which constitutes unlawful age discrimination and violates Mr. Fried's employment contract. Although Mr. Fried's devotion to the Company is unwavering and he would prefer to remain with LVI in his present, undiminished capacity, he remains committed to pursuing any and all legal remedies in order to ensure that he is fully made whole as a result of the Company's illegal and discriminatory action. As noted above, I am writing to provide the Company with the opportunity to avoid a costly legal action that will result in substantial liability for LVI. To this end, I ask that you contact me to discuss the possible resolution of this matter as soon as possible, but by no later than November 22, 2010.

Finally, I trust that you will treat this letter with the appropriate degree of discretion so that Mr. Fried's professional relationships are not harmed in any way by disclosure of his decision to seek

BF_069

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

Mr. Scott E. State                          **CONFIDENTIAL COMMUNICATION**
11/15/2010                                  **FOR SETTLEMENT PURPOSES ONLY**
Page 5

legal representation. In addition, I remind you of your legal obligation to preserve all documents that may be relevant to this matter, including but not limited to all relevant emails, voicemails, telephone recordings, video surveillance recordings, and other communications that may be relevant to this matter. If you have not done so already, please take immediate steps to preserve any material related to this matter, whether in electronic or paper form, including immediately implementing the following:

- Hold in abeyance any existing document retention and/or destruction policies or practices, or any other actions that would result in the deletion of any material;

- Stop the automatic deletion of emails and other electronic data;

- Stop the recycling or reuse of computer backup tapes;

- Secure and preserve all recorded telephone conversations and email correspondence of yourself and other decision-makers responsible for the circumstances of my client's employment;

- Maintain all electronic data in reasonably accessible form, including ceasing any automatic archiving to backup tapes; and

- Secure and preserve all computer or electronic hardware, including all hard drives, laptops, PDA's, Blackberry's or any other similar equipment and devices.

I await your response.

Sincerely,

Douglas H. Wigdor

A-832

# Exhibit 25

11/16   LVI 3RD CALL
- FERRUCI, CHS (Simmons & Hogan), FALCON
  AIC (GRIND & Reynolds), Buck (Shinsel),
  SCOTT SMITH

Schinsel:
  - Burt is NOT to Smell ble w/ Day to Day
    Responsibilities
  - INSISTS this is due to his "Age"

Burt - Sent me-anythin letter; Ignore & Send
Good faith letter else to Burt Filed

NEXT STEPS
1. Send out letter to Burt
2. Treatment for Burt
   - e-mail Acct.
   - Western Office
   - Compensation
     Treat his dissible As we would treat any other employee
   + Maintain Status Quo until 11/30
   → General Counsel relocate eventually to Cr.Ford

3. Eventu - Demonstrate Summary; Assists to de-level
   + impaire Coverage Roles; performance

Other
1. Sr. managed office in Denver - week of 11/15

Confidential                                                    AIC 00000236

# Exhibit 27

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| BURTON T. FRIED, | : **ECF CASE** |
| Plaintiff, | : |
| | : |
| v. | : No. 10 Civ. 9308 (JSR) |
| | : |
| LVI SERVICES, INC., LVI PARENT CORP., | : **SCOTT E. STATE'S OBJECTIONS** |
| CODE HENNESSY SIMMONS LLC d/b/a/ CHS | : **AND ANSWERS TO PLAINTIFF'S** |
| PRIVATE EQUITY V LP; APOLLO | : **FIRST SET OF** |
| INVESTMENT CORP.; SCOTT E. STATE, in his | :: **INTERROGATORIES** |

official and individual capacities; BRIAN
SIMMONS, in his official and individual
capacities; RAJAY BAGARIA, in his official and
individual capacities; GERALD J. GIRARDI, in his official
and individual capacities,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local

Rules of the United States District Court for the Southern District of New York, Scott E. State

("State"), by his attorneys, Sidley Austin LLP, answers and makes his written objections to

Plaintiff's First Set of Interrogatories (the "Interrogatories") as set forth below.  State's response

to any of the Interrogatories is not, and shall not be construed as, an admission of the relevance

or admissibility into evidence of any such response or of the propriety of any of Plaintiff's

Interrogatories.

### GENERAL OBJECTIONS, COMMENTS AND QUALIFICATIONS

In addition to the specific objections separately set forth in response to certain

Interrogatories, State asserts the following General Objections, which are incorporated into each

specific answer and objection, whether or not specifically referred to therein.

1.      State objects to the "Definitions and Instructions" section of the Interrogatories to the extent that Plaintiff's definitions and instructions contradict or go beyond the scope of permissible discovery under the Federal Rules of Civil Procedure and/or the Local Rules of the United States District Court for the Southern District of New York.

2.      State makes the objections and provides the answers contained herein without waiver of any right or privilege to object to the introduction into evidence, in this or any other action or proceedings, of any information contained in any of the documents or the introduction of any of the documents themselves, upon grounds of competency, relevancy, hearsay, authenticity or other proper grounds.  State reserves all rights to object to the use of any of the information produced (now or in the future) in response hereto, in any subsequent proceedings, including the trial of this or any other action.  State expressly reserves the right to object to further discovery into any subject matter in the Interrogatories.  In responding, State does not admit the factual or legal premise of any Interrogatory.

3.      State responds to the Interrogatories based on the best of his present knowledge, information and belief.  State's response is at all times subject to such additional or different information that discovery or further investigation may disclose.  State reserves the right to supplement and update his responses to the Interrogatories.  Any supplemental response provided to the Interrogatories shall not function as a waiver of any privilege or objection State has or may assert herein.

4.      State objects to the Interrogatories to the extent that they seek information that is subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work product doctrine, the joint-defense privilege, and/or any other

2

applicable privileges.  State intends to and does claim such privilege(s) with respect to all such information.

These General Objections are incorporated into each of the responses set forth below and shall have the same force and effect as if set forth in full in response to each individual request.

\*          \*          \*

## SPECIFIC OBJECTIONS AND ANSWERS

**Interrogatory No. 1:**

Identify all person(s) with knowledge or information regarding the allegations as set forth in the Complaint.

**Objections to Interrogatory No. 1:**

State objects to Request No. 1 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

**Answer to Interrogatory No. 1:**

Without waiving the foregoing objections, and to the extent not objected to therein, State answers:

Individuals who have knowledge or information regarding the allegations in the Complaint and/or Charge of Discrimination are:

Scott State
John Leonard
Paul Cutrone
Robert McNamara
Members of the Board of Directors of LVI Parent Corp.

3

**Interrogatory No. 2:**

Identify all directors, officers, partners, managers and/or employees of any of the Corporate Defendants who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to transition Plaintiff's job duties to other LVI managers.

**Objections to Interrogatory No. 2:**

State objects to Request No. 2 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "have information or knowledge concerning the reasons for, and the process leading to . . . transition Plaintiff's duties to other LVI managers" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 2:**

Without waiving the foregoing objections, and to the extent not objected to therein, State answers:

The LVI employee responsible for the decision to transition Plaintiff's job duties to other LVI managers is Scott State.

**Interrogatory No. 3:**

Identify all directors, officers, partners, managers and/or employees of any of the Corporate Defendants who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to replace Plaintiff's Employment Agreement with a consulting agreement.

**Objections to Interrogatory No. 3:**

State objects to Interrogatory No. 3 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. State further objects to Interrogatory No. 3 on the grounds that it assumes facts that are not in

4

evidence, such as the existence of a decision "to replace Plaintiff's Employment Agreement with a consulting agreement."

**Answer to Interrogatory No. 3:**

Without waiving the foregoing objection, and to the extent not objected to therein, State answers:

The LVI employee responsible for the decision to offer Plaintiff a consulting agreement is Scott State.

**Interrogatory No. 4:**

Identify all directors, officers, partners, managers and/or employees of any of the Corporate Defendants who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to terminate Plaintiff's employment.

**Objections to Interrogatory No. 4:**

State objects to Interrogatory No. 4 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who participated in, or otherwise have information or knowledge" is vague, ambiguous and lacks sufficient precision to permit a response.

**Answer to Interrogatory No. 4:**

Without waiving the foregoing objections, and to the extent not objected to therein, State answers:

The LVI employee responsible for the decision to terminate Plaintiff's employment with LVI is Scott State.

A-840

**Interrogatory No. 5:**

Identify all directors, officers, partners, managers and/or employees of the Corporate Defendants who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to terminate Shari Dembin's employment with LVI.

**Objections to Interrogatory No. 5:**

State objects to Interrogatory No. 5 to the extent it is vague, ambiguous, overly

broad, unduly burdensome, calls for the production of extensive information which has no

bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

For example, the phrase "who participated in, or otherwise have information or knowledge" is

vague, ambiguous and lacks sufficient precision to permit a response.

**Answer to Interrogatory No. 5:**

Without waiving the foregoing objections, and to the extent not objected to

therein, State answers:

The LVI employee responsible for the decision to terminate Shari Dembin's

employment with LVI is Scott State.

**Interrogatory No. 6:**

Identify all directors, officers, partners, managers and/or employees of any of the Corporate Defendants who determined the terms and conditions of Plaintiff's employment at LVI, or otherwise have knowledge of the terms and conditions of Plaintiff's employment, including, but not limited to, the authority to set Plaintiff's compensation, enter into employment agreements with Plaintiff, and/or terminate Plaintiff's employment.

**Objections to Interrogatory No. 6:**

State objects to Interrogatory No. 6 to the extent it is vague, ambiguous, overly

broad, unduly burdensome, calls for the production of extensive information which has no

bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

For example, the phrase "who otherwise have knowledge" is vague, ambiguous, and lacks

sufficient precision to permit an answer.

**Answer to Interrogatory No. 6:**

Without waiving the foregoing objections, and to the extent not objected to

therein, State answers:

Employees of LVI responsible for determining the terms and conditions of

Plaintiff's employment at LVI are Scott State and, previously, Robert McNamara.

**Interrogatory No. 7:**

Identify all directors, officers, partners, managers and/or employees of the LVI
Defendants who received any complaint, communication or report from Plaintiff, whether formal
or informal, written or verbal, regarding the discriminatory actions taken against Plaintiff.

**Objections to Interrogatory No. 7:**

State objects to Interrogatory No. 7 to the extent it is vague, ambiguous, overly

broad, unduly burdensome, calls for the production of extensive information which has no

bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

State further objects to Interrogatory No. 7 to the extent that it assumes facts that are not in

evidence.

**Answer to Interrogatory No. 7:**

Without waiving the foregoing objections, and to the extent not objected to

therein, State answers:

Scott State and members of the Board of Directors of LVI Parent were present at

the Board of Directors meeting in which Plaintiff raised a complaint of discrimination against

State.

7

**Interrogatory No. 8:**

Identify all directors, officers, partners, managers and/or employees of the Corporate Defendants who have knowledge of the remark about Plaintiff's age made to Plaintiff on or about October 19, 2010 by Defendant State.

**Objections to Interrogatory No. 8:**

State objects to Interrogatory No. 8 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. State further objects to Interrogatory No. 8 to the extent that it assumes facts that are not in evidence, such as the existence of a remark "about Plaintiff's age."

**Interrogatory No. 9:**

Identify all directors, officers, partners, managers and/or employees of the Corporate Defendants who participated in the recruitment and hiring process of Defendant State as Chief Executive Officer of the Company.

**Objections to Interrogatory No. 9:**

State objects to Interrogatory No. 9 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who otherwise have knowledge of" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 9:**

Without waiving the foregoing objections, and to the extent not objected to therein, State answers:

The employee of LVI who was primarily involved in the hire of Scott State as Chief Executive Officer of LVI was Burton Fried.

**Interrogatory No. 10:**

Identify all directors, officers, partners, managers and/or employees of the LVI Defendants who have knowledge of the job duties and responsibilities Plaintiff performed as Chairman of the LVI Defendants.

**Objections to Interrogatory No. 10:**

State objects to Interrogatory No. 10 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who have knowledge of" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 10:**

Without waiving the foregoing objections, and to the extent not objected to therein, State answers:

The LVI employees of who were primarily involved in determining the job duties and responsibilities Plaintiff performed as Chairman of LVI were Scott State and, previously, Robert McNamara.

**Interrogatory No. 11:**

Identify all person(s) with knowledge by November 16, 2010 that a letter had been delivered to Defendant State from Plaintiff's counsel on November 15, 2010.

**Objections to Interrogatory No. 11:**

State objects to Interrogatory No. 11 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who had knowledge by November 16, 2010 that a letter from

A-844

Plaintiff's counsel was delivered on November 15, 2010" is vague, ambiguous, and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 11:**

Without waiving the foregoing objections, and to the extent not objected to therein, State answers:

The employee of LVI who was made aware on November 16, 2010 of the letter from Plaintiff's counsel that was delivered on November 15, 2010 is Scott State.

**Interrogatory No. 12:**

Identify all officers, directors, partners, managers and/or employees of LVI who are common to the management, ownership, and/or labor relations of Parent and/or has knowledge of the common management, ownership, financial control and/or labor relations of LVI and Parent

**Objections to Interrogatory No. 12:**

State objects to Interrogatory No. 12 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who are common to the management, ownership and/or labor relations" is vague, ambiguous and lacks sufficient precision to permit an answer. State further objects to Interrogatory No. 12 to the extent it assumes facts that are not in evidence.

**Answer to Interrogatory No. 12:**

Without waiving the foregoing objections, and to the extent not objected to therein, State answers:

None.

10

Dated: *March 24*, 2011

SIDLEY AUSTIN LLP

By: _Joanne Seltzer_

Nicholas H. De Baun
Joanne Seltzer

787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Attorneys for Defendants

LVI Services, Inc., LVI Parent Corp., CHS
Private Equity V LP, Scott E. State, Brian
Simmons, Rajay Bagaria and Gerald J.
Girardi

11

## CERTIFICATE OF SERVICE

I, Joanne Seltzer, an attorney admitted to practice in the State of New York, and not a party to this action, state under penalty of perjury that, on *March 24*, 2011, a true and correct copy of Scott E. State's Objections and Answers to Plaintiff's First Set of Interrogatories was served by electronic and Federal Express overnight delivery upon the following:

> Douglas H. Wigdor
> Thompson Widgor & Gilly LLP
> 85 Fifth Avenue
> New York, New York 10003
> dwigdor@twglaw.com

_____
Joanne Seltzer


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
               :  **ECF CASE**

BURTON T. FRIED,        :
               :

        Plaintiff,  :  No. 10 Civ. 9308 (JSR)
               :

      - against -   :  **SCOTT E. STATE'S**
               :  **VERIFICATION OF**
LVI SERVICES, INC.; LVI PARENT CORP.,  :  **INTERROGATORIES**
CODE HENNESSY SIMMONS LLC d/b/a/ CHS  :
PRIVATE EQUITY V LP; APOLLO    :
INVESTMENT CORP.; SCOTT E. STATE, in his  :
official and individual capacities; BRIAN   :
SIMMONS, in his official and individual   :
capacities; RAJAY BAGARIA, in his official and  :
individual capacities; GERALD J. GIRARDI, in his :
official             :
and individual capacities,      :
               :
        Defendants.   :
               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


STATE OF NEW YORK     )
            ) ss.:
COUNTY OF NEW YORK    )


    SCOTT E. STATE, being duly sworn, deposes and says:

      1.   I am President and CEO of LVI Services, Inc. and LVI Parent Corp.

      2.   I have read my Objections and Answers to Plaintiff's First Set of

Interrogatories ("Defendant's Answers") and know the contents thereof, and the same are true to

my own knowledge, or upon information and belief, and as to those matters, I believe them to be

true.

Case: 13-1165    Document: 47    Page: 35    07/10/2013    986052    250

A-848

3.    The bases for my belief as to the truth of Defendant's Answers are my personal knowledge of pertinent events and my review of my records, correspondence and other writings.

SCOTT E. STATE

Sworn to and subscribed before
me this ___ day of _____ 2011

Notary Public

LARRY ROSING
Notary Public, State of New York
No. 01RO6106496
Qualified in Nassau County
My Commission Expires Mar. 08, 2012

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                 :  **ECF CASE**

BURTON T. FRIED,                 :

                  :

            Plaintiff,      :  No. 10 Civ. 9308 (JSR)

                  :

       - against -        :  **SCOTT E. STATE'S**

                  :  **VERIFICATION OF**

LVI SERVICES, INC.; LVI PARENT CORP.,  :  **INTERROGATORIES**

CODE HENNESSY SIMMONS LLC d/b/a/ CHS  :

PRIVATE EQUITY V LP; APOLLO       :

INVESTMENT CORP.; SCOTT E. STATE, in his  :

official and individual capacities; BRIAN  :

SIMMONS, in his official and individual    :

capacities; RAJAY BAGARIA, in his official and  :

individual capacities; GERALD J. GIRARDI, in his:

official                  :

and individual capacities,        :

                  :

           Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

STATE OF NEW YORK         )

                       ) ss.:

COUNTY OF NEW YORK     )

      SCOTT E. STATE, being duly sworn, deposes and says:

        1.    I am President and CEO of LVI Services, Inc. and LVI Parent Corp.

        2.    I have read my Objections and Answers to Plaintiff's First Set of

Interrogatories ("Defendant's Answers") and know the contents thereof, and the same are true to

my own knowledge, or upon information and belief, and as to those matters, I believe them to be

true.

3.    The bases for my belief as to the truth of Defendant's Answers are my personal knowledge of pertinent events and my review of my records, correspondence and other writings.

SCOTT E. STATE

Sworn to and subscribed before
me this __ day of _____ 2011

_____
Notary Public

LARRY ROSING
Notary Public, State of New York
No. 01RO6106496
Qualified in Nassau County
My Commission Expires Mar. 06, 2012

2

# Exhibit 28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                :   **ECF CASE**
BURTON T. FRIED,                                :
                          Plaintiff,            :
                                                :   No. 10 Civ. 9308 (JSR)
            v.                                  :
                                                :   **BRIAN SIMMONS'S OBJECTIONS**
LVI SERVICES, INC., LVI PARENT CORP.,           :   **AND ANSWERS TO PLAINTIFF'S**
CODE HENNESSY SIMMONS LLC d/b/a/ CHS            :   **FIRST SET OF**
PRIVATE EQUITY V LP; APOLLO                     :   **INTERROGATORIES**
INVESTMENT CORP.; SCOTT E. STATE, in his   ::
official and individual capacities; BRIAN
SIMMONS, in his official and individual capacities;
RAJAY BAGARIA, in his official and individual
capacities; GERALD J. GIRARDI, in his official
and individual capacities,

                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

     Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local

Rules of the United States District Court for the Southern District of New York, Brian Simmons

("Simmons"), by his attorneys, Sidley Austin LLP, answers and makes his written objections to

Plaintiff's First Set of Interrogatories (the "Interrogatories") as set forth below.  Simmons's

response to any of the Interrogatories is not, and shall not be construed as, an admission of the

relevance or admissibility into evidence of any such response or of the propriety of any of

Plaintiff's Interrogatories.

## GENERAL OBJECTIONS, COMMENTS AND QUALIFICATIONS

     In addition to the specific objections separately set forth in response to certain

Interrogatories, Simmons asserts the following General Objections, which are incorporated into

each specific answer and objection, whether or not specifically referred to therein.

1. Simmons objects to the "Definitions and Instructions" section of the Interrogatories to the extent that Plaintiff's definitions and instructions contradict or go beyond the scope of permissible discovery under the Federal Rules of Civil Procedure and/or the Local Rules of the United States District Court for the Southern District of New York.

2. Simmons makes the objections and provides the answers contained herein without waiver of any right or privilege to object to the introduction into evidence, in this or any other action or proceedings, of any information contained in any of the documents or the introduction of any of the documents themselves, upon grounds of competency, relevancy, hearsay, authenticity or other proper grounds. Simmons reserves all rights to object to the use of any of the information produced (now or in the future) in response hereto, in any subsequent proceedings, including the trial of this or any other action. Simmons expressly reserves the right to object to further discovery into any subject matter in the Interrogatories. In responding, Simmons does not admit the factual or legal premise of any Interrogatory.

3. Simmons responds to the Interrogatories based on the best of his present knowledge, information and belief. Simmons's response is at all times subject to such additional or different information that discovery or further investigation may disclose. Simmons reserves the right to supplement and update his responses to the Interrogatories. Any supplemental response provided to the Interrogatories shall not function as a waiver of any privilege or objection Simmons has or may assert herein.

4. Simmons objects to the Interrogatories to the extent that they seek information that is subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work product doctrine, the joint-defense privilege, and/or any other

2

applicable privileges. Simmons intends to and does claim such privilege(s) with respect to all

such information.

These General Objections are incorporated into each of the responses set forth

below and shall have the same force and effect as if set forth in full in response to each

individual request.

\*          \*          \*

## SPECIFIC OBJECTIONS AND ANSWERS

**Interrogatory No. 1:**

Identify all person(s) with knowledge or information regarding the allegations as
set forth in the Complaint.

**Objections to Interrogatory No. 1:**

Simmons objects to Request No. 1 to the extent it is vague, ambiguous, overly

broad, unduly burdensome, calls for the production of extensive information which has no

bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

**Answer to Interrogatory No. 1:**

Without waiving the foregoing objections, and to the extent not objected to

therein, Simmons answers:

CHS employees who have knowledge or information regarding the allegations in

the Complaint are Brian Simmons, Robert G. Hogan and Matthew Kunz.

**Interrogatory No. 2:**

Identify all directors, officers, partners, managers and/or employees of any of the
CHS and/or Parent who participated in, or otherwise have information or knowledge concerning
the reasons for, and the process leading to, the decision to transition Plaintiff's job duties to other
LVI managers.

**Objections to Interrogatory No. 2:**

Simmons objects to Request No. 2 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "have information or knowledge concerning the reasons for, and the process leading to . . . transition Plaintiff's duties to other LVI managers" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 2:**

Without waiving the foregoing objections, and to the extent not objected to therein, Simmons answers:

CHS employees who have knowledge of the reasons for the decision to transition Plaintiff's job duties to other LVI managers are Brian Simmons and Robert G. Hogan.

**Interrogatory No. 3:**

Identify all directors, officers, partners, managers and/or employees of CHS and/or Parent who participated in, or otherwise have information or knowledge of the Employment Agreement between Plaintiff and LVI.

**Objections to Interrogatory No. 3:**

Simmons objects to Interrogatory No. 3 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

**Answer to Interrogatory No. 3:**

Without waiving the foregoing objections, and to the extent not objected to therein, Simmons answers:

4

CHS employees who have knowledge of the contents of the agreement dated November 16, 2005 between Plaintiff and LVI are Brian Simmons and Robert G. Hogan.

**Interrogatory No. 4:**

Identify all directors, officers, partners, managers and/or employees of CHS and/or Parent who have knowledge concerning the drafting and/or negotiation of Employment Agreement between Plaintiff and LVI.

**Objections to Interrogatory No. 4:**

Simmons objects to Interrogatory No. 4 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

**Answer to Interrogatory No. 4:**

Without waiving the foregoing objections, and to the extent not objected to therein, Simmons answers:

The CHS employee who has knowledge concerning the drafting and/or negotiations of the agreement dated November 16, 2005 between Plaintiff and LVI is Brian Simmons.

**Interrogatory No. 5:**

Identify all directors, officers, partners, managers and/or employees of CHS and/or Parent who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to replace Plaintiff's Employment Agreement with a consulting agreement.

**Objections to Interrogatory No. 5:**

Simmons objects to Interrogatory No. 5 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who participated in, or otherwise have information or knowledge

5

concerning the reasons for, and the process leading to the decision to replace Plaintiff's Employment Agreement with a consulting agreement" is vague, ambiguous and lacks sufficient precision to permit a response.  Simmons further objects to Interrogatory No. 5 to the extent that it assumes facts that are not in evidence, such as a decision "to replace Plaintiff's Employment Agreement with a consulting agreement."

**Answer to Interrogatory No. 5:**

Without waiving the foregoing objections, and to the extent not objected to therein, Simmons answers:

CHS employees who have knowledge of the reasons for Scott State's decision to offer Plaintiff a consultant agreement are Brian Simmons and Robert G. Hogan.

**Interrogatory No. 6:**

Identify all directors, officers, partners, managers and/or employees of CHS and/or Parent who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to terminate Plaintiff's employment.

**Objections to Interrogatory No. 6:**

Simmons objects to Interrogatory No. 6 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to the decision to terminate Plaintiff's employment" is vague, ambiguous and lacks sufficient precision to permit a response.

6

**Answer to Interrogatory No. 6:**

Without waiving the foregoing objections, and to the extent not objected to therein, Simmons answers:

CHS employees who have knowledge of the reasons for Scott State's decision to terminate Plaintiff's employment are Brian Simmons and Robert G. Hogan.

**Interrogatory No. 7:**

Identify all directors, officers, partners, managers and/or employees of CHS and/or Parent who determined the terms and conditions of Plaintiff's employment, or otherwise have knowledge of the terms and conditions of Plaintiff's employment, including, but not limited to, the authority to set Plaintiff's compensation, enter into employment agreements with Plaintiff, and/or terminate Plaintiff's employment, while Plaintiff was employed as Chairman of LVI Defendants.

**Objections to Interrogatory No. 7:**

Simmons objects to Interrogatory No. 7 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who otherwise have knowledge" is vague, ambiguous, and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 7:**

Without waiving the foregoing objections, and to the extent not objected to therein, Simmons answers:

Employees of CHS who had knowledge of the terms and conditions of Plaintiff's employment at LVI are Brian Simmons and Robert G. Hogan.

**Interrogatory No. 8:**

Identify all directors, officers, partners, managers and/or employees of CHS and/or Parent who received any complaint, communication or report from Plaintiff, whether formal or informal, written or verbal, regarding the discriminatory actions taken against Plaintiff.

**Objections to Interrogatory No. 8:**

Simmons objects to Interrogatory No. 8 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. Simmons further objects to Interrogatory No. 8 to the extent that it assumes facts that are not in evidence, such as "a discriminatory action taken against Plaintiff."

**Answer to Interrogatory No. 8:**

Without waiving the foregoing objections, and to the extent not objected to therein, Simmons answers:

Brian Simmons , Robert G. Hogan and Matthew Kunz were present at the Board of Directors meeting in which Plaintiff raised a complaint of discrimination against Mr. State.

**Interrogatory No. 9:**

Identify all directors, officers, partners, managers and/or employees of CHS and/or Parent who have knowledge of the remark about Plaintiff's age made to Plaintiff on or about October 19, 2010 by Defendant State.

**Objections to Interrogatory No. 9:**

Simmons objects to Interrogatory No. 9 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. Simmons further objects to Interrogatory No. 9 to the extent that it assumes facts that are not in evidence, such as the existence of a remark "about Plaintiff's age."

**Answer to Interrogatory No. 9:**

Without waiving the foregoing objections, and to the extent not objected to therein, Simmons answers:

8

Brian Simmons, Robert G. Hogan and Matthew Kunz were present at the Board of Directors meeting in which Plaintiff alleged that Scott State made a comment about Plaintiff's age.

**Interrogatory No. 10:**

Identify all directors, officers, partners, managers and/or employees of CHS and/or Parent who participated in the decision to hire Defendant State as Chief Executive Officer of the Company.

**Objections to Interrogatory No. 10:**

Simmons objects to Interrogatory No. 10 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who participate in the decision" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 10:**

Without waiving the foregoing objections, and to the extent not objected to therein, Simmons answers:

CHS employees who were involved in the recruitment of Scott State for the position of Chief Executive Officer of LVI are Brian Simmons and Robert G. Hogan.

**Interrogatory No. 11:**

Identify all officers, directors, partners, managers and/or employees of CHS who are common to the management, ownership, financial control and/or labor relations of Parent and/or has knowledge of the common management, ownership, financial control and/or labor relations of LVI and Parent.

**Objections to Interrogatory No. 11:**

Simmons objects to Interrogatory No. 11 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no

9

bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who are common to the management, ownership and/or labor relations" is vague, ambiguous and lacks sufficient precision to permit an answer. Simmons further objects to Interrogatory No. 11 to the extent it assumes facts that are not in evidence.

**Answer to Interrogatory No. 11:**

Without waiving the foregoing objections, and to the extent not objected to therein, Simmons answers:

Brian Simmons and Robert G. Hogan are members of the Parent's Board of Directors.

**Interrogatory No. 12:**

Identify all directors, officers, partners, managers and/or employees of CHS who have knowledge in any way relating to Parent's control over the labor relations and personnel and practices of LVI.

**Objections to Interrogatory No. 12:**

Simmons objects to Interrogatory No. 12 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who have knowledge in any way relating to" is vague, ambiguous and lacks sufficient precision to permit an answer. Simmons further objects to Interrogatory No. 12 to the extent it assumes facts that are not in evidence, such as any control by Parent over the labor relations and practices of LVI.

Dated: *May 24*, 2011

SIDLEY AUSTIN LLP

By: _____
    Nicholas H. De Baun
    Joanne Seltzer

787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Attorneys for Defendants

LVI Services, Inc., LVI Parent Corp., CHS
Private Equity V LP, Scott E. State, Brian
Simmons, Rajay Bagaria and Gerald J.
Girardi

## CERTIFICATE OF SERVICE

I, Joanne Seltzer, an attorney admitted to practice in the State of New York, and not a party to this action, states, under penalty of perjury that, on *March 24* 2011, a true and correct copy of Brian Simmons's Objections and Answers to Plaintiff's First Set of Interrogatories was served by electronic and Federal Express overnight delivery upon the following:

> Douglas H. Wigdor
> Thompson Wigdor & Gilly LLP
> 85 Fifth Avenue
> New York, New York 10003
> dwigdor@twglaw.com

_____
Joanne Seltzer


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                :    **ECF CASE**

BURTON T. FRIED,                :

                     Plaintiff,     :    No. 10 Civ. 9308 (JSR)

             - against -     :    **BRIAN SIMMONS'S**
                                :    **VERIFICATION OF**
LVI SERVICES, INC.; LVI PARENT CORP.,  :    **INTERROGATORIES**
CODE HENNESSY SIMMONS LLC d/b/a/ CHS  :
PRIVATE EQUITY V LP; APOLLO      :
INVESTMENT CORP.; SCOTT E. STATE, in his :
official and individual capacities; BRIAN   :
SIMMONS, in his official and individual   :
capacities; RAJAY BAGARIA, in his official and :
individual capacities; GERALD J. GIRARDI, in his:
official                             :
and individual capacities,         :

                         :
               Defendants.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


STATE OF ILLINOIS         )
                           ) ss.:
COOK COUNTY           )


      BRIAN SIMMONS, being duly sworn, deposes and says:

        1.      I am a member of the Board of Directors of LVI Parent Corp. and am a

managing partner of CHS Private Equity V LP.

        2.      I have read my Objections and Answers to Plaintiff's First Set of

Interrogatories ("Defendant's Answers") and know the contents thereof, and the same are true to

my own knowledge, or upon information and belief, and as to those matters, I believe them to be

true.

3.    The bases for my belief as to the truth of Defendant's Answers are my personal knowledge of pertinent events, my review of my records, correspondence and other writings.

BRIAN SIMMONS

Sworn to and subscribed before
me this 4th day of April 2011

Notary Public

OFFICIAL SEAL
MICHELLE J. KARLIN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 8/12/2012

# Exhibit 29

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                               :   **ECF CASE**

BURTON T. FRIED,                :

             Plaintiff,     :

                               :   No. 10 Civ. 9308 (JSR)

         v.               :

                               :   **GERALD GIRARDI'S REVISED**
LVI SERVICES, INC., LVI PARENT CORP.,  :   **OBJECTIONS AND ANSWERS TO**
CODE HENNESSY SIMMONS LLC d/b/a/ CHS  :   **PLAINTIFF'S FIRST SET OF**
PRIVATE EQUITY V LP; APOLLO          :   **INTERROGATORIES**
INVESTMENT CORP.; SCOTT E. STATE, in his ::
official and individual capacities; BRIAN
SIMMONS, in his official and individual capacities;
RAJAY BAGARIA, in his official and individual
capacities; GERALD J. GIRARDI, in his official
and individual capacities,

              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

      Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local

Rules of the United States District Court for the Southern District of New York, Gerald Girardi

("Girardi"), by his attorneys, Sidley Austin LLP, submits his revised answers and makes his

written objections to Plaintiff's First Set of Interrogatories (the "Interrogatories") as set forth

below.  Girardi's response to any of the Interrogatories is not, and shall not be construed as, an

admission of the relevance or admissibility into evidence of any such response or of the propriety

of any of Plaintiff's Interrogatories.

                  **GENERAL OBJECTIONS, COMMENTS AND QUALIFICATIONS**

      In addition to the specific objections separately set forth in response to certain

Interrogatories, Girardi asserts the following General Objections, which are incorporated into

each specific answer and objection, whether or not specifically referred to therein.

1.      Girardi objects to the "Definitions and Instructions" section of the Interrogatories to the extent that Plaintiff's definitions and instructions contradict or go beyond the scope of permissible discovery under the Federal Rules of Civil Procedure and/or the Local Rules of the United States District Court for the Southern District of New York.

2.      Girardi makes the objections and provides the answers contained herein without waiver of any right or privilege to object to the introduction into evidence, in this or any other action or proceedings, of any information contained in any of the documents or the introduction of any of the documents themselves, upon grounds of competency, relevancy, hearsay, authenticity or other proper grounds. Girardi reserves all rights to object to the use of any of the information produced (now or in the future) in response hereto, in any subsequent proceedings, including the trial of this or any other action. Girardi expressly reserves the right to object to further discovery into any subject matter in the Interrogatories. In responding, Girardi does not admit the factual or legal premise of any Interrogatory.

3.      Girardi responds to the Interrogatories based on the best of its present knowledge, information and belief. Girardi's response is at all times subject to such additional or different information that discovery or further investigation may disclose. Girardi reserves the right to supplement and update its responses to the Interrogatories. Any supplemental response provided to the Interrogatories shall not function as a waiver of any privilege or objection Girardi has or may assert herein.

4.      Girardi objects to the Interrogatories to the extent that they seek information that is subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work product doctrine, the joint-defense privilege, and/or any other

applicable privileges.  Girardi intends to and does claim such privilege(s) with respect to all such information.

These General Objections are incorporated into each of the responses set forth below and shall have the same force and effect as if set forth in full in response to each individual request.

*          *          *

## SPECIFIC OBJECTIONS AND ANSWERS

**Interrogatory No. 1:**

Identify all person(s) with knowledge or information regarding the allegations as set forth in the Complaint.

**Objections to Interrogatory No. 1:**

Girardi objects to Request No. 1 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

**Answer to Interrogatory No. 1:**

Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

Employees of Apollo who have knowledge or information regarding the allegations in the Complaint and/or Charge of Discrimination are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 2:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who participated in, or otherwise has information or knowledge concerning the reasons for, and the process leading to, the decision to transition Plaintiff's job duties to other LVI managers.

3

**Objections to Interrogatory No. 2:**

Girardi objects to Request No. 2 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "have information or knowledge concerning the reasons for, and the process leading to . . . transition Plaintiff's duties to other LVI managers" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 2:**

Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

The Apollo employees who have knowledge of the reasons for Scott State's decision to transition Plaintiff's job duties to other LVI managers are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 3:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who have knowledge of the Employment Agreement between Plaintiff and LVI.

**Objections to Interrogatory No. 3:**

Girardi objects to Interrogatory No. 3 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

**Answer to Interrogatory No. 3:**

Without waiving the foregoing objection, and to the extent not objected to therein, Girardi answers:

4

The Apollo employees who have knowledge of the contents of the agreement dated November 16, 2005 between Plaintiff and LVI are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 4:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to replace Plaintiff's Employment Agreement with a consulting agreement.

**Objections to Interrogatory No. 4:**

Girardi objects to Interrogatory No. 4 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to the decision to replace Plaintiff's Employment Agreement with a consulting agreement" is vague, ambiguous and lacks sufficient precision to permit a response. Girardi further objects to Interrogatory No. 4 to the extent that it assumes facts that are not in evidence, such as a decision "to replace Plaintiff's Employment Agreement with a consulting agreement."

**Answer to Interrogatory No. 4:**

Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

Apollo employees who have knowledge of the reasons for Scott State's decision to offer Plaintiff a consultant agreement are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 5:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to terminate Plaintiff's employment.

5

**Objections to Interrogatory No. 5:**

Girardi objects to Interrogatory No. 5 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who participated in, or otherwise have information or knowledge" is vague, ambiguous and lacks sufficient precision to permit a response.

**Answer to Interrogatory No. 5:**

Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

Apollo employees who have knowledge the reasons for Scott State's decision to terminate Plaintiff's employment are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 6:**

Identify all directors, officers, partners, managers and/or employees of the Apollo and/or Parent who determined the terms and conditions of Plaintiff's employment, or otherwise have knowledge of the terms and conditions of Plaintiff's employment, including, but not limited to, the authority to set Plaintiff's compensation, enter into employment agreements with Plaintiff, and/or terminate Plaintiff's employment.

**Objections to Interrogatory No. 6:**

Girardi objects to Interrogatory No. 6 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who otherwise have knowledge" is vague, ambiguous, and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 6:**

Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

Employees of Apollo who had knowledge of the terms and conditions of Plaintiff's employment at LVI are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 7:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who received any complaint, communication or report from Plaintiff, whether formal or informal, written or verbal, regarding any discriminatory actions taken against Plaintiff.

**Objections to Interrogatory No. 7:**

Girardi objects to Interrogatory No. 7 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. Girardi further objects to Interrogatory No. 7 to the extent that it assumes facts that are not in evidence.

**Answer to Interrogatory No. 7:**

Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

Rajay Bagaria, Gerald Girardi and Edward Reynolds were present at the Board of Directors meeting in which Plaintiff raised a complaint of discrimination against Mr. State.

**Interrogatory No. 8:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who have knowledge of the remark about Plaintiff's age made to Plaintiff on or about October 19, 2010 by Defendant State.

7

**Objections to Interrogatory No. 8:**

Girardi objects to Interrogatory No. 8 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. Girardi further objects to Interrogatory No. 8 to the extent that it assumes facts that are not in evidence, such as the existence of a remark "about Plaintiff's age."

**Answer to Interrogatory No. 8:**

Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

Rajay Bagaria, Edward Reynolds and Gerald Girardi were present at the Board of Directors meeting in which Plaintiff alleged that Scott State made a comment about Plaintiff's age.

**Interrogatory No. 9:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who participated in, or otherwise have knowledge of, the decision to hire Defendant State as Chief Executive Officer of the Company.

**Objections to Interrogatory No. 9:**

Girardi objects to Interrogatory No. 9 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who participate in the decision" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 9:**

Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

8

The employees of Apollo who have knowledge of the reasons for the decision to hire Scott State as Chief Executive Officer of LVI are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 10:**

Identify all officers, directors, partners, managers and/or employees of Apollo who are common to the management, ownership, financial control and/or labor relations of Parent and/or have knowledge of the common management, ownership, financial control and/or labor relations of LVI and Apollo and Parent and Apollo.

**Objections to Interrogatory No. 10:**

Girardi objects to Interrogatory No. 10 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who are common to the management, ownership and/or labor relations" is vague, ambiguous and lacks sufficient precision to permit an answer. Girardi further objects to Interrogatory No. 10 to the extent it assumes facts that are not in evidence.

**Answer to Interrogatory No. 10:**

Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

Rajay Bagaria and Gerald Girardi are members of the Parent's Board of Directors.

**Interrogatory No. 11:**

Identify all directors, officers, partners, managers and/or employees of Apollo who have knowledge in any way relating to Parent's control over the labor relations and personnel policies and practices of LVI.

**Objections to Interrogatory No. 11:**

Girardi objects to Interrogatory No. 11 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

9

Case: 13-1165   Document: 47   Page: 63   07/10/2013   986052   250

A-876

For example, the phrase "who have knowledge in any way relating to" is vague, ambiguous and lacks sufficient precision to permit an answer. Girardi further objects to Interrogatory No. 11 to the extent it assumes facts that are not in evidence, such as any control by Parent over the labor relations and practices of LVI.

**Interrogatory No. 12:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who have knowledge concerning the agreement through which Apollo became an equity shareholder of Parent on or about October 8, 2010.

**Objections to Interrogatory No. 12:**

Girardi objects to Interrogatory No. 12 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who have knowledge in any way relating to" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 12:**

Without waiving the foregoing objections, and to the extent not objected to therein, Girardi answers:

The employees of Apollo who have knowledge of the agreement through which Apollo became an equity shareholder of Parent on or about October 8, 2010 are Rajay Bagaria, Gerald Girardi, James Zelter, Edward Reynolds, Patrick Dalton and Justin Sendak.

Dated: *April 11*, 2011

SIDLEY AUSTIN LLP

By: _____
Nicholas H. De Baun
Joanne Seltzer

787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Attorneys for Defendants

LVI Services, Inc., LVI Parent Corp., CHS
Private Equity V LP, Scott E. State, Brian
Simmons, Rajay Bagaria and Gerald J.
Girardi

11

## CERTIFICATE OF SERVICE

I, Joanne Seltzer, an attorney admitted to practice in the State of New York, and not a party to this action, states, under penalty of perjury, that, on *April 11*, 2011, a true and correct copy of Gerald Girardi's Revised Objections and Answers to Plaintiff's First Set of Interrogatories was served by electronic and Federal Express overnight delivery upon the following:

> Douglas H. Wigdor
> Thompson Wigdor & Gilly LLP
> 85 Fifth Avenue
> New York, New York 10003
> dwigdor@twglaw.com

_____
Joanne Seltzer

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                    :    **ECF CASE**
BURTON T. FRIED,                                    :
                                                    :
                    Plaintiff,                      :    No. 10 Civ. 9308 (JSR)
                                                    :
            - against -                             :    **GERALD J. GIRARDI'S**
                                                    :    **VERIFICATION OF**
LVI SERVICES, INC.; LVI PARENT CORP.,               :    **INTERROGATORIES**
CODE HENNESSY SIMMONS LLC d/b/a/ CHS                :
PRIVATE EQUITY V LP; APOLLO                         :
INVESTMENT CORP.; SCOTT E. STATE, in his            :
official and individual capacities; BRIAN           :
SIMMONS, in his official and individual             :
capacities; RAJAY BAGARIA, in his official and      :
individual capacities; GERALD J. GIRARDI, in his    :
official                                            :
and individual capacities,                          :
                                                    :
                    Defendants.                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK         )


      GERALD J. GIRARDI, being duly sworn, deposes and says:

          1.      I am a member of the Board of Directors of LVI Parent Corp.

          2.      I have read my Revised Objections and Answers to Plaintiff's First Set of

Interrogatories ("Defendant's Answers") and know the contents thereof, and the same are true to

my own knowledge, or upon information and belief, and as to those matters, I believe them to be

true.

3.    The bases for my belief as to the truth of Defendant's Answers are my personal knowledge of pertinent events, my review of my records, correspondence and other writings, and conversations I have had.

GERALD J. GIRARDI

Sworn to and subscribed before
me this __ day of ____ 2011

Notary Public

LYDIA ELLIOTT
Notary Public, State of New York
No. 01EL6113939
Qualified in Nassau County
Commission Expires August 9, 2012

# Exhibit 30

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                    :    ECF CASE
BURTON T. FRIED,                                    :
                            Plaintiff,              :
                                                    :    No. 10 Civ. 9308 (JSR)
            v.                                      :
                                                    :    **RAJAY BAGARIA'S REVISED**
LVI SERVICES, INC., LVI PARENT CORP.,               :    **OBJECTIONS AND ANSWERS TO**
CODE HENNESSY SIMMONS LLC d/b/a/ CHS                :    **PLAINTIFF'S FIRST SET OF**
PRIVATE EQUITY V LP; APOLLO                         :    **INTERROGATORIES**
INVESTMENT CORP.; SCOTT E. STATE, in his            ::
official and individual capacities; BRIAN
SIMMONS, in his official and individual capacities;
RAJAY BAGARIA, in his official and individual
capacities; GERALD J. GERARDI, in his official
and individual capacities,

                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

      Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local

Rules of the United States District Court for the Southern District of New York, Rajay Bagaria

("Bagaria"), by his attorneys, Sidley Austin LLP, submits his revised answers and makes his

written objections to Plaintiff's First Set of Interrogatories (the "Interrogatories") as set forth

below.  Bagaria's response to any of the Interrogatories is not, and shall not be construed as, an

admission of the relevance or admissibility into evidence of any such response or of the propriety

of any of Plaintiff's Interrogatories.

### GENERAL OBJECTIONS, COMMENTS AND QUALIFICATIONS

      In addition to the specific objections separately set forth in response to certain

Interrogatories, Bagaria asserts the following General Objections, which are incorporated into

each specific answer and objection, whether or not specifically referred to therein.


1.    Bagaria objects to the "Definitions and Instructions" section of the Interrogatories to the extent that Plaintiff's definitions and instructions contradict or go beyond the scope of permissible discovery under the Federal Rules of Civil Procedure and/or the Local Rules of the United States District Court for the Southern District of New York.

2.    Bagaria makes the objections and provides the answers contained herein without waiver of any right or privilege to object to the introduction into evidence, in this or any other action or proceedings, of any information contained in any of the documents or the introduction of any of the documents themselves, upon grounds of competency, relevancy, hearsay, authenticity or other proper grounds.  Bagaria reserves all rights to object to the use of any of the information produced (now or in the future) in response hereto, in any subsequent proceedings, including the trial of this or any other action.  Bagaria expressly reserves the right to object to further discovery into any subject matter in the Interrogatories.  In responding, Bagaria does not admit the factual or legal premise of any Interrogatory.

3.    Bagaria responds to the Interrogatories based on the best of his present knowledge, information and belief.  Bagaria's response is at all times subject to such additional or different information that discovery or further investigation may disclose.  Bagaria reserves the right to supplement and update his responses to the Interrogatories.  Any supplemental response provided to the Interrogatories shall not function as a waiver of any privilege or objection Bagaria has or may assert herein.

4.    Bagaria objects to the Interrogatories to the extent that they seek information that is subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work product doctrine, the joint-defense privilege, and/or any other

2

applicable privileges. Bagaria intends to and does claim such privilege(s) with respect to all such information.

These General Objections are incorporated into each of the responses set forth below and shall have the same force and effect as if set forth in full in response to each individual request.

*          *          *

## SPECIFIC OBJECTIONS AND ANSWERS

**Interrogatory No. 1:**

Identify all person(s) with knowledge or information regarding the allegations as set forth in the Complaint.

**Objections to Interrogatory No. 1:**

Bagaria objects to Request No. 1 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

**Answer to Interrogatory No. 1:**

Without waiving the foregoing objections, and to the extent not objected to therein, Bagaria answers:

Employees of Apollo who have knowledge or information regarding the allegations in the Complaint and/or Charge of Discrimination are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 2:**

Identify all directors, officers, partners, managers and/or employees of any of the Apollo and/or Parent who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to transition Plaintiff's job duties to other LVI managers.

3

**Objections to Interrogatory No. 2:**

Bagaria objects to Request No. 2 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "have information or knowledge concerning the reasons for, and the process leading to . . . transition Plaintiff's duties to other LVI managers" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 2:**

Without waiving the foregoing objections, and to the extent not objected to therein, Bagaria answers:

The Apollo employees who have knowledge of the reasons for Scott State's decision to transition Plaintiff's job duties to other LVI managers are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 3:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who have knowledge of the Employment Agreement between Plaintiff and LVI.

**Objections to Interrogatory No. 3:**

Bagaria objects to Interrogatory No. 3 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

**Answer to Interrogatory No. 3:**

Without waiving the foregoing objection, and to the extent not objected to therein, Bagaria answers:

The Apollo employees who have knowledge of the contents of the agreement dated November 16, 2005 between Plaintiff and LVI are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 4:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to replace Plaintiff's Employment Agreement with a consulting agreement.

**Objections to Interrogatory No. 4:**

Bagaria objects to Interrogatory No. 4 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to the decision to replace Plaintiff's Employment Agreement with a consulting agreement" is vague, ambiguous and lacks sufficient precision to permit a response. Bagaria further objects to Interrogatory No. 4 to the extent that it assumes facts that are not in evidence, such as a decision "to replace Plaintiff's Employment Agreement with a consulting agreement."

**Answer to Interrogatory No. 4:**

Without waiving the foregoing objections, and to the extent not objected to therein, Bagaria answers:

Apollo employees who have knowledge of the reasons for Scott State's decision to offer Plaintiff a consultant agreement are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 5:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who participated in, or otherwise have information or knowledge concerning the reasons for, and the process leading to, the decision to terminate Plaintiff's employment.

**Objections to Interrogatory No. 5:**

      Bagaria objects to Interrogatory No. 5 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who participated in, or otherwise have information or knowledge" is vague, ambiguous and lacks sufficient precision to permit a response.

**Answer to Interrogatory No. 5:**

      Without waiving the foregoing objections, and to the extent not objected to therein, Bagaria answers:

      Apollo employees who have knowledge the reasons for Scott State's decision to terminate Plaintiff's employment are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 6:**

      Identify all directors, officers, partners, managers and/or employees of the Apollo and/or Parent who determined the terms and conditions of Plaintiff's employment, or otherwise have knowledge of the terms and conditions of Plaintiff's employment, including, but not limited to, the authority to set Plaintiff's compensation, enter into employment agreements with Plaintiff, and/or terminate Plaintiff's employment.

**Objections to Interrogatory No. 6:**

      Bagaria objects to Interrogatory No. 6 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who otherwise have knowledge" is vague, ambiguous, and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 6:**

Without waiving the foregoing objections, and to the extent not objected to therein, Bagaria answers:

Employees of Apollo who had knowledge of the terms and conditions of Plaintiff's employment at LVI are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 7:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who received any complaint, communication or report from Plaintiff, whether formal or informal, written or verbal, regarding any discriminatory actions taken against Plaintiff.

**Objections to Interrogatory No. 7:**

Bagaria objects to Interrogatory No. 7 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. Bagaria further objects to Interrogatory No. 7 to the extent that it assumes facts that are not in evidence.

**Answer to Interrogatory No. 7:**

Without waiving the foregoing objections, and to the extent not objected to therein, Bagaria answers:

Rajay Bagaria, Edward Reynolds and Gerald Girardi were present at the Board of Directors meeting in which Plaintiff raised a complaint of discrimination against Mr. State.

**Interrogatory No. 8:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who have knowledge of the remark about Plaintiff's age made to Plaintiff on or about October 19, 2010 by Defendant State.

7

**Objections to Interrogatory No. 8:**

Bagaria objects to Interrogatory No. 8 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. Bagaria further objects to Interrogatory No. 8 to the extent that it assumes facts that are not in evidence, such as the existence of a remark "about Plaintiff's age."

**Answer to Interrogatory No. 8:**

Without waiving the foregoing objections, and to the extent not objected to therein, Bagaria answers:

Rajay Bagaria, Edward Reynolds and Gerald Girardi were present at the Board of Directors meeting in which Plaintiff alleged that Scott State made a comment about Plaintiff's age.

**Interrogatory No. 9:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who participated in, or otherwise have knowledge of, the decision to hire Defendant State as Chief Executive Officer of the Company.

**Objections to Interrogatory No. 9:**

Bagaria objects to Interrogatory No. 9 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who participate in the decision" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 9:**

Without waiving the foregoing objections, and to the extent not objected to therein, Bagaria answers:

8

The employees of Apollo who have knowledge of the reasons for the decision to hire Scott State as Chief Executive Officer of LVI are Rajay Bagaria and Gerald Girardi.

**Interrogatory No. 10:**

Identify all officers, directors, partners, managers and/or employees of Apollo who are common to the management, ownership, financial control and/or labor relations of Parent and/or have knowledge of the common management, ownership, financial control and/or labor relations of LVI and Apollo and Parent and Apollo.

**Objections to Interrogatory No. 10:**

Bagaria objects to Interrogatory No. 10 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who are common to the management, ownership and/or labor relations" is vague, ambiguous and lacks sufficient precision to permit an answer. Bagaria further objects to Interrogatory No. 10 to the extent it assumes facts that are not in evidence.

**Answer to Interrogatory No. 10:**

Without waiving the foregoing objections, and to the extent not objected to therein, Bagaria answers:

Rajay Bagaria and Gerald Girardi are members of the Parent's Board of Directors.

**Interrogatory No. 11:**

Identify all directors, officers, partners, managers and/or employees of Apollo who have knowledge in any way relating to Parent's control over the labor relations and personnel and practices of LVI.

**Objections to Interrogatory No. 11:**

Bagaria objects to Interrogatory No. 11 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

9

For example, the phrase "who have knowledge in any way relating to" is vague, ambiguous and lacks sufficient precision to permit an answer. Bagaria further objects to Interrogatory No. 11 to the extent it assumes facts that are not in evidence, such as any control by Parent over the labor relations and practices of LVI.

**Interrogatory No. 12:**

Identify all directors, officers, partners, managers and/or employees of Apollo and/or Parent who have knowledge concerning the agreement through which Apollo became an equity shareholder of Parent on or about October 8, 2010.

**Objections to Interrogatory No. 12:**

Bagaria objects to Interrogatory No. 12 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of extensive information which has no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "who have knowledge in any way relating to" is vague, ambiguous and lacks sufficient precision to permit an answer.

**Answer to Interrogatory No. 12:**

Without waiving the foregoing objections, and to the extent not objected to therein, Bagaria answers:

The employees of Apollo who have knowledge of the agreement through which Apollo became an equity shareholder of Parent on or about October 8, 2010 are Rajay Bagaria, Gerald Girardi, James Zelter, Edward Reynolds, Patrick Dalton and Justin Sendak.

Dated: April 11, 2011

SIDLEY AUSTIN LLP

By: _____
Nicholas H. De Baun
Joanne Seltzer

787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Attorneys for Defendants

LVI Services, Inc., LVI Parent Corp., CHS
Private Equity V LP, Scott E. State, Brian
Simmons, Rajay Bagaria and Gerald J.
Girardi

11

## CERTIFICATE OF SERVICE

I, Joanne Seltzer, an attorney admitted to practice in the State of New York, and not a party to this action, states, under penalty of perjury that, on *April 11*, 2011, a true and correct copy of Rajay Bagaria's Objections and Answers to Plaintiff's First Set of Interrogatories was served by electronic and Federal Express overnight delivery upon the following:

Douglas H. Wigdor
Thompson Wigdor & Gilly LLP
85 Fifth Avenue
New York, New York 10003
dwigdor@twglaw.com

_____
Joanne Seltzer

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

|  |  |  |
|---|---|---|
|  | : | **ECF CASE** |
| BURTON T. FRIED, | : |  |
|  | : |  |
| Plaintiff, | : | No. 10 Civ. 9308 (JSR) |
|  | : |  |
| - against - | : | **RAJAY BAGARIA'S** |
|  | : | **VERIFICATION OF** |
| LVI SERVICES, INC.; LVI PARENT CORP., | : | **INTERROGATORIES** |

LVI SERVICES, INC.; LVI PARENT CORP.,
CODE HENNESSY SIMMONS LLC d/b/a/ CHS
PRIVATE EQUITY V LP; APOLLO
INVESTMENT CORP.; SCOTT E. STATE, in his :
official and individual capacities; BRIAN
SIMMONS, in his official and individual
capacities; RAJAY BAGARIA, in his official and :
individual capacities; GERALD J. GIRARDI, in his:
official
and individual capacities,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

STATE OF NEW YORK        )
                              ) ss.:
COUNTY OF NEW YORK    )

         RAJAY BAGARIA, being duly sworn, deposes and says:

            1.       I am a member of the Board of Directors of LVI Parent Corp.

            2.       I have read my Revised Objections and Answers to Plaintiff's First Set of Interrogatories ("Defendant's Answers") and know the contents thereof, and the same are true to my own knowledge, or upon information and belief, and as to those matters, I believe them to be true.

3.     The bases for my belief as to the truth of Defendant's Answers are my personal knowledge of pertinent events, my review of my records, correspondence and other writings, and conversations I have had.

RAJAY BAGARIA

Sworn to and subscribed before me this 11 day of April, 2011

Notary Public

LYDIA ELLIOTT
Notary Public, State of New York
No. 01EL6113538
Qualified in Nassau County
Commission Expires August 8, 2012

2

# Exhibit 31



November 30, 2010

To: The Board of Directors of  LVI Parent Corp., LVI Services Inc. and all of it's Subsidiaries
   and Affiliated Companies


   Effective immediately, because of the termination of my employment as Chairman of
   LVI Services Inc., I hereby resign all of my positions as Director and/or Officer of LVI
   Parent Corp., LVI Services Inc. and all of it's subsidiaries and affiliated companies.

Dated: November 30, 2010

_____

Burton T. Fried

CONFIDENTIAL

LVI 000601

# Exhibit 32

A-899

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
BURTON T. FRIED,                      :
                                      :
                Plaintiff,            :
                                      :
          -v-                         :
                                      :
LVI SERVICES, INC.; LVI PARENT CORP., :
CODE HENNESSEY SIMMONS LLC d/b/a CHS  :     10 Civ. 9308 (JSR)
PRIVATE EQUITY V LP; APOLLO           :
INVESTMENT CORP.; SCOTT E. STATE, in  :        ORDER
his official and individual           :
capacities; RAJAY BAGARIA, in his     :
official and individual capacities;   :
GERALD J. GIRARDI, in his individual  :
and official capacities,              :
                                      :
                Defendants.           :
------------------------------------ x

JED S. RAKOFF, U.S.D.J.


     All remaining defendants in this case have moved for summary

judgment with respect to all remaining claims.  After careful

consideration, this Court hereby grants summary judgment dismissing

all remaining claims, with the exception of plaintiff's claim of

retaliation to the extent, and only to the extent, that it is based on

the termination of plaintiff's daughter, Shari Dembin (which is also

the subject of a related action, Dembin v. LVI Services, Inc., 11 Civ.

1888).

     An opinion setting forth the reasons for these determinations

will issue in due course, following which counsel in this and the

related action should jointly call Chambers to schedule appropriate

trial(s) in the remaining actions.  In the meantime, all further

**A-900**

proceedings in this case (but not in the related case) are hereby

stayed.

SO ORDERED.



JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       September 1, 2011

2

# Exhibit 33

```
                                                              1
 1

 2    UNITED STATES DISTRICT COURT

 3    SOUTHERN DISTRICT OF NEW YORK

 4    No. 10 Civ. 9308(JSR)

 5    ------------------------------------x

 6    BURTON T. FRIED,

 7                         Plaintiff,

 8           - against -

 9    LVI SERVICES, INC., LVI PARENT CORP., CODE

10    HENNESSY SIMMONS, LLC d/b/a CHS PRIVATE

11    EQUITY V LP; APOLLO INVESTMENT CORP.,

12    SCOTT E. STATE, in his official and

13    individual capacities; BRIAN SIMMONS, in

14    his official and individual capacities;

15    RAJAY BAGARIA, in his official and

16    individual capacities; GERALD J. GIRARDI,

17    in his official and individual capacities,

18                         Defendants.

19    ------------------------------------x

20                         May 25, 2011

                           11:10 a.m.

21

22

23

24

25
```



**2**

1
2
3
4        VIDEOTAPE DEPOSITION of BRIAN
5    SIMMONS, taken by the Plaintiff, pursuant
6    to Notice, held at the offices of Thompson
7    Wigdor & Gilly, LLP, 85 Fifth Avenue, New
8    York, New York, before Debbie Zaromatidis,
9    a Shorthand Reporter and Notary Public of
10   the State of New York.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**4**

1
2            S T I P U L A T I O N S
3
4        IT IS HEREBY STIPULATED AND
5    AGREED by and between the Attorneys for
6    the respective parties hereto that filing
7    and sealing be and the same are hereby
8    waived.
9        IT IS FURTHER STIPULATED AND
10   AGREED that all objections except as to
11   the form of the question, shall be
12   reserved to the time of the trial.
13       IT IS FURTHER STIPULATED AND
14   AGREED that the within examination may be
15   signed and sworn to before any notary
16   public with the same force and effect as
17   though signed and sworn to before this
18   Court.
19
20
21
22
23
24
25

**3**

1
2    A P P E A R A N C E S :
3
4    THOMPSON WIGDOR & GILLY, LLP
5        Attorneys for Plaintiff
6            85 Fifth Avenue
7            New York, New York 10003
8    BY:  SHAFFIN A. DATOO, ESQ.
9         MATTHEW GORMAN, ESQ.
10
11   SIDLEY AUSTIN, LLP
12       Attorneys for Defendants
13           787 Seventh Avenue
14           New York, New York 10019
15   BY:  JOANNE SELTZER, ESQ.
16
17
18   ALSO PRESENT:
19   BURTON FRIED
20   J.D. MARTINEZ, Videographer
21
22
23
24
25

**5**

1
2        THE VIDEOGRAPHER:  We are on   11:09:53
3    the record. My name is J.D. Martinez of   11:10:00
4    Veritext New York. The date today is May   11:10:03
5    25, 2011, and the time is 11:10 a.m.  This  11:10:07
6    deposition is being held in the office of   11:10:11
7    Thompson Wigdor & Gilly, LLP located at 85   11:10:15
8    Fifth Avenue, New York, New York. The       11:10:18
9    caption of the case is Burton T. Fried      11:10:19
10   versus LVI Services, Inc. et al. filed in   11:10:21
11   the United States District Court, Southern  11:10:25
12   District of New York.                       11:10:27
13       The name of the witness is Brian   11:10:29
14   Simmons. At this time the attorneys will   11:10:30
15   identify themselves and the parties they   11:10:33
16   represent after which our court reporter,   11:10:35
17   Debbie Zaromatidis, will swear in the       11:10:36
18   witness, and we can proceed.               11:10:39
19       MS. SELTZER:  Joanne Seltzer   11:10:42
20   with Sidley Austin representing all the   11:10:43
21   defendants.                               11:10:46
22       MR. DATOO:  Shaffin Datoo with   11:10:47
23   Thompson Widgor & Gilly representing the   11:10:51
24   plaintiff Burton T. Fried.               11:10:51
25

2 (Pages 2 to 5)

**VERITEXT REPORTING COMPANY**

212-267-6868                              516-608-2400

**6**

```
1
2   BRIAN SIMMONS,
3   having first been duly sworn by a Notary
4   Public of the State of New York, was
5   examined and testified as follows:
6   EXAMINATION BY MR. DATOO:          11:11:03
7      Q.   Good morning, Mr. Simmons. As I  11:11:03
8   mentioned to you earlier, my name is     11:11:05
9   Shaffin Datoo. To my left is my colleague  11:11:07
10  Matthew Gorman, and to his left, as you  11:11:10
11  know, is Burt Fried.                11:11:13
12       We are going to ask you some     11:11:15
13  questions today, and hopefully you can   11:11:17
14  answer all of them unless of course your  11:11:20
15  attorney directs you not to answer a     11:11:23
16  question. I am just going to start off by  11:11:26
17  asking you some preliminary questions.   11:11:28
18       Is your ability to tell the     11:11:29
19  truth in any way impaired today?        11:11:30
20     A.   No.                        11:11:32
21     Q.   Do you understand that the     11:11:33
22  answers you are about to give are under  11:11:34
23  oath, and that you are subject to        11:11:35
24  penalties of perjury if you give an      11:11:37
25  untruthful answer?                  11:11:40
```

**7**

```
1              SIMMONS
2     A.   Yes.                        11:11:41
3     Q.   I am going to assume that if you  11:11:41
4   answer a question, that you understood it.  11:11:43
5   If you don't understand a question, let me  11:11:45
6   know, and I will ask the question in a    11:11:47
7   different way?                      11:11:49
8     A.   Thank you.                   11:11:49
9     Q.   Please give verbal answers to my  11:11:50
10  questions. Don't shake your head or nod  11:11:52
11  it. The court reporter won't be able to  11:11:56
12  take that down. Also please let me finish  11:11:58
13  asking a question even though you may    11:12:01
14  already think you know where I am with it.  11:12:03
15  That is -- once again that is for the    11:12:09
16  court reporter.                     11:12:10
17       If you need a break, let me     11:12:11
18  know. The only condition is that you     11:12:14
19  answer the last question asked.         11:12:15
20       In connection with this lawsuit,  11:12:18
21  did you provide your attorney with all   11:12:20
22  responsive documents?               11:12:22
23     A.   Yes.                        11:12:23
24     Q.   And where did you look to find  11:12:24
25  these documents?                   11:12:27
```

**8**

```
1              SIMMONS
2     A.   I looked in my e-mail files at   11:12:27
3   work, and I instructed various people at  11:12:32
4   my firm to look through the firm's files  11:12:35
5   on our investment in LVI.            11:12:38
6     Q.   Do you have a personal e-mail   11:12:41
7   account?                         11:12:43
8     A.   I do not.                    11:12:44
9     Q.   Do you keep any work-related    11:12:45
10  documents at home?                  11:12:48
11     A.   I do not.                    11:12:49
12     Q.   Have you ever been sued before?  11:12:50
13     A.   My firm has been sued. I am not  11:12:52
14  sure if I was named personally in any of  11:12:58
15  those suits or not.                  11:13:00
16     Q.   And other than this lawsuit, has  11:13:01
17  anyone ever accused you of discrimination  11:13:03
18  before?                          11:13:06
19     A.   No.                        11:13:06
20     Q.   Have you ever given any sworn   11:13:06
21  testimony before?                   11:13:12
22     A.   Yes.                        11:13:12
23     Q.   How many times?              11:13:13
24     A.   Once.                       11:13:14
25     Q.   And in what type of proceeding   11:13:16
```

**9**

```
1              SIMMONS
2   was that?                         11:13:20
3     A.   It was a deposition.           11:13:20
4     Q.   And do you know in what type of  11:13:21
5   case that was?                     11:13:23
6     A.   I don't.                     11:13:24
7     Q.   Okay. Do you know how long ago  11:13:26
8   you were deposed?                   11:13:29
9     A.   Approximately twenty years.     11:13:30
10     Q.   Okay. Have you ever been        11:13:32
11  deposed in connection with an employment  11:13:34
12  discrimination case?                 11:13:35
13     A.   No.                        11:13:37
14     Q.   Did you do anything to prepare  11:13:37
15  for this deposition?                 11:13:40
16     A.   I met with my attorney.        11:13:41
17     Q.   How many times?              11:13:44
18     A.   Once.                       11:13:47
19     Q.   And for how long?            11:13:48
20     A.   Approximately two hours.       11:13:49
21     Q.   And did you read Mr. Fried's    11:13:52
22  deposition transcript?               11:13:56
23     A.   I did not.                   11:13:57
24     Q.   Did you read any excerpts or   11:13:58
25  summaries of his deposition transcript?  11:14:00
```

3 (Pages 6 to 9)

VERITEXT REPORTING COMPANY

212-267-6868                                   516-608-2400

## 10

SIMMONS

1
2     A.   I did not.                          11:14:03
3     Q.   Mr. Simmons, how old are you?       11:14:04
4     A.   Fifty-one.                          11:14:06
5     Q.   And what is your date of birth?     11:14:06
6     A.   April 24.                           11:14:08
7     Q.   What year?                          11:14:10
8     A.   1960.                               11:14:11
9     Q.   And do you know the plaintiff in    11:14:16
10   this lawsuit, Mr. Burt Fried?            11:14:18
11    A.   Yes.                               11:14:20
12    Q.   How so?                            11:14:21
13    A.   He is the former chairman of the   11:14:21
14   board of LVI.                            11:14:27
15    Q.   And do you know how old Mr.        11:14:30
16   Fried is?                                11:14:32
17    A.   I do not.                          11:14:32
18    Q.   Okay. How old do you think he      11:14:35
19   is?                                      11:14:37
20    A.   Approximately 70.                  11:14:37
21    Q.   How long have you known Mr.        11:14:39
22   Fried?                                   11:14:42
23    A.   Approximately five and a half      11:14:42
24   years.                                   11:14:45
25    Q.   What LVI entity employed Mr.       11:14:46

## 11

SIMMONS

1
2     Fried in 2010?                           11:14:53
3     A.   I don't know.                       11:14:55
4     Q.   Do you know who Mr. Fried worked    11:14:56
5     for in 2010?                             11:15:02
6          MS. SELTZER: Objection. Asked      11:15:06
7     and answered. You can answer it.        11:15:07
8     A.   I don't know.                       11:15:09
9     Q.   Do you know if he worked for LVI    11:15:10
10   Parent Corp.?                            11:15:12
11    A.   I don't know.                       11:15:13
12    Q.   Do you know if he worked for LVI    11:15:14
13   Services?                                11:15:17
14    A.   I don't know.                       11:15:17
15    Q.   Do you know what his job title      11:15:18
16   was?                                     11:15:20
17         MS. SELTZER: I am sorry.           11:15:22
18   Which portion of 2010 are you talking    11:15:23
19   about?                                   11:15:25
20         MR. DATOO: I'm sorry. Sorry.       11:15:26
21    Q.   In November 2010, do you know      11:15:28
22   what his job title was?                  11:15:29
23    A.   November 2010 I believe is the     11:15:31
24   month he resigned from various potions at 11:15:40
25   various LVI entities.                    11:15:43

## 12

SIMMONS

1
2     Q.   Was he —                            11:15:45
3     A.   So it is — so I don't know what    11:15:46
4     his job title was in November.          11:15:48
5     Q.   Was he — did he resign or was      11:15:50
6     he fired?                               11:15:51
7     A.   He resigned from some positions,   11:15:52
8     and he was terminated from some positions. 11:16:00
9     Q.   Do you know what position he       11:16:02
10   resigned from?                           11:16:03
11    A.   I do not.                           11:16:04
12    Q.   Do you know what positions he      11:16:06
13   was fired from?                          11:16:07
14    A.   I do not.                           11:16:08
15    Q.   Are you currently employed?        11:16:08
16    A.   Yes.                               11:16:10
17    Q.   Full time?                         11:16:10
18    A.   Yes.                               11:16:12
19    Q.   Where do you work?                 11:16:12
20    A.   CHS Capital.                       11:16:13
21    Q.   And what does CHS do?             11:16:15
22    A.   CHS is a private equity fund       11:16:17
23   manager.                                 11:16:20
24    Q.   How long have you worked there?   11:16:22
25    A.   Approximately twenty-three         11:16:24

## 13

SIMMONS

1
2     years.                                   11:16:26
3     Q.   And what is your current job       11:16:26
4     title?                                   11:16:29
5     A.   Managing partner.                  11:16:29
6     Q.   And how long have you held that   11:16:30
7     title?                                   11:16:32
8     A.   Approximately a year.             11:16:32
9     Q.   And what was your previous job    11:16:37
10   title?                                   11:16:40
11    A.   Partner.                           11:16:40
12    Q.   How long did you hold that title  11:16:41
13   for?                                     11:16:43
14    A.   Approximately twenty-one years.   11:16:44
15    Q.   And what are your job duties,     11:16:48
16   your current job duties?                 11:16:50
17    A.   I am responsible for numerous     11:16:51
18   aspects of managing our firm. I serve as 11:16:56
19   one of the partners on an investment team. 11:17:02
20   I serve on our management committee, and I 11:17:05
21   serve on our investment committee.       11:17:08
22    Q.   What does LVI Parent Corp. do?    11:17:10
23    A.   I don't know.                      11:17:15
24    Q.   Do you know who owns LVI Parent?  11:17:17
25    A.   No.                                11:17:21

4 (Pages 10 to 13)

VERITEXT REPORTING COMPANY

212-267-6868                                                    516-608-2400

**18**

```
1              SIMMONS
2    A.   Or in New York at LVI's office.   11:21:32
3    Q.   When were you first appointed to   11:21:35
4  the board of directors?          11:21:36
5    A.   November of 2005.          11:21:38
6    Q.   And how many seats does CHS have   11:21:40
7  on the board of directors?        11:21:43
8    A.   Two.                11:21:45
9    Q.   And do you occupy one of those   11:21:45
10  seats?               11:21:50
11    A.   Yes, I do.           11:21:50
12    Q.   And who occupies the other seat?   11:21:51
13    A.   Rob Hogan.           11:21:53
14    Q.   And what types of decisions does   11:21:54
15  the board make?            11:22:01
16    A.   The board approves an annual   11:22:10
17  budget.  The board approves acquisitions.   11:22:13
18  The board approves other requests   11:22:16
19  presented by the chief executive officer.   11:22:19
20    Q.   And what types of requests are   11:22:22
21  those?               11:22:24
22    A.   Requests for capital spending,   11:22:24
23  requests to entering into long-term   11:22:29
24  contracts.             11:22:32
25    Q.   How about closing offices?   11:22:34
```

**19**

```
1              SIMMONS
2    A.   No.                11:22:36
3    Q.   And does the board make any   11:22:38
4  personnel decisions?          11:22:41
5    A.   Other than hiring a chief   11:22:43
6  executive officer, no.         11:22:47
7    Q.   Now, since you've been on the   11:22:48
8  board, were you given any        11:22:55
9  anti-discrimination training?      11:22:56
10    A.   No.                11:22:58
11      MS. SELTZER:   Objection.   11:23:00
12  Through the board or through his --   11:23:01
13      MR. DATOO:   Through the board.   11:23:03
14    A.   No.                11:23:05
15    Q.   Okay.  Now, the entity whose   11:23:05
16  board you sit on, the LVI entity whose   11:23:10
17  board you sit on, does that entity have a   11:23:14
18  handbook?              11:23:16
19    A.   I don't know.           11:23:16
20    Q.   Does that entity whose board you   11:23:17
21  sit on have an equal employment   11:23:19
22  opportunity policy?          11:23:22
23    A.   I imagine so.          11:23:23
24    Q.   Why?              11:23:29
25      MS. SELTZER:   Objection, but   11:23:30
```

**20**

```
1              SIMMONS
2  you can answer.            11:23:31
3    A.   I believe all companies have   11:23:31
4  EEOC policies.            11:23:33
5    Q.   Okay.  Does the entity whose   11:23:34
6  board you sit on have an        11:23:36
7  anti-discrimination policy?        11:23:38
8    A.   I am sorry.  Repeat the   11:23:39
9  question, please.           11:23:44
10    Q.   Does the entity whose board you   11:23:44
11  sit on have an anti-discrimination policy?   11:23:46
12    A.   Sure.  Yes.           11:23:48
13    Q.   And does the entity whose board   11:23:50
14  you sit on have an anti-retaliation   11:23:53
15  policy?               11:23:56
16    A.   I don't know.           11:23:56
17    Q.   What is LVI Acquisition Corp.?   11:23:59
18    A.   I am not sure.          11:24:06
19    Q.   How many employees does LVI   11:24:17
20  have?               11:24:21
21    A.   I don't know.           11:24:21
22    Q.   Does the entity of the board you   11:24:25
23  sit on have any employees?        11:24:41
24    A.   I don't know.           11:24:43
25    Q.   Does the entity whose board you   11:24:46
```

**21**

```
1              SIMMONS
2  sit on have any officers?        11:24:50
3    A.   I am not -- I don't know.   11:24:51
4    Q.   Who is Jeffrey Smith?        11:25:01
5    A.   Jeffrey Smith is an attorney   11:25:02
6  with Sidley Austin.          11:25:07
7    Q.   Does he serve on the board of   11:25:09
8  directors for the entity whose board you   11:25:11
9  sit on?               11:25:13
10    A.   No.                11:25:13
11    Q.   Does he -- is he a secretary to   11:25:14
12  the board of directors for the entity you   11:25:16
13  sit on?               11:25:18
14    A.   No.                11:25:19
15      MS. SELTZER:   If -- if I might   11:25:19
16  make a suggestion, if you phrase your   11:25:32
17  questions between LVI Services he might be   11:25:35
18  able to give you better answers.      11:25:38
19    A.   I can't distinguish between the   11:25:39
20  LVI entities.  LVI to me is LVI.  Period.   11:25:41
21      MR. DATOO:   Let's go off the   11:25:46
22  record.               11:25:47
23      THE VIDEOGRAPHER:   Off the   11:25:50
24  record.  The time is 11:25 a.m.      11:25:51
25      (Discussion held off the   11:26:37
```

6 (Pages 18 to 21)

**62**

SIMMONS

1
2    A.   Do I recall when?            12:08:12
3    Q.   When.                        12:08:14
4    A.   No, I don't recall exactly when. 12:08:15
5    Q.   Do you know if it was in '06,   12:08:16
6    '07, '08, '09, '10?               12:08:19
7    A.   I just don't remember. I am   12:08:22
8    sorry.                            12:08:24
9    Q.   Now, did Mr. State want to speak 12:08:24
10   to Mr. Fried before accepting an offer   12:08:28
11   from LVI?                         12:08:30
12   A.   Yes.                         12:08:32
13   Q.   Why?                         12:08:32
14   A.   He was concerned about his    12:08:33
15   ability to conduct the job of chief   12:08:34
16   executive officer without interference   12:08:39
17   with Mr. Fried.                   12:08:41
18   Q.   Why would he be concerned?    12:08:42
19   A.   I don't know why.            12:08:44
20   Q.   And did Mr. Fried speak to Mr.   12:08:49
21   State?                            12:08:53
22   A.   Yes, I believe so.           12:08:53
23   Q.   And do you know what they     12:08:54
24   discussed?                        12:08:55
25   A.   I believe they discussed the   12:08:56

**63**

SIMMONS

1
2    autonomy that Mr. State would have to   12:08:59
3    organize the affairs of the company in the   12:09:02
4    way in which he saw fit.          12:09:04
5    Q.   And do you know how that      12:09:09
6    conversation went?                12:09:10
7    A.   I believe Mr. Fried assured Mr.   12:09:10
8    State that he would have free rein to run   12:09:12
9    the company any way he wanted, and that   12:09:15
10   Mr. Fried would remain at the company only   12:09:17
11   as long as Mr. State desired.     12:09:19
12   Q.   And how do you know that they   12:09:21
13   had this discussion?              12:09:24
14   A.   Mr. Fried told me.           12:09:25
15   Q.   After Mr. State started working   12:09:29
16   for LVI, did Mr. Fried's job title change?   12:09:36
17   A.   Yes.                         12:09:40
18   Q.   To what?                     12:09:41
19   A.   To — back to chairman of the   12:09:43
20   board.                            12:09:46
21   Q.   And what were his job duties   12:09:46
22   after his title changed?          12:09:50
23   A.   I don't know.                12:09:51
24   Q.   Do you know if they were any   12:09:52
25   different from when — from what his job   12:09:55

**64**

SIMMONS

1
2    duties were as chairman?          12:09:57
3        MS. SELTZER:   Just as a       12:09:59
4    clarification, you're talking about his   12:10:00
5    duties as chairman of the board of the   12:10:02
6    directors?                        12:10:06
7        MR. DATOO:   His duties as     12:10:07
8    chairman.                         12:10:08
9        MS. SELTZER:   Okay.           12:10:10
10   A.   Chairman of the board of      12:10:11
11   directors.                        12:10:12
12   Q.   As chairman, that is what I am   12:10:12
13   asking. Do you know what his job duties   12:10:13
14   were as chairman?                 12:10:15
15   A.   Is there a distinction between   12:10:16
16   chairman and chairman of the board of   12:10:19
17   directors?                        12:10:20
18   Q.   There is.                    12:10:21
19   A.   Can you explain that to me,    12:10:21
20   please?                           12:10:23
21   Q.   Sure.   Why don't we go off the   12:10:24
22   record because this is not going to be a   12:10:26
23   question answer, so —             12:10:27
24       THE VIDEOGRAPHER:   Going off   12:10:29
25   the record. 12:10 p.m.            12:10:29

**65**

SIMMONS

1
2        (Discussion held off the       12:11:00
3    record.)                          12:11:00
4        THE VIDEOGRAPHER:   We are      12:11:01
5    returning to the record. 12:11 p.m.   12:11:07
6    Q.   Was Mr. Fried an employee of   12:11:10
7    LVI?                              12:11:13
8    A.   At what time?                12:11:13
9    Q.   At any time.                 12:11:22
10   A.   At any time. Yes, Mr. Fried was   12:11:23
11   an employee of at least one LVI entity.   12:11:25
12   Q.   And of that LVI entity that he   12:11:28
13   was an employee of, what was his job   12:11:30
14   title?                            12:11:32
15   A.   I don't know.                12:11:32
16   Q.   And was he also the chairman of   12:11:33
17   the board of directors?           12:11:36
18   A.   I —                         12:11:37
19       MS. SELTZER:   I object to the   12:11:41
20   form.                             12:11:42
21   A.   At what point in time?        12:11:42
22   Q.   At any point in time.         12:11:44
23   A.   Yes, Mr. Fried served as      12:11:45
24   chairman of the board of directors   12:11:47
25   and — and to my knowledge that was his   12:11:49

17 (Pages 62 to 65)

74

```
SIMMONS
 1
 2   performance at board meetings?              12:31:05
 3       A.   I don't remember the exact        12:31:07
 4   number.  I imagine I observed something    12:31:09
 5   negative at every board meeting.           12:31:11
 6       Q.   And what was that?                12:31:13
 7       A.   Mr. Fried can be a challenging    12:31:15
 8   individual to work with in situations      12:31:20
 9   where opinions counter to his are proposed 12:31:22
10   and discussed and considered, and I        12:31:28
11   observed that challenging behavior on      12:31:31
12   numerous occasions.                        12:31:33
13       Q.   And did you speak to Mr. Fried    12:31:35
14   about that?                                12:31:37
15       A.   I may have.  I don't remember.    12:31:37
16       Q.   And did you put that in writing,  12:31:39
17   your observations?                         12:31:45
18       A.   I may have.  I don't remember.    12:31:46
19       Q.   Did you ever put in writing your  12:31:48
20   observations regarding Mr. Fried's work    12:31:50
21   performance?                               12:31:52
22           MS. SELTZER:  Objection.           12:31:53
23       A.   I may have.  I don't remember.    12:31:54
24       Q.   And if you would have, would you  12:31:55
25   have provided that -- those documents to   12:31:57
```

75

```
SIMMONS
 1
 2   your counsel?                              12:31:59
 3       A.   No.  Well, in connection with     12:31:59
 4   this lawsuit, sure.  If I have them, they  12:32:03
 5   have them.                                 12:32:07
 6       Q.   Okay.  Did you attend a meeting   12:32:07
 7   on October 19, 2010 between Mr. State and  12:32:16
 8   Mr. Fried?                                 12:32:20
 9       A.   I don't believe so.              12:32:21
10       Q.   Do you know if they met that      12:32:25
11   day?                                       12:32:27
12       A.   I don't know.                     12:32:27
13       Q.   Do you know if Mr. State made     12:32:28
14   any comments regarding Mr. Fried's age?    12:32:29
15       A.   I have no idea.                    12:32:32
16       Q.   Did Mr. Fried ever tell you that  12:32:34
17   Mr. State made a comment about his age?    12:32:36
18       A.   Yes.                               12:32:39
19       Q.   When?                              12:32:39
20       A.   At the board meeting.             12:32:40
21       Q.   And --                            12:32:42
22       A.   The final board meeting at which  12:32:43
23   Mr. Fried -- that Mr. Fried attended.      12:32:45
24       Q.   And what did Mr. Fried tell you?  12:32:47
25       A.   He didn't tell me anything.  He   12:32:49
```

76

```
SIMMONS
 1
 2   told the board in a -- in the middle of a  12:32:50
 3   long tirade regarding the injustices being 12:32:55
 4   done to him that he was well aware         12:32:59
 5   of -- of the legal ramifications of age    12:33:08
 6   discrimination, and he threatened Mr.      12:33:11
 7   State and the board into a proceeding      12:33:15
 8   regarding alleged age discrimination.      12:33:17
 9       Q.   Did he tell you what comment      12:33:20
10   Mr. State made to him about his age?       12:33:22
11       A.   I don't believe so.              12:33:27
12       Q.   Did he tell you about any         12:33:28
13   comment Mr. State made to him about his    12:33:29
14   age?                                       12:33:31
15       A.   I don't believe so.  He simply    12:33:32
16   stated that comments had been made.        12:33:36
17       Q.   But he didn't -- to your          12:33:37
18   knowledge, he didn't tell you what comment 12:33:38
19   was made?                                  12:33:40
20       A.   If he did, I don't remember.      12:33:40
21       Q.   Did you investigate Mr. Fried's   12:33:42
22   allegations of age discrimination?         12:33:46
23       A.   What do you mean by               12:33:49
24   "investigate"?                             12:33:51
25       Q.   Did you look into his             12:33:51
```

77

```
SIMMONS
 1
 2   allegations of age discrimination?         12:33:52
 3       A.   Other than the discussion -- I    12:33:54
 4   guess no is the answer.  No.               12:34:03
 5       Q.   Did the board?                    12:34:06
 6       A.   No.                               12:34:07
 7       Q.   Why not?                          12:34:07
 8       A.   We didn't deem them to have       12:34:08
 9   enough validity to investigate.            12:34:14
10       Q.   Okay.  Now, did there come a      12:34:16
11   time when Mr. Fried's job duties -- when   12:34:34
12   Mr. State started transitioning Mr.        12:34:37
13   Fried's job duties to other people?        12:34:40
14       A.   I'm not certain.                  12:34:41
15       Q.   Did there come a time when Mr.    12:34:42
16   Fried e-mailed you a list of his job       12:34:44
17   duties?                                    12:34:46
18       A.   Whose job duties?                 12:34:47
19       Q.   His job duties?                   12:34:48
20       A.   No.                               12:34:50
21       Q.   Did there come a time when Mr.    12:34:51
22   Fried e-mailed you a list of his job       12:34:53
23   duties?                                    12:34:56
24           MS. SELTZER:  Mr. Fried's job      12:34:57
25   duties?                                    12:34:59
```

20 (Pages 74 to 77)

---

**130**

SIMMONS

2 Q.  -- did you send another letter   02:29:43
3 to Burt?   02:29:44
4 A.  I don't remember.   02:29:45
5 Q.  Okay.   02:29:47
6 A.  At this point it became pretty   02:29:51
7 clear that Burt had chartered a course   02:29:54
8 that was highly unlikely to result in an   02:29:56
9 acceptable resolution of this dispute,   02:29:58
10 management dispute between himself and Mr.   02:30:02
11 State.   02:30:04
12 Q.  Now, did there come a time when   02:30:04
13 Mr. Fried was fired?   02:30:06
14 A.  Well, Mr. Fried was asked to   02:30:07
15 assume the position of chairman of the   02:30:11
16 board with a defined list of   02:30:15
17 responsibilities and a compensation   02:30:18
18 arrangement that would have enabled him to   02:30:20
19 earn the same level of compensation he had   02:30:24
20 previously been paid assuming he worked   02:30:28
21 the same number of hours, and he was told   02:30:30
22 that if he did not accept that position   02:30:33
23 then he would be terminated.   02:30:36
24 Q.  So did there come a time when he   02:30:38
25 was fired?   02:30:40

**131**

SIMMONS

2 A.  Burt did not accept the position   02:30:40
3 as chairman of the board, and ultimately   02:30:42
4 he was terminated.   02:30:45
5 Q.  Do you know when he was fired?   02:30:46
6 A.  I don't know the exact date.   02:30:47
7 (Document handed to witness.)   02:31:05
8 Q.  Handing you a document that has   02:31:05
9 been previously marked as Plaintiff's 11.   02:31:07
10 A.  Right.   02:31:09
11 Q.  Take a look at that document and   02:31:09
12 let me know if you have seen it before.   02:31:11
13 A.  I have seen it before.   02:31:12
14 Q.  Did you author this document?   02:31:14
15 MS. SELTZER:  Objection.   02:31:16
16 Q.  Did you draft this document?   02:31:18
17 MS. SELTZER:  Author?   02:31:20
18 MR. DATOO:  Yes.   02:31:20
19 MS. SELTZER:  Sorry.   02:31:21
20 A.  Yes.   02:31:24
21 Q.  Okay.  Can I direct your   02:31:25
22 attention to the second full paragraph in   02:31:28
23 this letter?  It says, "Effective   02:31:33
24 11/30/10, your employment with LVI   02:31:36
25 Services, Inc. will terminate."   02:31:39

**132**

SIMMONS

2 Do you see that?   02:31:43
3 A.  I do.   02:31:44
4 Q.  Does that refresh your   02:31:45
5 recollection as to whether Mr. Fried   02:31:45
6 was -- on when Mr. Fried was terminated?   02:31:48
7 A.  It appears he was terminated   02:31:50
8 effective 11/30.   02:31:52
9 Q.  Okay.  And was that termination   02:31:54
10 contingent upon him accepting any sort of   02:31:56
11 arrangement, alternative working   02:31:59
12 arrangement?   02:32:01
13 MS. SELTZER:  Objection to the   02:32:02
14 form.   02:32:03
15 A.  I'm not sure I understand the   02:32:04
16 question.   02:32:05
17 Q.  You testified earlier that if   02:32:05
18 Mr. Fried did not accept a consulting   02:32:07
19 arrangement, he would be terminated; is   02:32:09
20 that correct?   02:32:11
21 MS. SELTZER:  He did not say   02:32:12
22 that.   02:32:13
23 THE WITNESS:  Could you read   02:32:13
24 that back to me, please.   02:32:14
25 (Record read.)   02:34:10

**133**

SIMMONS

2 Q.  Okay.  So if Mr. Fried -- was   02:34:10
3 Mr. Fried terminated regardless of whether   02:34:20
4 he accepted or didn't accept a position?   02:34:23
5 MS. SELTZER:  Objection to the   02:34:27
6 form, but you can answer.   02:34:28
7 A.  Yes.  So I think we need to   02:34:29
8 expand a little on my earlier answer.   02:34:32
9 What this letter does is what we intended   02:34:35
10 it to do, which is to make Mr. Fried the   02:34:37
11 non-executive chairman of LVI with   02:34:40
12 prescribed responsibilities and a mutually   02:34:43
13 agreed upon compensation arrangement.  In   02:34:46
14 order to make Mr. Fried a non-executive   02:34:49
15 chairman, his employment by definition had   02:34:53
16 to be terminated.  By definition a   02:34:55
17 non-executive chairman is not an employee,   02:34:57
18 and we addressed the compensation and   02:35:00
19 other benefit aspects of his relationship   02:35:03
20 with LVI outside of a relationship with   02:35:07
21 the company as an employee.  So that was   02:35:10
22 the purpose of this letter.   02:35:12
23 Q.  So his status as an employee of   02:35:14
24 LVI was terminated?   02:35:19
25 A.  That is correct.   02:35:22

34 (Pages 130 to 133)

VERITEXT REPORTING COMPANY

212-267-6868                                    516-608-2400

---

**158**

SIMMONS

1
2  A.  No.                              02:58:15
3  Q.  Do you know which office she     02:58:15
4  worked out of?                       02:58:17
5  A.  I have been told she worked in   02:58:17
6  the company's Westport office.       02:58:19
7  Q.  Do you have any personal         02:58:21
8  knowledge about the quality of her work?  02:58:25
9  A.  None whatsoever.                 02:58:27
10  Q.  Do you have any knowledge about 02:58:28
11  the quality of her work?             02:58:29
12  A.  None whatsoever.                 02:58:30
13  Q.  Now, did there come a time when 02:58:31
14  Ms. Dembin was terminated?           02:58:34
15  A.  I believe so.                    02:58:37
16  Q.  Do you know when that was?       02:58:38
17  A.  I don't know.                    02:58:40
18  Q.  Do you know why she was          02:58:41
19  terminated?                          02:58:42
20  A.  I believe she was terminated as 02:58:43
21  part of a general reduction in force that  02:58:45
22  affected a range of employees.       02:58:47
23  Q.  Sorry.  What was the last part?  02:58:49
24  A.  A general reduction in force     02:58:52
25  that affected a group of employees.  02:58:54

---

**159**

SIMMONS

1
2  Q.  And was that group of employees  02:58:56
3  limited only to the Westport office?  02:58:57
4  A.  I don't believe so.              02:58:59
5  Q.  Was it a company-wide reduction  02:59:02
6  in force?                            02:59:04
7  A.  It — I believe it affected       02:59:04
8  multiple offices of the company and —  02:59:06
9  Q.  Do you know which office?        02:59:09
10  A.  I don't know which offices.     02:59:10
11  Q.  Do you know what people?        02:59:11
12  A.  I don't know.                   02:59:12
13  Q.  Do you know how many people?    02:59:13
14  A.  No, I know — I don't know.      02:59:14
15  Q.  Were you involved in the        02:59:17
16  decision — in the reduction in force  02:59:18
17  decision?                           02:59:22
18  A.  No, I was not.                  02:59:23
19  Q.  Was the board consulted on      02:59:24
20  the — in the decision?              02:59:26
21  A.  No.                             02:59:28
22  Q.  Does Mr. State have discretion  02:59:28
23  to open and close offices?          02:59:30
24  A.  Absolutely.                     02:59:32
25  Q.  Does he have discretion to hire 02:59:33

---

**160**

SIMMONS

1
2  and fire?                            02:59:35
3  A.  Absolutely.                      02:59:36
4  Q.  Why did the board — why was the  02:59:37
5  board involved in the decision to    02:59:40
6  terminate Mr. Fried?                 02:59:41
7  A.  Because Mr. Fried works for the  02:59:42
8  board.                               02:59:44
9  Q.  Wasn't he also an employee of    02:59:45
10  LVI?                                02:59:46
11  A.  Mr. Fried reported to the board 02:59:47
12  of directors, so it is exactly that group  02:59:53
13  of people that were responsible for the  02:59:58
14  terms of his employees, and it was that  02:59:59
15  group of people that were able to make a  03:00:01
16  decision as to his ongoing role at the  03:00:02
17  company.                            03:00:05
18  Q.  He didn't report to Scott State? 03:00:05
19  A.  No.  He certainly didn't think  03:00:07
20  he reported to Scott State.  Scott State  03:00:08
21  certainly didn't think he reported to  03:00:10
22  Scott State.                        03:00:12
23  Q.  Who made the decision to close  03:00:12
24  the Westport office?                03:00:18
25  A.  I believe Scott — Scott State.  03:00:19

---

**161**

SIMMONS

1
2  Q.  Who made the decision to select 03:00:21
3  which employees to be laid off?      03:00:24
4  A.  With respect to the Westport     03:00:26
5  office?                              03:00:30
6  Q.  In connection with this general 03:00:31
7  reduction in force that affected —   03:00:32
8  A.  Mr. State.  And he may have      03:00:35
9  received input from other managers at the  03:00:37
10  company.  I'm not certain.           03:00:38
11  Q.  But the board had nothing to do 03:00:40
12  with this?                           03:00:41
13  A.  The board had nothing to do with 03:00:41
14  it.                                  03:00:43
15  Q.  Okay.  Were you involved in any 03:00:43
16  communications whether it be verbal or  03:00:49
17  written regarding a reduction in force?  03:00:53
18  A.  I believe there were some        03:00:55
19  e-mails that outlined the potential  03:00:57
20  expense savings associated with a variety  03:01:00
21  of actions, and I believe I have seen some  03:01:03
22  of those e-mails.                    03:01:04
23  Q.  Do you know when the decision    03:01:05
24  was made to reduce the force?        03:01:07
25  A.  I don't know.                    03:01:08

41 (Pages 158 to 161)

Case 3:11-cv-01855-JBA   Document 57-34   Filed 05/31/12   Page 11 of 11

|  | 179 |
|---|---|
| 1 | SIMMONS |
| 2 | various members of his executive          03:27:52 |
| 3 | management team.                          03:27:54 |
| 4 | Q.   So if these responsibilities         03:27:55 |
| 5 | were delegated to Mr. Fried by the CEO,   03:27:56 |
| 6 | would that be acceptable?                 03:27:59 |
| 7 | A.   Yes, that would be acceptable to     03:28:00 |
| 8 | me.                                       03:28:02 |
| 9 | Q.   Okay.  And do you know if these      03:28:03 |
| 10 | were the duties that were delegated Mr.   03:28:08 |
| 11 | Fried while he was -- while Mr. McNamara  03:28:10 |
| 12 | was CEO?                                  03:28:14 |
| 13 | A.   I don't --                           03:28:15 |
| 14 | MS. SELTZER:   I object. Asked            03:28:17 |
| 15 | and answered about 1200 times.            03:28:18 |
| 16 | MR. DATOO:  Let's go for 1201             03:28:20 |
| 17 | then.                                     03:28:21 |
| 18 | MS. SELTZER:   Let's go for               03:28:22 |
| 19 | 1201.                                     03:28:24 |
| 20 | A.   I don't know.                        03:28:24 |
| 21 | Q.   Can I direct your attention to       03:28:31 |
| 22 | the stack of exhibits in front of you that 03:28:32 |
| 23 | is marked as Plaintiff's Exhibit 16.  I   03:28:35 |
| 24 | you just want to draw your attention to   03:28:44 |
| 25 | the e-mail you sent to Mr. Fried where you 03:28:46 |

|  | 180 |
|---|---|
| 1 | SIMMONS |
| 2 | wrote: "You were earning every penny of   03:28:49 |
| 3 | it."                                       03:28:55 |
| 4 | Do you see that?                          03:28:56 |
| 5 | A.   Yes.                                 03:28:57 |
| 6 | Q.   Is that a true statement?            03:28:58 |
| 7 | MS. SELTZER:   Objection. Asked           03:29:01 |
| 8 | and answered.                             03:29:03 |
| 9 | A.   Yes.                                 03:29:03 |
| 10 | Q.   Okay.                                03:29:04 |
| 11 | MR. DATOO:  Okay. Thank you               03:29:08 |
| 12 | very much.                                03:29:12 |
| 13 | THE WITNESS:  Thank you.                  03:29:14 |
| 14 | MR. DATOO:  No further                    03:29:15 |
| 15 | questions.                                03:29:15 |
| 16 | (Continued on next page.)                 03:29:15 |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

|  | 181 |
|---|---|
| 1 | SIMMONS |
| 2 | THE VIDEOGRAPHER:  We're going            03:29:16 |
| 3 | off the record.  3:29 p.m. End of today's 03:29:16 |
| 4 | questioning.                              03:29:20 |
| 5 | (Time noted: 3:29 p.m.)                   03:29:22 |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | BRIAN SIMMONS |
| 13 | |
| 14 | Subscribed and sworn to before me |
| 15 | this       day of        , 2011 |
| 16 | |
| 17 | |
| 18 | . |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

|  | 182 |
|---|---|
| 1 | |
| 2 | C E R T I F I C A T I O N |
| 3 | |
| 4 | |
| 5 | |
| 6 | I, DEBBIE ZAROMATIDIS, a Shorthand |
| 7 | Reporter and a Notary Public, do hereby |
| 8 | certify that the foregoing witness, BRIAN |
| 9 | SIMMONS, was duly sworn on the date |
| 10 | indicated, and that the foregoing is a |
| 11 | true and accurate transcription of my |
| 12 | stenographic notes. |
| 13 | I further certify that I am not |
| 14 | employed by nor related to any party to |
| 15 | this action. |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | DEBBIE ZAROMATIDIS |
| 24 | |
| 25 | |

45  (Pages 179 to 182)

VERITEXT REPORTING COMPANY

212-267-6868                                    516-608-2400

# Exhibit 36

| | |
|---|---|
| **From:** | Leonard, John <jleonard@lvi.com> |
| **Sent:** | Thursday, October 14, 2010 6:37 PM |
| **To:** | State, Scott <SState@lviservices.com> |
| **Subject:** | Re: FW: Chairman - Areas of Responsibility |
| **Attach:** | CHAIRMAN.doc; CHAIRMANanswers.doc |

For discussion.  I will give you me thoughts.

<<...>>

John M. Leonard

Chief Operating Officer
LVI Services Inc. & NorthStar Recovery Services
80 Broad Street
Third Floor
New York, NY 10004

Cell #: (201) 370-2113
Phone # (303) 727-9205
Fax #: (212) 951-8930
24 hour disaster response - (800) 283-2933

johnleonard@lviservices.com
www.lviservices.com

Asbestos Abatement \ Demolition \ Mold Remediation
Emergency Response - Fire \ Water Restoration
Decommissioning \ Decontamination
Fiber \ Cementitious \ Intumescent Fireproofing

From:  "State, Scott" <SState@lviservices.com>

To:  "Leonard, John" <JohnLeonard@lviservices.com>

Date:  10/14/2010 03:33 PM

Subject:    FW: Chairman - Areas of Responsibility

```
I spoke at length with Burt about his future role.  I will meet with him on the same
topic next week while in NY.  He sent the attached list of his duties as he sees them.
Can you go through the list and ID who we could transition these to?  The 7th bullet
regarding historical business is the only area I had told him we wanted his active
support.  I want to have a transition plan that gets us to where we need to be by the end
of this year.

From: BFried@lviservices.com [BFried@lviservices.com]
Sent: Thursday, October 14, 2010 11:55 AM
```

    LVI 000420

To: State, Scott
Subject: Chairman - Areas of Responsibility

Attached for your review and discussion on Tues 10/19.

(See attached file: CHAIRMAN.doc)

Burton T. Fried
Chairman
LVI Services Inc.
877 Post Road East
Suite # 4
Westport, CT 06880
Phone: (203) 222-0584
Fax: (203) 222-2227
bfried@lviservices.com <<…>>

CONFIDENTIAL

A-915

CHAIRMAN - AREAS OF RESPONSIBILITY

- Development and implementation of new business initiatives – Domestic and International – UK, Middle East, U.S., Latin America…….Squibb, Emcor Middle East, Harsco, LendLease
- Major Client /Major Project/Competitor Relationships – Turner, Tishman Construction, Yale, duel relationships with other LVI managers etc.
- LVI relationship manager with Surety (Arch) and Surety Agent (Ferrucci)
- Review all Requests for Bid Bond/Payment and Performance Bond Requests; Bonded Contracts and large Unbonded Contracts – Risk Assessment of scope, schedule, and difficulty.
- Select all outside counsel to represent LVI on legal matters.
- Manage at a senior level all LVI litigation and legal matters……contracts, corporate compliance ie: minutes, qualification to do business, corporate name changes, construction claims, collection matters, employment related claims and litigation, employment terminations, internal corporate investigations of violations of Business Code and Theft, regulatory compliance/environmental violation support, etc., supervise public agency/quasi-public agency review during prequalification process ie: NYS SCA, NYC Vendex Listings, Debarment etc.
- Resource for all historical LVI business, employee and legal matters.
- Review and approve of all LVI Offers of Employment.
- Negotiate all company acquisitions….both conventional and unconventional ie: Hudak.
- Monitor all employee air travel.
- Secure approvals from Surety of Bonding for Mentor/Protégé and Teaming Surety Bond Requirements.
- Review and approve all planned submissions of Prequalification submissions nationwide prepared at Westport office.
- Prepare, review and/or approve all LVI contracts and/or terms of agreements not in the ordinary course of business ie: non disclosure agreements, office/warehouse leases, mentor/protégé, teaming, alliance agreements, master service agreements.
- Prepare all LVI consulting agreements ie: sales, services etc.
- Coordinate all corporate public relations communications and website updates with LVI public relations firm.

10/14/10

CONFIDENTIAL

LVI 000422

CHAIRMAN - AREAS OF RESPONSIBILITY

- Development and implementation of new business initiatives – Domestic and International – UK, Middle East, U.S., Latin America…….Squibb, Emcor Middle East, Harsco, Lend Lease

Mark Canessa for Squibb, Harsco.  He has the relationship with Emcor Middle East and Lendlease (Bob).  I would give Lendlease to David Pearson and think you need to take Emcor.

- Major Client /Major Project/Competitor Relationships – Turner, Tishman Construction, Yale, duel relationships with other LVI managers etc.

Jim Mooney and Frank Aiello with the local BD's.

- LVI relationship manager with Surety (Arch) and Surety Agent (Ferrucci).

Yourself and Joe Annarumma.  Greg Dicarlo from a bond request submission.

- Review all Requests for Bid Bond/Payment and Performance Bond Requests; Bonded Contracts and large Unbonded Contracts – Risk Assessment of scope, schedule, and difficulty.

Greg Dicarlo and Tom Cullen working with me.

- Select all outside counsel to represent LVI on legal matters.

Greg Dicarlo.

- Manage at a senior level all LVI litigation and legal matters……contracts, corporate compliance ie: minutes, qualification to do business, corporate name changes, construction claims, collection matters, employment related claims and litigation, employment terminations, internal corporate investigations of violations of Business Code and Theft, regulatory compliance/environmental violation support, etc., supervise public agency/quasi-public agency review during prequalification process ie: NYS SCA, NYC Vendex Listings, Debarment etc.

Greg Dicarlo.

- Resource for all historical LVI business, employee and legal matters.

Greg Dicarlo and myself.

CONFIDENTIAL

LVI 000423

- Review and approve of all LVI Offers of Employment.

Kamal Sookram.

- Negotiate all company acquisitions….both conventional and unconventional ie: Hudak.

Greg Dicarlo, you and myself.

- Monitor all employee air travel.

Myself  with administrative assistant.

- Secure approvals from Surety of Bonding for Mentor/Protégé and Teaming Surety Bond Requirements.

Yourself.

- Review and approve all planned submissions of Prequalification submissions nationwide prepared at Westport office.

Mark Canessa.

- Prepare, review and/or approve all LVI contracts and/or terms of agreements not in the ordinary course of business ie: non disclosure agreements, office/warehouse leases, mentor/protégé, teaming, alliance agreements, master service agreements.

Greg Dicarlo.

- Prepare all LVI consulting agreements ie: sales, services etc.

Greg Dicarlo.

- Coordinate all corporate public relations communications and website updates with LVI public relations firm.

Mark Canessa.

10/14/10

CONFIDENTIAL

# Exhibit 38

| | |
|---|---|
| **From:** | Fried, Burton <bfried@lvi.com> |
| **Sent:** | Thursday, September 23, 2010 10:39 AM |
| **To:** | Leonard, John <JohnLeonard@lviservices.com>; Cutrone, Paul <PCutrone@Notes.lvi.com> |
| **Subject:** | Scott State |

Spoke to Scott yesterday and ended with him being very comfortable about how we would work together. He had one issue to resolve with CHS concerning basis for extra stock option to be vested. Today received an e-mail in which he withdrew his name from consideration. He said he is totally frustrated with the negotiating position taken by CHS. Told Brian this was going to happen and to handle himself personally yesterday but he left it to Rob.

Brian is now trying to resolve by agreeing to the last issue raised by Scott but Scott is not answering his call and is not answering my call. Ask John "not" to reach out to Scott. Let the dust settle and see if Scott reconsiders. Sent him an e-mail and hope that will change his mind.

CHS does it again.

Burt

Burton T. Fried
Chairman/CEO
LVI Services Inc.
877 Post Road East
Suite # 4
Westport, CT 06880
Phone: (203) 222-0584
Fax: (203) 222-2227
bfried@lviservices.com

CONFIDENTIAL

A-920

# Exhibit 43

### 1.    Fried Resides and Works in Connecticut

In his Complaint, Fried unambiguously states that, during the past seven years of his employment with LVI, he has "worked from the Company's corporate Connecticut satellite office in Westport." (Compl., ¶ 27.) Fried also states in his Complaint that he is a resident of the State of Connecticut. (Compl., ¶ 15.)[9]

The NYCHRL expressly limits the applicability of its protections to acts that occur within the boundaries of New York City. See N.Y.C. Admin. Code § 2-201. See also Casper v. Lew Lieberbaum & Co., Inc., No. 97 Civ. 3016, 1998 WL 150993, at *4 (S.D.N.Y. Mar. 31, 1998). To determine the location of the discrimination, courts have looked to the location of the impact of the adverse action on the plaintiff. Salvatore v. KLM Dutch Airlines, No. 98 Civ. 2450, 1999 WL 796172, at *16 (S.D.N.Y. Sept. 30, 1999); Casper, 1998 WL 150993, at *4. In order to state a claim under the NYCHRL, Fried must show more than that LVI's headquarters are located in New York City or that the decision to offer him a consultancy in place of his employment was made in New York City. Instead, he must prove that the decision impacted *him* in New York City, which he cannot do in light of his admission that he lived and worked in Connecticut at all relevant times. See Casper, 1998 WL 150993, at *4 (finding the NYCHRL inapplicable to an employee who worked in Garden City, Long Island, even though the defendant had an office in New York City); Germano v. Cornell Univ., No. 03 Civ. 9766, 2005 WL 2030355, at *5 (S.D.N.Y. Aug. 17, 2005) (dismissing the plaintiff's NYCHRL claim even when the decision to pressure him to retire was made in New York City because the decision impacted him in his place of employment on Long Island).

---

[9] Tellingly, on May 16, 2011, Plaintiff filed a charge of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CCHR"), implicitly conceding that the NYCHRL does not govern his claim. (Seltzer Aff., Exh. DD.)

# Exhibit 45

A-923

# 11-4791-cv



IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

BURTON T. FRIED,

     Plaintiff/Appellant,

v.

LVI SERVICES, INC., AKA LVi SERVICES, INC.; LVI PARENT CORP.;
CODE HENNESSY SIMMONS LLC, DBA CHS PRIVATE EQUITY V LP;
APOLLO INVESTMENT CORP.; SCOTT E. STATE, IN HIS OFFICIAL
CAPACITY AND IN HIS INDIVIDUAL CAPACITY; BRIAN SIMMONS,
IN HIS OFFICIAL CAPACITY AND IN HIS INDIVIDUAL CAPACITY;
RAJAY BAGARIA, IN HIS OFFICIAL CAPACITY AND IN HIS
INDIVIDUAL CAPACITY; & GERALD J. GIRARDI, IN HIS OFFICIAL
CAPACITY AND IN HIS INDIVIDUAL CAPACITY,

     Defendants/Appellees.

On Appeal from the United States District Court
for the Southern District of New York

BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION AS AMICUS CURIAE IN SUPPORT OF
PLAINTIFF/APPELLANT AND IN FAVOR OF REVERSAL

(Cover continues on reverse)

P. DAVID LOPEZ
General Counsel

LORRAINE C. DAVIS
Acting Associate General Counsel

ELIZABETH E. THERAN
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St., N.E., 5th Floor
Washington, D.C.  20507
(202) 663-4720
elizabeth.theran@eeoc.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................iii

STATEMENT OF INTEREST ...........................................................1

STATEMENT OF THE ISSUES .......................................................2

STATEMENT OF THE CASE ...........................................................2

   A. Statement of the Facts.............................................................2

   B. District Court's Decision.......................................................13

ARGUMENT.....................................................................................18

  I.  **An Age-Related Remark Made by a Decisionmaker in Close Temporal Proximity to an Adverse Employment Action Is Not a "Stray Remark" and Should Be Considered as Evidence of Age Discrimination**...............................................................18

  II.  **The District Court Misapplied Precedent of Both the Supreme Court and this Court in Failing to View the Record Evidence as a Whole and Concluding that the Plaintiff Had Not Adduced a Genuine Dispute of Material Fact as to Pretext**...................................29

CONCLUSION ..................................................................................35

CERTIFICATE OF COMPLIANCE ................................................36

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Bunk v. Gen. Servs. Admin.*, 408 F. Supp. 2d 153 (W.D.N.Y. 2006) .................16

*Danzer v. Norden Sys., Inc.*, 151 F.3d 50 (2d Cir. 1998) ...............................24, 25

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) ...............................................27, 28

*Diaz v. Jiten Hotel Mgmt.*, 762 F. Supp. 2d 319 (D. Mass. 2011) ................. 23-24

*Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358 (3d Cir. 2008).....................23

*Fisher v. Pharmacia & Upjohn*, 225 F.3d 915 (8th Cir. 2000) ..............................23

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010) ....... 14, 19, 20-21

*Gross v. FBL Fin. Servs.*, 557 U.S. 167, 129 S. Ct. 2343 (2009) ..............13, 14, 20

*James v. N.Y. Racing Ass'n*, 233 F.3d 149 (2d Cir. 2000) ..............................30, 31

*Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149 (2d Cir. 1998)......................................25

*Raskin v. The Wyatt Co.*, 125 F.3d 55 (2d Cir. 1997) .................................. passim

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000) ........................ passim

*Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500 (1957) ..................................................28

*Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000)...................................30, 31-32

*Shager v. Upjohn Co.*, 913 F.2d 398 (7th Cir. 1990) .......................................22, 23

*Shapiro v. N.Y. City Dep't of Educ.*, 561 F. Supp. 2d 413 (S.D.N.Y. 2008)........16

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) ......................................18, 19

*Tomassi v. Insignia Fin. Grp.*, 478 F.3d 111 (2d Cir. 2007) .....................21, 22, 31

## STATUTES, RULES, & OTHER AUTHORITIES

Age Discrimination in Employment Act of 1967 ("ADEA"),
  29 U.S.C. §§ 621 *et seq*.............................................................. passim

Fed. R. App. P. 29(a) ...................................................................1

Fed. R. App. P. 29(d) .................................................................36

Fed. R. App. P. 32(a)(5) .............................................................36

Fed. R. App. P. 32(a)(6) .............................................................36

Fed. R. App. P. 32(a)(7)(B) .......................................................36

*Black's Law Dictionary, s.v.* Evidence: Direct Evidence (9th ed. 2009)............27

A-928

## STATEMENT OF INTEREST

The Equal Employment Opportunity Commission ("EEOC") is the agency charged by Congress with interpreting, administering, and enforcing various federal laws against employment discrimination, including the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*   This case raises at least two important issues, one regarding the application of the "stray remarks" doctrine to evidence of employment discrimination, and another regarding the plaintiff's burden to demonstrate a genuine issue of material fact sufficient to survive summary judgment in an ADEA case.   Because resolution of these issues will affect the EEOC's enforcement of the ADEA as well as other federal antidiscrimination statutes, the Commission offers its views to the Court pursuant to Fed. R. App. P. 29(a).

## STATEMENT OF THE ISSUES[1]

1.   Whether the district court erred in characterizing an explicitly age-biased remark, made by the decisionmaker within a month of the plaintiff's termination, as a "stray remark" that was not probative of age discrimination.

2.   Whether the district court erred in failing to view the evidence of age discrimination in the record as a whole in concluding that the plaintiff had not adduced sufficient evidence of pretext to survive summary judgment.

## STATEMENT OF THE CASE

A.  Statement of the Facts

The plaintiff in this case, Burton T. Fried, was born on February 26, 1940.  A-315.[2]  The principal defendant, LVI Services, Inc. ("LVI"), is an environmental remediation and demolition company based in New York

_____

[1] We take no position with respect to any other issue presented in this appeal.

[2] "A-[#]" refers to material in the Joint Appendix, cited by page number. "SPA-[#]" refers to material in the Special Appendix, cited by page number.

City.  A-121.  Fried began working for LVI in 1986 as its general counsel and then became the company's president and chief executive officer in 1989; he also served as chairman of LVI Parent's Board of Directors while employed at LVI.  A-496-97, 384.  Fried held the president/CEO position for seventeen years (A-497) until 2005, when he decided to transition into a new role as chairman of LVI and to seek out a new president/CEO for the company.  A-501, 503.  Fried testified that he made this decision because LVI had grown to a point where "the company had the capability of continuing its profitable growth and achieving revenues with profits of a billion [dollars]. . . . And I believed the company needed the management skill sets to take us to a billion and I didn't know that I had that capability."  A-501.

Accordingly, Fried engaged a recruiting company and, in consultation with the board of directors, selected Robert McNamara as LVI's new president and CEO in June of 2006.  A-208, 535.  Fried then became chairman of LVI.  He testified that, as chairman, he wanted to remove himself from the day-to-day management of the company because

3

"the CEO role, by its title, as chief executive officer, should have the day-to-day and final decision in the operations of the business.  And the chairman should be a person who supports the actions of the CEO and in any way [sic] that the CEO seeks that advice and counsel."  A-506-07.

Pursuant to a letter agreement with the company, Fried retained "primary responsibility for strategic growth" in his new role.  A-531.  John Leonard, LVI's chief operating officer, also testified that Fried's duties involved "legal work," "some oversight of sales at different times," "review of contracts of bonds, overs[eeing] some of the marketing efforts coming out of Westport, the office he worked at, travel, general guidance of any issues contractually that I would have or Bob would have."  A-440.  Leonard testified that Fried generally worked a full work week as chairman, but that he did step away from the day-to-day responsibilities of running the company and that he did a good job in the chairman's role under McNamara.  Id.

In approximately April 2010, McNamara resigned from his position as president/CEO of LVI.  A-440.  LVI's board of directors then asked Fried

4

to step in as temporary president/CEO until a new replacement could be found. A-391, 508.  Fried testified that this role "wasn't a position that I wanted, but was by necessity.  There was no one else that could handle the position, especially in the trying times of restructuring and the economy." A-509.  Paul Cutrone, LVI's chief financial officer, testified that Fried was "absolutely" a good choice for the interim position, explaining that "it was the role he held for some fifteen years prior to Bob [McNamara] coming aboard. . . .  I think there was no better choice on an interim basis than Burt if he was willing to do it."   A-391.   Cutrone also testified that Fried continued to perform his duties as chairman along with the duties of the president/CEO during this period.  *Id.*  When asked why LVI continued to search for a replacement if Fried was performing well as president/CEO, Cutrone answered, "I know Burt didn't want [the position].  Burt didn't want to be a permanent replacement.   Burt wanted to find another president and CEO." A-392.

The search continued, and in approximately August 2010 Scott State (age 47) was referred to Fried as a potential candidate for the

president/CEO position. A-511. LVI's board of directors, including Fried, decided to offer State the position sometime in the first two weeks of September 2010. A-569-70. By mid-September, without even having accepted the job offer, State was e-mailing various individuals at LVI to inquire how Fried could be removed as chairman of the board at LVI Parent and voicing his preference that Fried "decide to retire at some date certain from LVI upon a new CEO being named and offer to support the business under a consulting agreement in any way the new CEO sees fit." A-565-66, 568-69. In one such e-mail, State also complained that "[s]everal members of the senior team have told me that Burt will never retire because he has no other interests and nothing else to do. That is not a healthy situation for Burt or LVI." A-569. Leonard testified that he recalled a conversation with State around this time in which he told State that "I don't believe Burt will retire," A-444, 445, and that Fried told him (Leonard) several times that he "planned to die in his chair" at LVI. A-443.

E-mails in the record reflect that, as of September 21, 2010, LVI's board of directors had reached an agreement with State but that State

6

"want[ed] to speak with Burt one last time before accepting the offer." A-137.  In one of these e-mails, Brian Simmons, a member of the board, told Fried that "Scott wants to discuss your ongoing role at LVI.  I suspect he wants to be assured that he will have authority as CEO to align his team, manage the business, etc.  Obviously he will be accountable to the Board for a budget, performance, and various other corporate actions.  I think it will be very important for him to hear unambiguously from you that he is in charge and you will give him the room he needs." *Id.*  Fried responded that "I am prepared to remain at LVI until [State], the Board, or I decide it's time for me to leave . . . an offer he can't refuse.  Ask you to recall that one of the purposes of my working in Westport was to get out of the way of the CEO at the NY Corporate office.  Trust you have no problem with my planned reply. . . . He will be in charge and get all the room he wants from me." *Id.*  Simmons told Fried that his response was "perfect," and Fried reported back to Simmons via e-mail the next day that he had spoken with State and that State "now has no concern about my support in his role as CEO." A-139.

7

State ultimately accepted LVI's offer of employment on September 23, 2010, and began work as president and CEO on September 27, 2010. A-143, 572. At this time, Fried resumed his prior position of chairman of LVI. A-371, 572. Leonard testified that, from his perspective, Fried continued to perform well in his duties as chairman. A-446. Nonetheless, over the first few weeks of October 2010, e-mails in the record reflect that State and Fried disagreed over Fried's continuing role at LVI, with Fried expressing the belief that his input should be sought on various issues and State insisting to Fried or to other board members that Fried's input was unnecessary. *E.g.*, A-173-74, 176-82, 184-85.

In one e-mail, dated October 14, 2010, State indicated that he had told Fried that he "would like his support in dealing with legacy issues such as litigation and claims and that other support would be as needed and requested by me. I was clear to indicate that I expected no direct involvement in the day to day activities of LVI or business on ago [sic] forward basis. Like most of my discussions with Burt on his continuing role he agreed. We then slated a meeting to discuss this again next week in

8

person while I am in NYC."  A-195.  State also informed the board that

Fried had sent him a list of duties that he had performed as chairman

under McNamara and that "[m]y inclination is to go through this list with

him and tell him that there is no reason that the Chairman of a Company

would do any of these things. . . . It seems that Burt has a goal to remain

active forever and these tasks he has latched on to were apparently

supported by McNamera [sic].  I am OK making moves on a number of

senior people that don't pull their weight and not looking to involve the

investors in those decisions or actions.  With Burt I feel I must be more

careful and seek your thoughts and counsel."  *Id.*

On October 19, 2010, State and Fried met in LVI's New York office to

discuss Fried's duties at LVI.  A-515.  At that meeting, Fried testified, State

looked at the list of duties Fried had sent him previously and told Fried

that "I'm going to be reassigning all your responsibilities to other managers

and I'm going to do that in the next 60 to 90 days, and when that's

completed, I can let you know if there is anything else for you to do."  A-

516.  Fried testified that he "didn't immediately respond because I was in a

state of shock. And my only response was, 'Scott, why would you do that?'" *Id.* According to Fried, State responded, "'Burt, you're 71 years of age, how long do you expect to work. And what if you get hit by a truck'— a bus, rather—'what if you get hit by a bus, and we have to plan for the future.'" *Id.* Fried testified:

> My response to that, since this was the first time that there was any indication that—of what his—what he was going to do with my responsibilities—so I said, "Scott, number one, I'm 70 years of age, not 71. Number two, the things that I perform for the company is [sic] not—there is no one here that performs that, there is no duplicity, and based upon my experience, I think I am performing it in a manner in which I think can best serve the interests of LVI Services. I don't plan to be hit by a bus; I'm in good health and I expect to work for a long period of time. I am healthy, and by the way, there aren't many buses in Westport, Connecticut." And his response was, "Well, that's the way I'm going to proceed."

A-516-17. After the meeting, in response to an e-mail from Simmons asking how State would "like to use Burt," State responded to several members of the board, gave his account of the meeting with Fried that day, and stated that, although Fried had indicated that he would "like to work for LVI as long as he is able," "I was clear with [Fried] that it was my objective to have him truly retire and be just an on call resource." A-575.

10

During the last two weeks of October 2010, Fried contacted various members of the board of directors and informed them about his conversation with State, including the comment he made about Fried's age. A-373, 463, 518-24.  The subject of Fried's complaint was then brought up, with Fried in attendance, among other subjects at the quarterly meeting of the board of directors on November 4, 2010.  A-579.  Various witnesses testified that Fried recounted what had happened at his October 19 meeting with State and informed the board that he believed it was age discrimination.  A-374, 414, 430, 589-90, 683.  As a result of the meeting, the board decided to have one of its members, John Schnabel, "engage [Fried] in discussions around an arrangement that could work for all sides."  A-374.  The next day, November 5, 2010, State sent an e-mail to a friend regarding the board meeting in which he wrote, "In a battle with founder about his need to retire but Board gets it and is working to exit him with some respect."  A-473, 487.

Ten days later, on November 15, 2010, Fried's counsel delivered a letter addressed to State at LVI Services indicating that Fried had retained

the firm in connection with his claims of age discrimination and breach of

employment contract against LVI. A-595-99. The letter explained the basis

for Fried's belief that LVI had discriminated against him on the basis of his

age, indicated that he wished to discuss possible resolution of the matter,

and requested a response prior to November 22, 2010. *Id.* The board met

via phone conference to discuss Fried's letter the next day, November 16,

2010. A-418-19, 601. As a result of that meeting, the board decided to

"ignore" Fried's letter, *id.*, and to send him a letter terminating his

employment as executive chairman with LVI Services effective November

30, 2010. A-604. In no fewer than four different places in the summary

judgment record, LVI indicated that State was the individual responsible

for making the decision to terminate Fried. A-614, 633, 647, 662. In the

letter, the board informed Fried that he would "continue your relationship

with LVI as non-executive Chairman of the Board of LVI Parent Corp. In

addition, we are offering you the position of consultant to LVI Services on

the terms set forth in the attached letter agreement." *Id.* The consultancy

agreement was conditioned on Fried's release of all claims against LVI, including age discrimination. A-605-06.

Fried rejected the board's offer and resigned from LVI effective November 30, 2010. A-672. After he resigned, according to various witnesses, his duties were reassigned to a group of younger workers who ranged in age from thirty-five to fifty-seven, between thirteen and thirty-five years younger than Fried. A-420, 447, 476-77, 695-96. Fried filed suit in federal district court based on diversity jurisdiction in December 2010; the complaint was later amended on February 3, 2011, to add claims of age discrimination and retaliation under the ADEA. A-7, 26-57.

B. <u>District Court's Decision</u>

In relevant part, after reviewing the factual background of the case, the district court turned to Fried's age discrimination claim, observing that the Supreme Court in *Gross v. FBL Financial Services* held that "'a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action.'" SPA-20 (Opinion & Order

("Opinion") at 18)  (quoting *Gross*, 557 U.S. 167, ___, 129 S. Ct. 2343, 2352 (2009)).  The court further noted that, although the *Gross* Court remarked that it had not definitively decided whether the *McDonnell Douglas* burden-shifting framework applied in Title VII cases was appropriate under the ADEA, this Court had continued to apply *McDonnell Douglas* to ADEA cases post-*Gross* absent authority to the contrary.  *Id.* (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010)).

The court then noted that the defendants in this case "do not contest that plaintiff has satisfied his burden of establishing a *prima facie* case." SPA-22 (Opinion at 20).  Accordingly, the court proceeded to the second stage of *McDonnell Douglas*, where it found that "defendants have clearly articulated a legitimate, nondiscriminatory reason for terminating Fried's employment with LVI: the need to ensure that the new CEO and president, defendant Scott E. State, would have the freedom to manage the Company as he saw fit."  *Id.*  The court also observed that the defendants' account was "amply support[ed]" by "abundant, undisputed evidence in the record."  SPA-23 (*id.* at 21).  Accordingly, the court explained, the burden

14

now shifted to Fried to demonstrate that the defendants' proffered reason was pretextual—i.e., "that: (1) the proferred [sic] reason [ ][is] false; and (2) the real reason was unlawful discrimination." *Id.* Under *Gross*, the court stated, "Fried must prove not merely that age was one of the factors motivating defendants' decision, but rather that age was the 'but-for' cause of that decision. Fried must therefore 'raise [] sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that [his] age was a "but for" cause of [defendants'] decision to fire [him].'" SPA-24 (*id.* at 22) (internal citations omitted).

The court then found that Fried had "failed to sustain his burden as a matter of law." SPA-24 (Opinion at 22). It characterized Fried's case as "hing[ing] almost exclusively on the October 19, 2010 conversation between Fried and State, when State purportedly indicated that he would be reassigning Fried's duties and stated: 'Burt, you're 71 years of age, how long do you expect to work. . . . [W]hat if you get hit by a bus . . . we have to plan for the future.'" *Id.* The court reasoned:

> However, "[s]tray remarks, even if they occurred as plaintiff claims, are not enough to satisfy the plaintiff's burden of

15

proving pretext.  Stray remarks alone do not create an issue of material fact to defeat summary judgment." *Bunk v. General Services Admin.*, 408 F. Supp. 2d 153, 158 (W.D.N.Y. 2006).  *See also Shapiro v. N.Y. City Dep't of Educ.*, 561 F. Supp. 2d 413, 424 (S.D.N.Y. 2008) ("[t]he stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination").  In this case, the single, isolated mention of Fried's age, the only such mention in the entire record, cannot, standing alone, create an issue of material fact sufficient to defeat summary judgment.  This is especially true given that State, by Fried's own admission, qualified his remark by asking "what if you get hit by a bus."  Accordingly, unless other indicia of discrimination are properly presented, *see* [*Shapiro*, 561 F. Supp. 2d at 424], this comment alone is insufficient to sustain plaintiff's burden of proving pretext as a matter of law.

SPA-25 (*id.* at 23).

The court then went on to observe that "Fried's [other] purported indicia of discrimination also fall short."  SPA-25 (Opinion at 23).  The court rejected Fried's reliance on State's various e-mails referring to his desire to have Fried retire, remarking that "courts have consistently held that remarks relating to retirement or transition planning are insufficient to defeat a motion for summary judgment in an ADEA case."  SPA-25-26 (*id.* at 23-24) (citing various cases).  In particular, the court found the facts of this case to be similar to those in *Raskin v. The Wyatt Co.*, 125 F.3d 55 (2d

16

Cir. 1997), because, according to the court, "where Fried had previously given assurances that State '[would] be in charge and get all the room he want[ed]' from Fried, . . . it was natural, and hardly demonstrates pretext, for Fried's colleagues to inquire as to his future plans when disagreements arose concerning the scope of Fried's responsibilities." SPA-27-28 (*id.* at 25-26). Finally, the court stated that Fried's only other evidence of age discrimination was the fact that his job responsibilities were given to younger workers. SPA-28 (*id.* at 26). According to the court, "[w]hile this decision is sufficient to establish that the adverse employment action occurred under circumstances giving rise to an inference of discrimination for the purpose of establishing a prima facie case, it is insufficient to show that defendants' legitimate, non-discriminatory explanation is pretextual and that age constituted the 'but for' cause of the adverse employment action." *Id.* Thus, the court concluded, Fried's ADEA discrimination claim failed as a matter of law.

## ARGUMENT

**I.  An Age-Related Remark Made by a Decisionmaker in Close Temporal Proximity to an Adverse Employment Action Is Not a "Stray Remark" and Should Be Considered as Evidence of Age Discrimination.**

In no sense was State's October 19, 2010, remark to Fried—"Burt, you're 71 years of age, how long do you expect to work"—a "stray remark" within the meaning of the case law on discrimination. Rather, under the precedent of both the Supreme Court and this Court, it is probative evidence of age discrimination that a factfinder would be entitled to weigh in determining whether State, acting on behalf of LVI, terminated Fried because of his age.

As the Supreme Court observed in *Reeves v. Sanderson Plumbing Products*, "*McDonnell Douglas* and subsequent decisions have 'established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases.'" 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). First, the plaintiff must establish a prima facie case of discrimination: *i.e.*, that he was a member of the class protected by the ADEA at the time he was fired, that

he was otherwise qualified for his position, that he was subjected to an adverse employment action, and that he was replaced by younger individuals (or that the adverse employment action otherwise occurred under circumstances giving rise to an inference of discrimination). *Reeves*, 530 U.S. at 142; *see also, e.g.*, *Gorzynski*, 596 F.3d at 107. In this case, the parties apparently do not dispute that the plaintiff has at least met his burden for summary judgment purposes with respect to his prima facie case of discrimination: a reasonable jury could find that he was seventy years old, he was more than adequately qualified for the chairman position, he was terminated from that position, and his duties were redistributed to significantly younger individuals.

As the *Reeves* Court observed, the burden then shifts to LVI to "produce evidence" that Fried was terminated "for a legitimate, nondiscriminatory reason." 530 U.S. at 142. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Id.* (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 509). The parties also do not appear to dispute that the defendant has met its burden in this regard: it

19

has proffered admissible evidence from which a reasonable jury could conclude that State terminated Fried because State did not feel he could run the company effectively as its new president and CEO with Fried on board and because Fried did not wish to retire and play the fully "on-call" role that State wanted him to.

At this stage of the analysis, as the Supreme Court explained in *Reeves*, the presumptions of the *McDonnell Douglas* paradigm fall away, and the burden of proving intentional discrimination remains with the plaintiff. 530 U.S. at 143. The Supreme Court clarified in *Gross* that, in the ADEA context, this means that in order to establish liability "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but-for" cause of the challenged employer decision."  129 S. Ct. at 2351 (citing *Reeves*, 530 U.S. at 141-43). Accordingly, for summary judgment purposes, the question is whether the plaintiff "has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that [his] age was a 'but for'

20

cause of [the defendant's] decision to fire [him]."  *Gorzynski*, 596 F.3d at 107.

In conducting its analysis of the record evidence in this case, the district court gave short shrift to State's explicitly ageist remark to Fried of October 19, 2010, and erred as a matter of law in characterizing it as a "stray remark."  This Court has had numerous opportunities over the years to address and clarify the "stray remarks" doctrine in employment discrimination law, but its discussion in *Tomassi v. Insignia Financial Group*, 478 F.3d 111 (2d Cir. 2007), is particularly insightful and instructive.  As the *Tomassi* panel explained, the "stray remarks" doctrine originated as an attempt to reconcile the fact that there are some cases where courts "have found the evidence [of discrimination] legally insufficient notwithstanding the incidence of discriminatory remarks."  478 F.3d at 115.  The Court continued:

> That locution represented an attempt—perhaps by oversimplified generalization—to explain that the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination. . . . For example, remarks made by someone other than the person who made the decision

21

adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark. . . . The more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be. . . . Where we described remarks as "stray," the purpose of doing so was to recognize that all comments pertaining to a protected class are not equally probative of discrimination and to explain in generalized terms why the evidence in the particular case was not sufficient.  We did not mean to suggest that remarks should first be categorized either as stray or not stray and then disregarded if they fall into the stray category.

*Id.* at 115-16 (internal citations omitted).

Other courts of appeals have made similar observations regarding the weight of biased remarks as evidence of discrimination.  For example, in *Shager v. Upjohn Co.*, Judge Posner wrote:

[A]ll that these [stray remarks] cases really stand for is the common-sense proposition that a slur is not in and of itself proof of actionable discrimination, even if repeated.   The remark . . . may have been innocent and misunderstood; or it may have had no consequence, either because it did not reflect the thinking of the people with decision-making authority or because it did not motivate even the person uttering it to act on it. . . . Even so, it may be relevant evidence, with greater or less probative value depending on the precise character of the remark.

22

913 F.2d 398, 402 (7th Cir. 1990).  Along the same lines, the Eighth Circuit

has observed:

> [Defendant] argues that these statements cannot give rise to an
> inference of discrimination because they are merely "stray
> remarks," or statements that were made by non-decisionmakers
> and that are not causally related to [Plaintiff's] transfer to the
> pork sales unit.   Although we agree that stray remarks,
> standing alone, may not give rise to an inference of
> discrimination, such remarks are not irrelevant. . . . Rather, such
> comments are "surely the kind of fact which could cause a
> reasonable trier of fact to raise an eyebrow, thus providing
> additional threads of evidence that are relevant to the jury." . . .
> Stray remarks therefore constitute circumstantial evidence that,
> when considered together with other evidence, may give rise to
> a reasonable inference of age discrimination.

*Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 922-23 (8th Cir. 2000) (internal

citations omitted).  *See also, e.g.*, *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d

358, 368 (3d Cir. 2008) (observing that even biased remarks unrelated to the

decisionmaking process or temporally remote "could provide background

evidence that may be critical to a jury's determination of whether the

decision-maker was more likely than not acting out of a discriminatory

motive"); *Diaz v. Jiten Hotel Mgmt.*, 762 F. Supp. 2d 319, 336-37 (D. Mass.

2011) (observing that "the 'Stray Remarks Doctrine' originally came out of

the weakest discrimination cases, those in which some employee made a single remark that a judge deemed insufficient to show bias or pretext on the part of the employer," and noting that "in light of *Reeves*, the 'Stray Remarks Doctrine' may be seen as impermissibly asking a court to weigh every statement to determine its probative value in isolation").

In an age discrimination case, age-biased remarks are evidence like any other. They may be strong or weak evidence of age discrimination, depending on factors such as who made them, their content, their audience, and their temporal proximity to the employment decision, and they should be weighed by the factfinder accordingly. *See, e.g., Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) (observing that, while a biased remark made by a decisionmaker does not warrant an "instantaneous jury case on discrimination" for any "disparaged worker[]" who had the 'fortuity' of being in the class encompassed by the stray remark . . . , regardless of the ground for his dismissal," the same remark might bear "a more ominous significance" in the context of other indicia of discrimination).

24

Viewed in this light, State's remark to Fried simply cannot be fairly characterized as "stray."  The remark was made directly to Fried by State, the president/CEO of LVI and the decisionmaker in his termination less than a month later, and it explicitly referenced Fried's age.   A-516. Moreover, it came in the context of a months-long "battle"—to use State's description—to force Fried out of the workplace at LVI and into "retirement."  A-473.  In addition, the one-month gap between the remark in question and Fried's termination is quite short in comparison to some of the larger gaps between discriminatory remarks in other cases that this Court has held to be not "stray," but probative evidence of discrimination. *E.g., Danzer*, 150 F.3d at 55 (observing that defendants "make too much of" over a year between ageist remark and termination); *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 163 (2d Cir. 1998) (remark within two years of termination).

At the summary judgment stage, it was also inappropriate on this record for the district court to conclude as a matter of law that State's remark to Fried was simply an age-neutral inquiry into his retirement

25

plans. State had already been told repeatedly by several people that Fried had no intention of retiring anytime soon (A-569); there is evidence in the record that he was well aware of Fried's views on the subject before October 19, 2010, and a reasonable jury could find that State was not conducting an "age-neutral inquiry" during that conversation (A-569, 698, 700).[3] Certainly, as this Court observed in *Raskin*, 125 F.3d at 63, the ADEA does not forbid any discussion of age or retirement in the workplace, and a jury could consider the evidence of State's interactions with Fried between September and November of 2010 and conclude that this was all that occurred on October 19, but this is not the only conclusion available on this record. A reasonable jury could also find that, far from making a neutral inquiry, State used Fried's age on October 19 to badger him about retiring against his will and to indicate that Fried was past his prime and no longer of any use to the company. This inference is particularly available to the

─────────────────────

[3] At a minimum, there is a genuine dispute of material fact on this point in the record. *See* A-483-85 (State's deposition testimony that it was his "perception" that Fried intended to retire sometime in the near future, notwithstanding his e-mail of September 19, 2010 (A-569)).

jury here in light of the fact that State explicitly tied his question about retirement to Fried's age and in light of State's avowed mission— undertaken before he even accepted the job at LVI and before Fried could possibly have been in his way—to remove Fried not only from his job, but from his position as chairman of the board of LVI Parent.

In this respect, as the plaintiff observed in his opening brief (Appellant Br. 41-42), and contrary to the district court's suggestion, this case is thoroughly distinguishable from this Court's decision in *Raskin*. First, in *Raskin* the plaintiff was arguing that the decisionmaker's comment that he "presumed that [Raskin] didn't want to be the office manager so late in [his] career" was direct evidence of age discrimination—an argument not at issue here.[4]  125 F.3d at 62.  Second, and more significantly

_____

[4] Fried has not argued that State's comment constitutes "direct evidence" of discrimination and has proceeded from the start under the *McDonnell Douglas* burden-shifting paradigm.  *See Black's Law Dictionary*, *s.v.* Evidence: Direct Evidence (9th ed. 2009) ("evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption").  In any case, particularly after the Supreme Court's decisions in cases like *Reeves*, *Gross*, and *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) (holding that direct evidence is not required to obtain a

for the present purposes, the factual context of the retirement planning conversation in *Raskin* was markedly different from the October 19, 2010, meeting between State and Fried in this case. In *Raskin*, the plaintiff and the decisionmaker, Davis, were discussing Raskin's interest in a vacant managerial position. *Id.* According to Raskin's deposition testimony, Davis said that "'he presumed that I didn't want to be the office manager so late in my career and I told him that was not the case; that I had no intention to retire now . . . .'" *Id.* Raskin further testified that "once Davis ascertained Raskin's interest in the position, Davis turned the conversation to other issues," including various performance difficulties of Raskin's. *Id.* at 62-63. The *Raskin* Court concluded that, although Davis was the decisionmaker who did not offer Raskin the promotion, "he had a

---

mixed-motive instruction in Title VII cases), it is unclear what meaning or value there is in assigning distinctions like "direct" or "circumstantial" to evidence of discrimination in any case. *See Desert Palace*, 539 U.S. at 100 ("The reason for treating circumstantial and direct evidence alike is both clear and deep rooted: 'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'") (quoting *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 508 n.17 (1957)).

legitimate reason to confirm Raskin's interest in a career change notwithstanding the possibility that Raskin would have the option of taking early retirement." *Id.* at 63. There was no suggestion at all in *Raskin*, as there is here, that Davis already knew that Raskin had no desire to retire when he asked the question or that Davis explicitly referred to Raskin's age and suggested that Raskin affirmatively should retire because of his age.

Accordingly, the district court erred in characterizing State's remark to Fried at the October 19, 2010, meeting as a "stray remark" that is not probative of discrimination as a matter of law, especially in light of the context in which it arose. The remark is evidence that should be considered by a jury along with the other evidence in the record in evaluating Fried's age discrimination claim.

## II. The District Court Misapplied Precedent of Both the Supreme Court and this Court in Failing to View the Record Evidence as a Whole and Concluding that the Plaintiff Had Not Adduced a Genuine Dispute of Material Fact as to Pretext.

In concluding that no genuine dispute of material fact existed in this case, the district court appears to have disregarded the Supreme Court's decision in *Reeves* in several respects. First, the district court appears to

have misapplied both *Reeves* and this Court's case law interpreting *Reeves* by stating that, in order to show pretext, Fried was required to demonstrate "that: (1) the proferred [sic] reason [ ][is] false; and (2) the real reason was unlawful discrimination." SPA-23 (alterations in original). As this Court has recognized, *Reeves* rejected this requirement as a matter of law, holding that demonstrating the falsity of the defendant's proffered reason may itself be sufficient to show pretext, depending on the circumstances of the case. *See, e.g., Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) ("In examining the impact of *Reeves* on our precedents, we conclude that *Reeves* prevents courts from imposing a per se rule requiring in all instances that an ADEA claimant offer more than a prima facie case and evidence of pretext."); *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 155-56 (2d Cir. 2000) (observing that "the Supreme Court explained in *Reeves* that in some circumstances, a prima facie case plus falsity of the employer's explanation can, without more, be enough to support a reasonable finding that prohibited discrimination has occurred, and thus that a plaintiff may,

under those circumstances, reach the jury on this evidence and without additional evidence").

Second, as the *Reeves* Court observed, on summary judgment the court is required to review the record evidence "taken as a whole," and indeed the Supreme Court faulted the Fifth Circuit in *Reeves* for disaggregating the additional evidence of pretext from the evidence adduced to establish the plaintiff's prima facie case. *Id.* at 149-50. This Court has repeatedly made the same observation. *See, e.g., Tomassi*, 478 F.3d at 115 ("Instead of disregarding some of the evidence because of [a "stray remarks"] classification, the court should have considered all the evidence in the light most favorable to the plaintiff to determine whether it could support a reasonable finding in the plaintiff's favor."); *James*, 233 F.3d at 156 ("As we understand the Court's *Reeves* opinion, once a minimal prima facie case is proved and the employer's nondiscriminatory explanation has been given, . . . the governing standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred."); *Schnabel*, 232 F.3d at 90 ("[W]e hold

that the Supreme Court's decision in *Reeves* clearly mandates a case-by-case

approach, with a court examining the entire record to determine whether

the plaintiff could satisfy his 'ultimate burden of persuading the trier of

fact that the defendant intentionally discriminated against the plaintiff.'")

(quoting *Reeves*, 530 U.S. at 143).

In this case, the district court engaged in precisely this kind of

disaggregation, separating out each category of evidence Fried proffered

and citing some authority for the proposition that that type of evidence,

standing alone, was not enough to create a genuine dispute of material fact

as to discrimination. *See* SPA-24 (holding that October 19, 2010 comment

"alone" was insufficient to sustain plaintiff's burden to show pretext); SPA-

25-27 (remarks about retirement not necessarily sufficient to demonstrate

age animus or "direct evidence" of age discrimination); SPA-28 (younger

replacement(s) "cannot alone" establish pretext).   As *Reeves* and this

Court's law construing *Reeves* make clear, however, this was not the proper

way to assess the evidence.

Rather, the appropriate question is whether all of the evidence in the record, taken together, is sufficient to allow a reasonable jury to conclude that Fried's age was the but-for cause of his termination from LVI, whether because LVI's proffered reason was false or because it was not the real reason why State terminated Fried. That evidence, as discussed above, consists of: Fried's undisputed good performance before State's arrival on the scene; State's campaign to get rid of Fried, not only as executive chairman of LVI but also as chairman of the board, before State even arrived at LVI and before Fried could possibly have been interfering with him; State's own e-mail and deposition testimony that he had been told that Fried did not want to retire; other board members' testimony that they had told State that Fried had no intention of retiring; State's e-mail to the Board in which he said that he was "OK making moves on a number of senior people that don't pull their weight"; State's October 19, 2010, remark to Fried at their meeting, which directly referenced Fried's age and included a demand to know when he intended to retire; and the fact that Fried's duties were reassigned entirely to younger workers after he left.

33

While this evidence might not compel a jury to find in Fried's favor, it is sufficient to allow a reasonable jury to conclude that State terminated Fried because of his age.  A jury could conclude that State viewed Fried as good for nothing but retirement because of his age, despite evidence of Fried's more than competent continued performance and willingness to adapt to a new role in the company, and that State had already made the decision to get rid of Fried before Fried could possibly have been in his way or refused to comply with any of State's wishes.  State's other remark to the board about "senior people that don't pull their weight," while perhaps not explicitly age-biased in isolation, should be viewed in light of State's treatment of Fried and the totality of the circumstances, and a reasonable jury would be entitled to consider it and conclude that it contributed to a larger picture of State's views on older workers in general and Fried in particular.

CONCLUSION

For the foregoing reasons, the judgment of the district court should

be reversed and the case remanded for further proceedings.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

LORRAINE C. DAVIS
Acting Associate General Counsel

s/Elizabeth E. Theran
ELIZABETH E. THERAN
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M Street, N.E., 5th Floor
Washington, D.C. 20507
(202) 663-4720
elizabeth.theran@eeoc.gov

CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(d) and 32(a)(7)(B) because it contains 6,888 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in Palatino Linotype 14 point.

s/Elizabeth E. Theran
Elizabeth E. Theran
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M Street, N.E., 5th Floor
Washington, D.C. 20507

Dated:  March 5, 2012

CERTIFICATE OF SERVICE

I, Elizabeth E. Theran, hereby certify that I electronically filed the foregoing brief with the Court via the appellate CM/ECF system and filed six copies of the foregoing brief with the Court by next business day delivery, postage pre-paid, this 5th day of March, 2012.  I also certify that the following counsel of record, who have consented to electronic service, will be served the foregoing brief via the appellate CM/ECF system:

Counsel for Plaintiff /Appellant:          Counsel for Defendants/Appellees:
Douglas Holden Wigdor                      Nicholas H. DeBaun
Thompson Wigdor LLP                        Sidley Austin LLP
85 Fifth Avenue                            787 Seventh Avenue
New York, NY 10003                         New York, NY 10019
(212) 257-6800                             (212) 839-5300
dwigdor@thompsonwigdor.com                 ndebaun@sidley.com

                                           Andrew Ehrlich
                                           Paul, Weiss, Rifkind, Wharton &
                                           Garrison LLP
                                           1285 Avenue of the Americas
                                           New York, NY 10019
                                           (212) 373-3166
                                           aehrlich@paulweiss.com


                                           s/Elizabeth E. Theran
                                           Elizabeth E. Theran
                                           Attorney
                                           EQUAL EMPLOYMENT
                                           OPPORTUNITY COMMISSION
                                           Office of General Counsel
                                           131 M Street, N.E., 5th Floor
                                           Washington, D.C. 20507

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

SHARI L. DEMBIN and BURTON T. FRIED      :
     :
           Plaintiffs,      :      Civil Action No. 3:11-CV-01855 (JBA)
     :
           v.      :      May 31, 2012
     :
LVI SERVICES INC., LVI PARENT CORP.,      :
and SCOTT E. STATE,      :
     :
           Defendants.      :

## PLAINTIFF'S LOCAL RULE 56(a)2 STATEMENT

Pursuant to Rule 56(a)2 of the Local Rules of Civil Procedure of the United States District Court for the District of Connecticut, Plaintiff Burton T. Fried hereby responds to Defendants' Local Rule 56(a)1 Statement as follows:

1.      Admit.[1]

2.      Admit.

3.      Admit.

4.      Admit.

5.      Admit.

6.      Deny in part. From approximately September 2003 through approximately mid-November 2005, Mr. Fried worked out of LVI Services, Inc.'s ("LVI") office in New York City ("New York City Office") for two to three days a week. (Ex. 4, pp. 45-46; Ex. 12, pp.65-67). From approximately mid-November 2005 through mid-July 2006, Mr. Fried worked out of the New York City Office two days a week. (Ex. 13, p.3).

---

[1]      All statements admitted herein are admitted solely for the purpose of responding to Defendants' Local Rule 56(a)1 Statement and responding to Defendants' motion for summary judgment.

7.      Deny in part.  The evidence cited by Defendants does not support the contention that Mr. Fried "wish[ed] to relinquish his day-to-day operational responsibilities."  Prior to the purchase of LVI by Code Hennessy Simmons LLC, Mr. Fried agreed with the prior owner that LVI should hire a new President and Chief Executive Officer ("CEO") who had the skill set to triple the company's earnings. (Ex. 4, pp. 35-36; Ex. 12, pp.75-77).  Mr. Fried also decided that when a new President and CEO was hired, he would remain at LVI with a Chairman title and focus on growth initiatives. (Ex. 12, pp.75-77; Ex. 13, p.1).  By virtue of Mr. Fried's job duties as Chairman, he would no longer have the same day-to-day responsibilities over LVI he had as President and CEO. (Ex. 12, pp.80-81).

8.      Deny in part.  The evidence cited by Defendants does not support the contention that agreement entered into between LVI and Mr. Fried stated that Mr. Fried's would have primary responsibility for strategic growth "at the direction of the new CEO." (Ex. 13, p.1).

9.      Deny.  This paragraph does not contain a statement of material fact.  Rather, it contains a legal argument/conclusion as to LVI's purported legal rights.

10.     Deny in part.  The evidence cited by Defendants does not support the contention that Mr. Fried "resigned from the position of President and CEO."  Mr. Fried agreed to serve as Chairman of LVI after a new President and CEO was hired. (Ex.13, p.1).

11.     Admit.  Mr. Fried avers that the reduction of his work schedule lasted for only one week. (Ex. 12, pp.109-10).

12.     Admit.

13.     Admit.

14.     Deny.  The evidence cited by Defendants does not support the contention that Mr. Fried "identified [State] as a candidate for the position and introduced State to LVI and the

Board."  Mr. Fried testified that Mr. State "was sort of introduced to be considered for the position by one or more managers of LVI." (Ex. 12, p.117).  Mr. Fried also testified that at the request of Mr. Leonard and Mr. Messisco, he suggested that Mr. State apply for the President and CEO position. (Ex. 12, pp.117-18).

15.    Deny in part.  The evidence cited by Defendants does not support the contention that Mr. State "ultimately became the choice of Fried."  Mr. Fried testified that he supported Mr. State's hiring because the senior managers of LVI recommended him for the position. (Ex. 12, p.121).

16.    Admit.

17.    Deny.  Mr. Fried testified that he supported Mr. State's hiring because the senior managers of LVI recommended him for the position. (Ex. 12, p.121).

18.    Deny in part.  The evidence cited by Defendants does not support the contention that Mr. State wanted to speak to Mr. Fried to ensure that Mr. State would have the authority as CEO to "manage the business without Fried's interference."

19.    Admit.

20.    Admit.

21.    Admit.

22.    Deny.  The evidence cited by Defendants does not support their entire contention.

23.    Deny.  The evidence cited by Defendants does not support the contention that Mr. Fried sent Mr. State "an unsolicited email" or that the email listed Mr. Fried's "purported" responsibilities as Chairman under Mr. McNamara.

24.    Deny.  The evidence cited by Defendants does not support the contention that Mr. Fried and Mr. State discussed "Fried's proper duties as Chairman and the transition of other duties to members of LVI's management."

25.    Deny.  The evidence cited by Defendants does not support the contention that Mr. Simmons requested that Mr. Fried send him a list of Plaintiff's job duties to distribute to the Board of Directors.

26.    Deny.  The evidence cited by Defendants does not support the contention that Mr. Simmons responded "on behalf of the Board" and that Mr. Simmons proposed to replace Mr. Fried's existing employment "agreement" with a consulting agreement.

27.    Admit.

28.    Admit.  Mr. Fried avers that the letter from Fried's counsel was hand delivered to LVI's New York office on November 15, 2010. (Ex. 4, pp.138-39; Ex. 24, p.1).

29.    Deny.  The letter sent by Mr. Simmons to Mr. Fried terminated his employment with LVI. (Ex. 26, pp.2-3).

30.    Deny.  Mr. Fried did not resign his position as Chairman of LVI. (Ex. 12, pp.270-71; Ex. 26, pp.2-3; Ex. 31).

31.    Admit.  Mr. Fried avers that the terms of the consultancy arrangement required him to waive his right to sue Defendants for age discrimination and retaliation, did not guarantee him a minimum number of hours, could have been terminated by LVI at any time upon 30-days notice, and only guaranteed Mr. Fried $37,500. (Ex. 26, pp.2-6).

32.    Admit.

33.    Admit.

34.    Admit.

35.      Deny in part.  The Connecticut Commission on Human Rights and Opportunities released jurisdiction prior to the time set forth in Conn. Gen.Stat. §46a-101. (Def. 56(a)1, ¶33; Ex. 42).

36.      Admit.

## DISPUTED ISSUES OF MATERIAL FACT

37.      Whether Mr. Fried transitioned to the position of Chairman of LVI in 2005 because he wanted to retire. (Ex. 12, pp. 75-79, 132; Ex. 13; Ex. 14).

38.      Whether Mr. Fried was planning to retire after a replacement for Mr. McNamara was found. (Ex. 4, p. 64; Ex. 7, pp. 38, 48-50).

39.      Whether Mr. State was trying to have Mr. Fried removed as Chairman of the Board of Directors of LVI Parent Corp. before he was hired. (Ex. 18).

40.      Whether Mr. State was aware, before he was hired, that Mr. Fried had no intention of retiring. (Ex. 7, pp. 49, 58-60, 64-65; Ex. 11 pp. 115-17, 130-32; Ex. 19).

41.      Whether Mr. State and Mr. Fried discussed the possibility of Mr. Fried retiring. (Ex. 11, pp. 118-20).

42.      Whether Mr. Fried represented to Mr. State and the Board of Directors of LVI Parent Corp. "that he fully intended to relinquish his responsibilities for running LVI." (Ex. 4, p. 64; Ex. 7, pp. 38, 48-50, 58-60, 64-65; Ex. 11 pp. 115-17, 130-32; Ex. 12, pp. 75-79, 132; Ex. 13; Ex. 14; Ex. 19).

43.      Whether Mr. Fried had day-to-date duties as Chairman after Mr. State was hired. (Def. 56(a)1, ¶20; Ex. 3, p. 47; Ex. 13; Ex. 20; Ex. 36, p. 3).

44.      Whether Mr. State stripped Mr. Fried of all his duties on October 19, 2010. (Def. 56(a)1, ¶24; Ex. 4, p. 101; Ex. 7, pp. 77, 114-17; Ex. 10; Ex. 12, p. 182-83, 194; Ex. 36).

45.    Whether Mr. State's age-based remark during his October 19, 2010 meeting with Mr. Fried evinced a desire to terminate Mr. Fried because of his age. (Ex. 7, p. 117; Ex. 12, p.194).

46.    Whether Mr. State's age-based remark during his October 19, 2010 meeting with Mr. Fried was "nothing more than a request for clarification of how long Fried intended to retain his operational responsibilities at LVI." (Def. 56(a)1, ¶24; Ex. 4, p. 101; Ex. 7, pp. 77, 114-17; Ex. 12, pp. 182-83, 194; Ex. 36).

47.    Whether Mr. State's Whether Mr. State's age-based remark during his October 19, 2010 meeting with Mr. Fried related to retirement or transitioning planning. (Def. 56(a)1, ¶24; Ex. 4, p. 101; Ex. 7, pp. 77, 114-17; Ex. 12, pp. 182-83, 194; Ex. 36).

48.    Whether Mr. Fried interfered with Mr. State's management of LVI.  (Ex. 4, p. 129; Ex. 6, pp. 39, 74; Ex. 7, pp. 74-76; Ex. 18; Ex. 33, pp. 62-63; Ex. 37; Ex. 38).

49.    Whether Mr. Fried's age was a motivating factor in the decision to terminate his employment. (Ex. 4, p. 129; Ex. 5, p. 105; Ex. 6, pp. 25-26, 39, 74; Ex. 7, pp. 37, 74-77, 93-117; Ex. 8, pp. 34-37; Ex. 9; Ex. 11, pp. 118-20, 362; Ex. 12, p. 194; Ex. 15, ¶2; Ex. 16, Ex. 17, p. 13; Ex. 18; Ex. 19; Ex. 21; Ex. 33, pp. 62-63; Ex. 34; Ex. 36; Ex. 37; Ex. 38).

50.    Whether Mr. State would have terminated Mr. Fried's employment regardless of his age. (Ex. 4, p. 129; Ex. 5, p. 105; Ex. 6, pp. 25-26, 39, 74; Ex. 7, pp. 37, 74-77, 93-117; Ex. 8, pp. 34-37; Ex. 9; Ex. 11, pp. 118-20, 362; Ex. 12, p. 194; Ex. 15, ¶2; Ex. 16, Ex. 17, p. 13; Ex. 18; Ex. 19; Ex. 21; Ex. 33, pp. 62-63; Ex. 34; Ex. 36; Ex. 37; Ex. 38).

51.    When Mr. Fried first complained of age discrimination. (Ex. 3, pp. 54-57; Ex. 8, pp. 44-45, 48; Ex. 12, pp. 194-200).

52.    Whether Mr. Fried complained about age discrimination prior to Brian Simmons' November 2, 2010 email. (Ex. 3, pp. 54-57; Ex. 8, pp. 44-45, 48; Ex. 12, pp. 194-200).

53.    Whether Mr. Fried complained about age discrimination prior to the November 4, 2010 meeting of the Board of Directors of LVI Parent Corp. (Ex. 3, pp. 54-57; Ex. 8, pp. 44-45, 48; Ex. 12, pp. 194-200).

54.    When the Board of Directors first contemplated terminating Mr. Fried's employment (Ex. 3, p. 95; Ex. 25; Ex. 26).

55.    Whether Mr. State made the decision to terminate. (Ex. 27, No. 4; Ex. 28, No. 6; Ex. 29, No. 5; Ex. 30, No. 5).

56.    When Mr. State first contemplated terminating Mr. Fried's employment (Ex. 3, p. 93, 95; Ex. 5, p. 73; Ex. 25; Ex. 26).

57.    When Mr. State made the decision to terminate Mr. Fried's employment. (Ex. 3, p. 95; Ex. 25; Ex. 26).

58.    Whether Mr. State made the decision to terminate Mr. Fried prior to receiving the November 15, 2010 letter from Mr. Fried's counsel alleging age discrimination. (Ex. 3, p. 95).

59.    Whether Mr. Fried's complaints of age discrimination was a motivating factor in the decision to terminate his employment. (Ex. 3, pp. 54-57, 95; Ex. 5, pp.82-84, 87-92; Ex. 8, pp. 44-45, 48, 138-39; Ex. 12, pp.194-200; Ex. 25).

60.    Whether Mr. State would have terminated Mr. Fried's employment regardless of his complaints of age discrimination. (Ex. 3, pp. 54-57, 95; Ex. 5, pp.82-84, 87-92; Ex. 8, pp. 44-45, 48, 138-39; Ex. 12, pp.194-200; Ex. 25).

61.    Whether Mr. Fried had an adequate opportunity to fully and fairly litigate his CFEPA claims in the New York Action when the CHRO released jurisdiction over his CHRO Complaint two days before the New York Action was dismissed. (Ex. 41; Ex. 42).

62.    Whether Mr. Fried had an adequate opportunity to fully and fairly litigate his CFEPA claims in the New York Action when the CHRO released jurisdiction over his CHRO Complaint approximately six weeks after the district court in the New York Action granted partial summary judgment without an opinion. (Ex. 32; Ex. 42).

63.    Whether Mr. Fried had an adequate opportunity to fully and fairly litigate his CFEPA claims in the New York Action when the CHRO released jurisdiction over his CHRO Complaint approximately two weeks after the district court in the New York Action issued its opinion in connection with the grant of partial summary judgment. (Ex. 35; Ex. 42).

64.    Whether the district court in the New York Action determined if Mr. Fried's age was a motivating in the decision to terminate. (Ex. 35, pp. 18-27).

65.    Whether the district court in the New York Action determined that Defendants would have terminated Mr. Fried regardless of his age. (Ex. 35, pp. 18-27).

66.    Whether the district court in the New York Action determined if Mr. Fried's complaints of age discrimination were a motivating factor in the decision to terminate. (Ex. 35, p. 27-30).

67.    Whether the district court in the New York Action determined that Defendants would have terminated Mr. Fried regardless of his complaints of discrimination. (Ex. 35, pp. 27-30)

Dated: May 31, 2012
New York, New York

Respectfully submitted,

THOMPSON WIGDOR LLP

By:     /s/ Shaffin A. Datoo
Douglas H. Wigdor (*Pro Hac Vice*)
Shaffin A. Datoo (*Pro Hac Vice*)

85 Fifth Avenue
New York, NY 10003
Telephone:     (212) 257-6800
Facsimile:     (212) 257-6845
dwigdor@thompsonwigdor.com
sdatoo@thompsonwigdor.com

William Madsen (ct 09853)
Todd Steigman (ct 26875)
Madsen, Prestley & Parenteau, LLC
44 Capitol Avenue, Suite 201
Hartford, CT 06106
Telephone:     (860) 246-2466
Facsimile:     (860) 246-1794
wmadsen@mppjustice.com
tsteigman@mppjustice.com

*Counsel for Plaintiff Burton T. Fried*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------------------------------------x
```
SHARI L. DEMBIN  and BURTON T. FRIED,                  :
                                                       :
                             Plaintiffs,               :     Civil No. 3:11-CV-01855 (JBA)
                                                       :
                    v.                                 :     **NOTICE OF APPEAL**
                                                       :
LVI SERVICES, INC., LVI PARENT CORP.,                  :
SCOTT E. STATE,                                        :
                                                       :
                             Defendants.               :
```
----------------------------------------------------------- x
```

Notice is hereby given that Plaintiff Burton T. Fried hereby appeals to the United States

Court of Appeals for the Second Circuit from a Ruling granting Defendants' Motion for

Summary Judgment, entered in this action on March 18, 2013, and from the Judgment entered in

this action on March 20, 2013.

Pursuant to Local Civil Rule 83.8 the names of the parties and the names and addresses

of their respective attorneys of record are as follows:

Counsel for Plaintiff Burton T. Fried          Counsel for All Defendants

THOMPSON WIGDOR LLP                            JACKSON LEWIS LLP
Douglas H. Wigdor, Esq.                        Joanne Seltzer, Esq.
85 Fifth Avenue                                666 Third Avenue
New York, New York 10003                       New York, NY 10017
(212) 257-6800                                 (212) 545-4000
(212) 257-6845 (fax)                           (212) 972-3213 (fax)

MADSEN, PRESTLEY &                             LITTLER MENDELSON, P.C
PARENTEAU LLC                                  Deborah DeHart Cannavino, Esq.
William G. Madsen                              Matthew K. Curtin, Esq.
Todd D. Steigman                               One Century Tower, Suite 300
402 Asylum Street                              265 Church Street
Hartford , CT 06103                            New Haven, CT 06510
(860) 246-2466                                 (203) 974-8700
(860) 246-1794 (fax)                           (203) 974-8799 (fax)

Dated: New York, New York
      March 28, 2013

Respectfully submitted,

THOMPSON WIGDOR LLP

By: _____
     Douglas H. Wigdor
     85 Fifth Avenue
     New York, NY 10003
     (212) 257-6800
     (212) 257-6845

     Counsel for Plaintiff

A-976



## U.S. Equal Employment Opportunity Commission
## New York District Office

33 Whitehall Street
5th Floor
New York, NY 10004
(212) 336-3620
TDD: 1-800-669-6820
Fax: (212) 336-3625
1-800-669-4000

Respondent: LVI SERVICES INC
EEOC Charge No.: 520-2011-00965
FEPA Charge No.:

January 7, 2011

Dantiel Duncan
THOMPSON WIGDOR & GILLY LLP
85 Fifth Avenue
New York, NY 10003

Dear  Ms. Duncan:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

[ ]     Title VII of the Civil Rights Act of 1964 (Title VII)
[ X ]   The Age Discrimination in Employment Act (ADEA)
[ ]     The Americans with Disabilities Act (ADA)
[ ]     The Equal Pay Act (EPA)
[ ]     The Genetic Information Nondiscrimination Act (GINA)

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

[X]     Please be aware that we will send a copy of the charge to the agency listed below as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case.  Otherwise, we will generally adopt the agency's finding as EEOC's.

New York State Division Of Human Rights
Federal Contract Unit
One Fordham Plaza, 4 Fl.
Bronx, NY 10458

While the charge is pending, this office should be notified of any change in your client's address, or where they can be reached if they have any prolonged absence from home. Your cooperation in this matter is essential.

Sincerely,

Roxanne Zygmund
Investigator
(212) 336-3764

Office Hours: Monday – Friday, 8:30 a.m. - 5:00 p.m.
www.eeoc.gov

Enclosure(s)

cc:  Burton T. Fried
     149 Roseville Road
     Westport, CT 06880
     w/o enc.

A-977

520-2011-00965

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; see Privacy Statement on reverse before completing this form.

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| | ☐ FEPA | |
| | ☒ EEOC | |

_____ and EEOC
(State or Local Agency, If Any)

| NAME (Indicate Mr., Ms.., or Mrs.) | HOME TELEPHONE NUMBER (Include Area Code) |
|---|---|
| Mr. Burton T. Fried | (203)341-9110 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 149 Roseville Road | Westport, CT    06880 | 2/26/1940 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below).

| NAME | NO. OF EMPLOYEES/MEMBERS | TELEPHONE NUMBER (Include Area Code) | |
|---|---|---|---|
| LVI Services, Inc. | 500+ | (212) 951-3660 | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 80 Broad Street | New York, NY 10004 | New York |

| NAME | NO. OF EMPLOYEES/MEMBERS | TELEPHONE NUMBER (Include Area Code) |
|---|---|---|
| LVI Parent Corp. | 12 | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| 80 Broad Street | New York, NY 10004 |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☒ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ OTHER (Specify)

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST | LATEST |
| 10/19/10 | 11/30/10 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s))

### See the attached supplement.

RECEIVED
DEC 1 3 2010
EEOC-NYDO-CRTIU

| I want this charge filed with the EEOC and the State FEPA. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary to meet State and Local Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | |
| Date  12/10/10    Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE: 12-10-10 (Month, day and year) |

LUZ STELLA AMAYA G
Notary Public, State of Connecticut
My Commission Expires Jan. 31, 2015


## SUPPLEMENT TO THE EEOC CHARGE OF DISCRIMINATION
## OF BURTON T. FRIED

1. I am the 70 year old former Chairman of LVI Services, Inc. ("LVI" or the "Company") and LVI Parent Corp., Inc. (the "Parent").

2. LVI Parent Corp., Inc. is the sole shareholder of LVI and is a holding company that maintains no payroll and conducts no business outside of signing documents. At all relevant times, LVI and Parent operated as a single, integrated enterprise, a single employer, or as joint employers.

3. Code Hennessy Simmons LLP ("CHS") and Apollo Investment Corp. ("Apollo") are both minority equity stakeholders in LVI Parent Corp. At all relevant times, LVI and CHS operated as a single, integrated enterprise, a single employer, or as joint employers. At all relevant times, LVI and Apollo operated as a single, integrated enterprise, a single employer, or as joint employers.

4. I worked for LVI for over 24 years, spending the majority of that time as President and Chief Executive Officer ("CEO") of the Company.

5. During my tenure at LVI, I helped to build the Company into the country's largest, and only, fully integrated national provider of self-performed diverse environmental remediation, demolition, and other facility management services. Through my efforts, the Company expanded to include over 25 locations nationwide.

6. I was President and CEO of LVI until June 2006 when Robert McNamara succeeded me. At that time, I remained at LVI as Chairman, as provided by my contract of employment with the Company.

7. Under Mr. McNamara, I had numerous substantive responsibilities, including developing and implementing new business initiatives, overseeing all Company litigation and legal matters, participating in negotiation of Company acquisitions, and performing risk assessments of large Company projects requiring bid and/or payment and performance bonds.

8. I remained as Chairman until April 2010 when Mr. McNamara resigned. At that time, I took on the position of President and CEO on an interim basis while I conducted the search for an individual to permanently fill the position.

9. After interviewing numerous candidates for the position, I recommended that Scott E. State fill the role of President and CEO. Mr. State accepted the position and began his employment with LVI on or about October 1, 2010.

10. On October 19, 2010, I met with Mr. State at his office to discuss my responsibilities as Chairman. After presenting Mr. State with a list of my duties

as Chairman with Mr. McNamara, Mr. State informed me that all those responsibilities would be transitioned to other LVI managers. As a reason for this drastic move, Mr. State asked me, "You are 71 years old. How long do you expect to continue working?"

11. I immediately left the meeting with Mr. State, and within the next two or three days, I contacted members of the Board of Directors of Parent ("Board") to gauge their level of agreement with Mr. State and to oppose his discriminatory conduct. I was told by Board members from CHS and Apollo that they supported Mr. State in whatever decision he made concerning my employment status.

12. On November 2, 2010, Brian Simmons, member of the Board and managing partner at CHS, informed me that he desired to transition my responsibilities to members of the LVI management team.

13. On November 4, 2010, I attended a closed Board meeting where I again expressed my opposition to the Company's discriminatory treatment. Additionally, I offered Mr. State the chance to repudiate his discriminatory and ageist comment, yet, he merely affirmed it. Further, Board members from CHS and Apollo expressed that they wanted to strip me of my duties.

14. On November 10, 2010, I was informed that it was the desire of the Board to eliminate completely my day-to-day involvement in the Company and give Mr. State sole discretion to determine my level of involvement.

15. I sent, through my counsel, a letter to Mr. State on November 15, 2010 to further oppose the Company's discriminatory treatment.

16. On November 16, 2010, Mr. Simmons notified me, on behalf of the Board, that the Company would terminate my employment effective November 30, 2010. Instead, the Company requested that I accept a consulting assignment with LVI and remain as titular Chairman of Parent.

17. The Company asked me to remain as a figurehead to exploit my years of experience in the industry and the relationships I have cultivated.

18. My termination by the Company, including my positions as a director and officer of both LVI and Parent, was effected on November 30, 2010.

19. Since my October 19 meeting with Mr. State, I was completely isolated at the Company. Mr. State directed LVI managers to cease contacting me and excluded me from multiple projects that I had developed and had been working on.

20. This isolation was based on my age and due to the Company's plans to transition all my duties to younger employees.

21. My isolation was also in retaliation for opposing the Company's discriminatory conduct.

22. My termination was based on my age and due to the Company's plans to transition all my job duties to younger employees.

23. Additionally, my termination was in retaliation for opposing the Company's discriminatory conduct.

24. As a result of the foregoing discriminatory conduct, I have sustained economic loss and suffered mental and emotional anguish.

25. Based upon these and other facts, the Company, Parent, CHS, and Apollo, discriminated against me because of my age and in retaliation for opposing their discriminatory conduct.

Nicholas H. De Baun
Joanne Seltzer
Michael D. Mann
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Attorneys for Defendants
LVI Services Inc., LVI Parent Corp.,
Scott E. State, Brian Simmons,
Rajay Bagaria and Gerald J. Girardi

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------- X

| | |
|---|---|
| BURTON T. FRIED, | **ECF CASE** |
| Plaintiff, | 10 Civ. 9308 (JSR) (JCF) |
| - against - | **ANSWER TO AMENDED COMPLAINT** |
| LVI SERVICES, INC.; LVI PARENT CORP., CODE HENNESSY SIMMONS LLC d/b/a/ CHS PRIVATE EQUITY V LP; APOLLO INVESTMENT CORP.; SCOTT E. STATE, in his official and individual capacities; BRIAN SIMMONS, in his official and individual capacities; RAJAY BAGARIA, in his official and individual capacities; GERALD J. GIRARDI, in his official and individual capacities, | |
| Defendants. | |

-------------------------------------- X

Defendants LVI Services Inc. ("LVI"), LVI Parent Corp. ("LVI Parent"), Scott E.

State ("State"), Brian Simmons ("Simmons"), Rajay Bagaria ("Bagaria") and Gerald J. Girardi

("Girardi") (collectively referred to as "Defendants"), by their attorneys, Sidley Austin LLP, as

and for their Answer to the Amended Complaint (the "Complaint") herein, state as follows:

## NATURE OF THE CLAIMS

1.      Neither admit nor deny the allegations contained in Paragraph 1 of the Complaint as the allegations state conclusions of law to which no response is required.  To the extent Paragraph 1 contains factual allegations, Defendants deny all such allegations.

2.      Neither admit nor deny the allegations contained in Paragraph 2 of the Complaint as the allegations state conclusions of law to which no response is required.  To the extent Paragraph 2 contains factual allegations, Defendants deny all such allegations and aver that Plaintiff's common law claims were dismissed by the Court on April 4, 2011.

## PRELIMINARY STATEMENT

3.      Deny all of the allegations contained in Paragraph 3 of the Complaint, except deny knowledge and information relating to Plaintiff's expectations with respect to his employment with LVI and aver that Defendant LVI Services Inc.'s records show that Plaintiff was 70 years old when this lawsuit was begun.

4.      Deny all of the allegations contained in Paragraph 4 of the Complaint.

5.      Deny all of the allegations contained in Paragraph 5 of the Complaint, except admit that State began his employment with LVI as President and Chief Executive Officer ("CEO") on September 27, 2010.

6.      Deny all of the allegations contained in Paragraph 6 of the Complaint.

7. Deny all of the allegations contained in Paragraph 7 of the Complaint, except deny knowledge and information sufficient to form a belief as to the truth of the representations in Paragraph 7 relating to Plaintiff's state of mind.

8. Deny all of the allegations contained in Paragraph 8 of the Complaint. To the extent Paragraph 8 purports to paraphrase or interpret a document, Defendants respectfully refer the Court to the full document for its contents.

9. Deny all of the allegations contained in Paragraph 9 of the Complaint.

**JURISDICTION AND VENUE**

10. Neither admit nor deny the allegations contained in Paragraph 10 of the Complaint as the allegations state conclusions of law to which no response is required. To the extent Paragraph 10 contains factual allegations, Defendants deny all such allegations.

11. Neither admit nor deny the allegations contained in Paragraph 11 of the Complaint as the allegations state conclusions of law to which no response is required. To the extent Paragraph 11 contains factual allegations, Defendants deny all such allegations.

**PROCEDURAL REQUIREMENTS**

12. Deny knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 12 relating to Plaintiff's filing of charges of discrimination with the EEOC, but aver that Defendants received notices of charges of discrimination from the EEOC relating to Plaintiff's charges.

13. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint relating to Plaintiff's service of the

Complaint on the New York City Commission on Human Rights and the Office of the

Corporation Counsel of the City of New York.

14.    Deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 14 of the Complaint relating to Plaintiff's satisfaction

of the prerequisites to the filing of this suit.

## PARTIES

15.    Deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 15 of the Complaint, except neither admit nor deny the

allegations contained in Paragraph 15 of the Complaint to the extent the allegations state

conclusions of law to which no response is required.  LVI avers that its records reflect that

Plaintiff's date of birth is February 26, 1940 and that he is a resident of the State of Connecticut,

Fairfield County.

16.    Admit the factual allegations contained in Paragraph 16 of the Complaint,

except neither admit nor deny the allegations contained in Paragraph 16 of the Complaint to the

extent the allegations state conclusions of law to which no response is required.

17.    Deny all of the allegations contained in Paragraph 17 of the Complaint,

except admit that LVI Parent is a Delaware corporation with a principal place of business located

at 80 Broad Street, New York, New York 10004 and neither admit nor deny the allegations

contained in Paragraph 17 of the Complaint to the extent the allegations state conclusions of law

to which no response is required.

18.     Admit the factual allegations contained in Paragraph 18 of the Complaint, except neither admit nor deny the allegations contained in Paragraph 18 of the Complaint to the extent the allegations state conclusions of law to which no response is required, and aver that CHS is no longer a party to this action pursuant to the Court's Order, dated April 4, 2011.

19.     Deny knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 19 of the Complaint and neither admit nor deny the allegations to the extent the allegations state conclusions of law to which no response is required, except admit that Apollo is a publicly traded company and that it owns a minority equity interest in LVI Parent with two seats on the LVI Parent board, and aver that Apollo is no longer a party to this action pursuant to the Court's Order, dated April 4, 2011..

20.     Deny all of the allegations contained in Paragraph 20 of the Complaint, except admit that State is a resident of the State of Colorado, currently a member of the Board, employed as President and CEO of LVI and was 47 years of age when this lawsuit was begun.

21.     Deny all of the allegations contained in Paragraph 21 of the Complaint, except admit that Simmons is a resident of the State of Illinois, currently a member of the Board and a partner of CHS and was 50 years of age when this lawsuit was begun.

22.     Deny all of the allegations contained in Paragraph 22 of the Complaint, except admit that Bagaria is a resident of the State of New York, currently a member of the Board and was 33 years of age when this lawsuit was begun.

23.     Deny all of the allegations contained in Paragraph 23 of the Complaint, except admit that Girardi is a resident of the State of New York, currently a member of the Board and was 51 years of age when this lawsuit was begun.

## FACTUAL ALLEGATIONS

### Mr. Fried's Employment at LVI

25.    Deny all of the allegations contained in Paragraph 25 of the Complaint, except admit that Plaintiff was Chairman of LVI and LVI Parent and was former President and CEO, and admit that LVI's records indicate he was 70 years of age when this lawsuit was begun.

26.    Deny all of the allegations contained in Paragraph 26 of the Complaint, except aver that Plaintiff was employed by LVI from on or about January 1, 1986 through November 30, 2010, and held several positions throughout his employment including General Counsel, President and CEO, interim President and CEO and Chairman.

27.    Admit the allegations contained in Paragraph 27 of the Complaint.

28.    Deny all of the allegations contained in Paragraph 28 of the Complaint.

29.    Deny all of the allegations contained in Paragraph 29 of the Complaint, except aver that LVI was retained to provide demolition services for buildings in Las Vegas and New York and to assist in the emergency response clean up of the Gulf Coast region after Hurricane Katrina.

30.    Deny the allegations contained in Paragraph 30 of the Complaint, except aver that LVI was sold on or about November 16, 2005 and, stating his wish to retire, Plaintiff was involved in the search for his replacement as President and CEO.

31.    Deny all of the allegations contained in Paragraph 31 of the Complaint to the extent Paragraph 31 purports to paraphrase or interpret a document, Defendants respectfully refer the Court to the full document for its contents.

6

32.    Deny all of the allegations contained in Paragraph 32 of the Complaint, except aver that Robert McNamara was hired as President and CEO of LVI on July 10, 2006 and that Plaintiff resigned from the position of President and CEO and assumed the position of Chairman.

33.    Deny all of the allegations contained in Paragraph 33 of the Complaint, except admit that, when Plaintiff assumed the position of Chairman of LVI, he agreed to a reduction of his work schedule and to a 20% reduction in his compensation.

34.    Deny all of the allegations contained in Paragraph 34 of the Complaint, except aver that, as Chairman of LVI, he was engaged in a number of areas of LVI's operations, as requested and approved by LVI's President and CEO.

35.    Deny all of the allegations contained in Paragraph 35 of the Complaint, except aver that Plaintiff played a role in cultivating a relationship with Arch Surety.

36.    Deny all of the allegations contained in Paragraph 36 of the Complaint, except aver that, as Chairman of LVI, Plaintiff played a role in maintaining a relationship with Arch Surety; however, Plaintiff's role diminished significantly upon the hire of McNamara.

## Mr. Fried's Unlawful Termination Based on His Age and in Breach of His Contract[1]

37.    Deny all of the allegations contained in Paragraph 37 of the Complaint, except aver that Robert McNamara resigned from his position of President and CEO of LVI in

---

[1] A number of the headings in the Complaint contain false allegations. Because these headings are not numbered, Defendants have not responded to them specifically but hereby deny any and all allegations contained in Plaintiff's headings and subheadings.

April 2010 and that Plaintiff assumed the position of interim President and CEO until the hire of a new President and CEO.

38.     Deny all of the allegations contained in Paragraph 38 of the Complaint, except aver that Plaintiff's compensation returned to its previous level while he assumed the position of interim President and CEO and that he participated in the continued search for a new President and CEO.

39.     Deny all of the allegations contained in Paragraph 39 of the Complaint, except aver that Plaintiff played a role in the consideration of State for the position of President and CEO for LVI.

40.     Deny all of the allegations contained in Paragraph 40 of the Complaint, except aver that Plaintiff's participation in negotiations in connection with the restructuring and recapitalization of LVI in 2010 was limited to his and LVI management's individual compensation, and further aver that Simmons acknowledged the contribution of a number of employees, including Plaintiff, in connection with the restructuring and recapitalization of LVI in 2010.

41.     Admit the allegations contained in Paragraph 41 of the Complaint.

42.     Deny all of the allegations contained in Paragraph 42 of the Complaint, except aver that Plaintiff played a role in considering State for the position of President and CEO of LVI.

43.     Deny all of the allegations contained in Paragraph 43 of the Complaint, except aver that, on September 27, 2010, State began his employment with LVI as President and CEO and Plaintiff remained Chairman of LVI.

44.     Deny all of the allegations contained in Paragraph 44 of the Complaint, except aver that Plaintiff sent State a list of the responsibilities he proposed to perform as Chairman and that State requested a meeting with Plaintiff on October 19, 2010 to discuss Plaintiff's duties as Chairman going forward.

45.     Deny all of the allegations contained in Paragraph 45 of the Complaint, except aver that, during their meeting on October 19, 2010, State and Plaintiff discussed his proposed duties as Chairman and the transition of other duties to members of LVI's management.

46.     Deny all of the allegations contained in Paragraph 46 of the Complaint.

47.     Deny all of the allegations contained in Paragraph 47 of the Complaint.

48.     Deny all of the allegations contained in Paragraph 48 of the Complaint.

49.     Deny all of the allegations contained in Paragraph 49 of the Complaint, except aver that, on or about November 2, 2010, Simmons offered Plaintiff the opportunity to enter into a consulting contract with LVI.

50.     Deny all of the allegations contained in Paragraph 50 of the Complaint.

51.     Deny all of the allegations contained in Paragraph 51 of the Complaint, except aver that at a regularly scheduled LVI board meeting on November 4, 2010 a number of matters were discussed, including Plaintiff.

52.     Deny all of the allegations contained in Paragraph 52 of the Complaint, except deny knowledge or information sufficient to determine the truth of the allegations contained in Paragraph 52 of the Complaint relating to Plaintiff's alleged communications with Board members other than Simmons, Bagaria and Girardi.

53.     Deny all of the allegations contained in Paragraph 53 of the Complaint.

54.     Deny all of the allegations contained in Paragraph 54 of the  Complaint.

**Mr. Fried's Isolation and Termination**

55.     Deny all of the allegations contained in Paragraph 55 of the Complaint.

56.     Deny all of the allegations contained in Paragraph 55 of the Complaint.

57.     Deny all of the allegations contained in Paragraph 57 of the Complaint.

58.     Deny all of the allegations contained in Paragraph 58 of the Complaint, except aver that on or about November 11, 2010, Defendant Simmons sent Plaintiff a letter setting out, among other things, his duties and responsibilities as non-executive Chairman of the Board and consultant and, to the extent that paragraph 58 purports to paraphrase or interpret a document, Defendants respectfully refer the Court to the full document for its contents.

59.     Deny knowledge and information sufficient to determine the truth of the allegations contained in Paragraph 59 of the Complaint relating to Plaintiff's sending a letter to State, except aver that a letter from Plaintiff's counsel was received by State on November 15, 2010 and, to the extent Paragraph 59 purports to paraphrase or interpret a document, Defendants respectfully refer the Court to the full document for its contents.

60.     Deny all of the allegations contained in Paragraph 60 of the Complaint, except aver that Defendant Simmons sent a letter to Plaintiff on or about November 16, 2010 notifying Plaintiff of the termination of his employment and offering him a consulting agreement with LVI and, to the extent Paragraph 60 purports to paraphrase or interpret a document, Defendants respectfully refer the Court to the full document for its contents.

61.     Deny all of the allegations contained in Paragraph 61 of the Complaint.

62.     Deny all of the allegations contained in Paragraph 62 of the Complaint, except aver that Plaintiff's employment with LVI terminated on November 30, 2010.

63.     Deny all of the allegations contained in Paragraph 63 of the Complaint.

**Retaliatory Conduct Following Mr. Fried's Termination**

64.     Deny all of the allegations contained in Paragraph 64 of the Complaint.

65.     Deny all of the allegations contained in Paragraph 65 of the Complaint, except admits that Ms. Dembin began her employment with LVI in 1996 as an administrative assistant in LVI's New York office and that she transferred to the Westport office.

66.     Deny all of the allegations contained in Paragraph 66 of the Complaint.

67.     Deny all of the allegations contained in Paragraph 67 of the Complaint.

68.     Deny all of the allegations contained in Paragraph 68 of the Complaint, except admits that, on or about January 6, 2011, Ms. Dembin was notified that her employment with LVI would be terminated on January 14, 2011.

69.     Deny all of the allegations contained in Paragraph 69 of the Complaint.

70.     Deny all of the allegations contained in Paragraph 70 of the Complaint.

71.     Deny all of the allegations contained in Paragraph 71 of the Complaint.

**A Single/Joint Employer Relationship Exists Between the Company and the Parent**

72.     Deny all of the allegations contained in Paragraph 72 of the Complaint.

73.     Admit the allegations contained in Paragraph 73 of the Complaint, except aver that Robert Hogan is no longer an officer of LVI Parent but remains a board member.

74.     Deny all of the allegations contained in Paragraph 74 of the Complaint, except admit that LVI Parent is a holding company that maintains no payroll.

75.     Deny all of the allegations contained in Paragraph 75 of the Complaint.

76.     Deny all of the allegations contained in Paragraph 76 of the Complaint.

77.     Admit all of the allegations contained in Paragraph 77 of the Complaint.

78.     Deny all of the allegations contained in Paragraph 78 of the Complaint.

79.     Deny all of the allegations contained in Paragraph 79 of the Complaint.

**A Single Employer Relationship Exists Between the Company and Apollo[2]**

80.     Deny all of the allegations contained in Paragraph 80 of the Complaint.

---

[2] Although, as a result of the Court's Order, dated April 4, 2011, Apollo has been dismissed from this action, Defendants nonetheless answer the paragraphs pertaining to Apollo in the Complaint on the basis of their knowledge and information.

81.     Deny all of the allegations contained in Paragraph 81 of the Complaint, except admit that Apollo is a minority shareholder of Parent, the sole owner of LVI, and has two seats on the Board.

82.     Deny all of the allegations contained in Paragraph 82 of the Complaint.

83.     Deny all of the allegations contained in Paragraph 83 of the Complaint.

84.     Deny all of the allegations contained in Paragraph 84 of the Complaint.

85.     Deny all of the allegations contained in Paragraph 85 of the Complaint.

**A Joint Employer Relationship Exists Between the Company and Apollo**

86.     Deny all of the allegations contained in Paragraph 86 of the Complaint.

87.     Deny the allegations contained in Paragraph 87 of the Complaint.

88.     Deny all of the allegations contained in Paragraph 88 of the Complaint.

89.     Deny all of the allegations contained in Paragraph 89 of the Complaint.

90.     Deny all of the allegations contained in Paragraph 90 of the Complaint.

91.     Deny all of the allegations contained in Paragraph 91 of the Complaint.

92.     Deny all of the allegations contained in Paragraph 92 of the Complaint.

93.     Deny all of the allegations contained in Paragraph 93 of the Complaint.

**A Single Employer Relationship Exists Between the Company and CHS[3]**

94.    Deny all of the allegations contained in Paragraph 94 of the Complaint.

95.    Deny all of the allegations contained in Paragraph 95 of the Complaint, except aver that CHS is a minority shareholder of the Parent, the sole owner of LVI, and has two seats on the Board of Directors of Parent.

96.    Deny all of the allegations contained in Paragraph 96 of the Complaint.

97.    Deny all of the allegations contained in Paragraph 97 of the Complaint.

98.    Deny all of the allegations contained in Paragraph 98 of the Complaint.

99.    Deny all of the allegations contained in Paragraph 99 of the Complaint.

**A Joint Employer Relationship Exists Between the Company and CHS**

100.    Deny all of the allegations contained in Paragraph 100 of the Complaint.

101.    Deny all of the allegations contained in Paragraph 101 of the Complaint.

102.    Deny all of the allegations contained in Paragraph 102 of the Complaint.

103.    Deny all of the allegations contained in Paragraph 103 of the Complaint.

104.    Deny all of the allegations contained in Paragraph 104 of the Complaint.

105.    Deny all of the allegations contained in Paragraph 105 of the Complaint.

---

[3] Although, as a result of the Court's Order, dated April 4, 2011, CHS has been dismissed from this action, Defendants nonetheless answer the paragraphs pertaining to CHS in the Complaint on the basis of their knowledge and information.

106.    Deny all of the allegations contained in Paragraph 106 of the Complaint.

**Damages as a Result of Defendants' Age Discrimination, Retaliation and Breach of Contract**

107.    Deny all of the allegations contained in Paragraph 107 of the Complaint.

108.    Deny all of the allegations contained in Paragraph 108 of the Complaint.

109.    Deny all of the allegations contained in Paragraph 109 of the Complaint.

110.    Deny all of the allegations contained in Paragraph 110 of the Complaint.

111.    Deny all of the allegations contained in Paragraph 111 of the Complaint.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Discrimination in Violation of the Age Discrimination in Employment Act)

112.    Responding to Paragraph 112 of the Complaint, repeat and reallege

Defendants' answers to Paragraphs 1 through 111 of the Complaint, as if fully set forth herein.

113.    Deny all of the allegations contained in Paragraph 113 of the Complaint.

114.    Deny all of the allegations contained in Paragraph 114 of the Complaint.

115.    Deny all of the allegations contained in Paragraph 115 of the Complaint.

116.    Deny all of the allegations contained in Paragraph 116 of the Complaint.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Retaliation in Violation of the Age Discrimination in Employment Act)

117.    Responding to Paragraph 117 of the Complaint, repeat and reallege

Defendants' answers to Paragraphs 1 through 116 of the Complaint, as if fully set forth herein.

118.    Deny all of the allegations contained in Paragraph 118 of the Complaint.

119.    Deny all of the allegations contained in Paragraph 119 of the Complaint.

120.    Deny all of the allegations contained in Paragraph 120 of the Complaint.

121.    Deny all of the allegations contained in Paragraph 121 of the Complaint.

122.    Deny all of the allegations contained in Paragraph 122 of the Complaint.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Discrimination in Violation of New York City Human Rights Law)

123.    Responding to Paragraph 123 of the Complaint, repeat and reallege

Defendants' answers to Paragraphs 1 through 122 of the Complaint, as if fully set forth herein.

124.    Deny all of the allegations contained in Paragraph 123 of the Complaint.

125.    Deny all of the allegations contained in Paragraph 124 of the Complaint.

126.    Deny all of the allegations contained in Paragraph 125 of the Complaint.

127.    Deny all of the allegations contained in Paragraph 126 of the Complaint.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Retaliation in Violation of New York City Human Rights Law)

128.    Responding to Paragraph 128 of the Complaint, repeat and reallege Defendants' answers to Paragraphs 1 through 127 of the Complaint.

129.    Deny all of the allegations contained in Paragraph 129 of the Complaint.

130.    Deny all of the allegations contained in Paragraph 130 of the Complaint.

131.    Deny all of the allegations contained in Paragraph 131 of the Complaint.

132.    Deny all of the allegations contained in Paragraph 132 of the Complaint.

133.    Deny all of the allegations contained in Paragraph 133 of the Complaint.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Aiding and Abetting Violations of New York City Human Rights Law)

134.    Responding to Paragraph 134 of the Complaint, repeat and reallege Defendants' answers to Paragraphs 1 through 133 of the Complaint.

135.    Deny all of the allegations contained in Paragraph 135 of the Complaint.

136.    Deny all of the allegations contained in Paragraph 136 of the Complaint.

137.    Deny all of the allegations contained in Paragraph 137 of the Complaint.

138.    Deny all of the allegations contained in Paragraph 138 of the Complaint.

139.    Deny all of the allegations contained in Paragraph 139 of the Complaint.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Breach of Contract)

140.    Responding to Paragraph 140 of the Complaint, repeat and reallege Defendants' answers to Paragraphs 1 through 139 of the Complaint, as if fully set forth herein.

141.    This cause of action was dismissed by the Court pursuant to the Order dated April 4, 2011.

142.    This cause of action was dismissed by the Court pursuant to the Order dated April 4, 2011.

143.    This cause of action was dismissed by the Court pursuant to the Order dated April 4, 2011.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

144.    Responding to Paragraph 144 of the Complaint, repeat and reallege Defendants' answers to Paragraphs 1 through 143 of the Complaint, as if fully set forth herein.

145.    This cause of action was dismissed by the Court pursuant to the Order dated April 4, 2011.

146.    This cause of action was dismissed by the Court pursuant to the Order dated April 4, 2011.

147.    This cause of action was dismissed by the Court pursuant to the Order dated April 4, 2011.

148.    This cause of action was dismissed by the Court pursuant to the Order dated April 4, 2011.

## AS AND FOR A EIGHTH CAUSE OF ACTION
### (Tortious Interference with Employment and/or Contractual Relations)

149.    Responding to Paragraph 149 of the Complaint, repeat and reallege Defendants' answers to Paragraphs 1 through 148 of the Complaint, as if fully set forth herein.

150.    This cause of action was dismissed by the Court pursuant to the Order dated April 4, 2011.

151.    This cause of action was dismissed by the Court pursuant to the Order dated April 4, 2011.

152.    This cause of action was dismissed by the Court pursuant to the Order dated April 4, 2011.

153.    This cause of action was dismissed by the Court pursuant to the Order dated April 4, 2011.

154.    This cause of action was dismissed by the Court pursuant to the Order dated April 4, 2011.

## AFFIRMATIVE DEFENSES

As and for its affirmative defenses, Defendants, by and through their attorneys, Sidley Austin LLP, state as follows:

### FIRST AFFIRMATIVE DEFENSE

All claims raised, all allegations made and all causes of action asserted in the Complaint against Defendants fail to state a cause of action upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint should be dismissed because, at all times relevant hereto, Defendants acted in good faith and did not violate any right that may be secured to Plaintiff under any federal, state or local laws, rules, regulations or guidelines.

### THIRD AFFIRMATIVE DEFENSE

Any and all actions taken by Defendants with regard to Plaintiff were based on legitimate, nondiscriminatory business reasons, unrelated to Plaintiff's age.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims for damages are barred, in whole or in part, because of his failure to mitigate his purported damages.

### FIFTH AFFIRMATIVE DEFENSE

Assuming, _arguendo_, while vigorously denying, that Defendants injured Plaintiff, he has not demonstrated and cannot demonstrate facts sufficient to warrant compensatory, punitive or exemplary damages.

### SIXTH AFFIRMATIVE DEFENSE

Assuming, arguendo, while vigorously denying, that Defendants engaged in any unlawful conduct in relation to Plaintiff's employment, Defendants still would have made the employment decisions it made with respect to Plaintiff for legitimate, non-discriminatory reasons.

### SEVENTH AFFIRMATIVE DEFENSE

The causes of action alleged or alluded to in the Complaint are "frivolous, unreasonable and groundless," within the meaning of Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978), and, accordingly, Defendants should recover all costs and attorneys' fees incurred in defending this action.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's damages are barred, in whole or in part, by the after-acquired evidence doctrine.

### NINTH AFFIRMATIVE DEFENSE

Defendants have insufficient knowledge or information upon which to form a belief as to whether they may have additional, as yet unstated, separate defenses available. Defendants reserve the right to assert additional separate defenses in the event discovery indicates, or Defendants otherwise become aware, that additional defenses would be appropriate.

WHEREFORE, Defendants respectfully request the Court enter a judgment:

(1) dismissing the Complaint in its entirety with prejudice against Plaintiff;

(2) awarding Defendants their costs, expenses and attorneys' fees incurred in defending this action; and

(3) granting such other and further relief as the Court deems just and proper.

Dated: April 18, 2011

SIDLEY AUSTIN LLP

By: _____
Nicholas H. De Baun
(ndebaun@sidley.com)
Joanne Seltzer
(jseltzer@sidley.com)
Michael D. Mann
(mdmann@sidley.com)
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Attorneys for Defendants
LVI Services Inc., LVI Parent Corp.,
Scott E. State, Brian Simmons,
Rajay Bagaria and Gerald J. Girardi

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                            :
BURTON T. FRIED,                                            :
                                                            :     10 Civ. 9308 (JSR) (JCF)
                              Plaintiff,                    :
                                                            :
            - against -                                     :
                                                            :
                                                            :
LVI SERVICES, INC.; LVI PARENT CORP.,                       :
CODE HENNESSY SIMMONS LLC d/b/a/ CHS                        :
PRIVATE EQUITY V LP; APOLLO                                 :
INVESTMENT CORP.; SCOTT E. STATE, in his                    :
official and individual capacities; BRIAN                   :
SIMMONS, in his official and individual capacities;         :
RAJAY BAGARIA, in his official and individual               :
capacities; GERALD J. GIRARDI, in his official              :
and individual capacities,                                  :
                                                            :
                              Defendants.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**


SIDLEY AUSTIN LLP

ATTORNEYS FOR Defendants
          LVI Services, Inc., LVI Parent Corp., Scott E. State,
          Brian Simmons, Rajay Bagaria and Gerald J.
          Girardi.


**787 SEVENTH AVENUE
NEW YORK, NEW YORK  10019
(212) 839-5300**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 2

ARGUMENT ............................................................................................................................ 10

    I.    FRIED'S CLAIM OF AGE DISCRIMINATION UNDER THE ADEA
        SHOULD BE DISMISSED ........................................................................................... 10

        A.    Defendants Have Established a Legitimate Business Reason for
             Reducing Fried's Responsibilities and Offering Him a Consultant
             Contract Instead of Employment ................................................................. 12

        B.    Fried Has Failed to Adduce Any Evidence to Prove that Age Was
             the "But For" Reason for Defendants' Actions ......................................... 13

             1.    Fried's "Evidence" Falls Short ..................................................... 13

    II.    FRIED'S AGE DISCRIMINATION CLAIMS UNDER THE NEW
         YORK CITY HUMAN RIGHTS LAW SHOULD BE DISMISSED ................. 15

             1.    Fried Resides and Works in Connecticut ..................................... 16

             2.    Fried Has Failed to State a Claim Under the NYCHRL in
                 Any Event ......................................................................................... 17

    III.    FRIED'S RETALIATION CLAIMS UNDER BOTH THE ADEA AND
         THE NYCHRL SHOULD BE DISMISSED .......................................................... 19

        A.    The Purported Adverse Employment Decisions Taken Against
             Fried Were Made Before His Discrimination Complaint ........................... 20

        B.    Defendants Had a Legitimate Business Reason for Closing the
             Westport Office and Eliminating Shari Dembin's Position ....................... 22

    IV.    FRIED'S AIDING AND ABETTING CLAIMS AGAINST THE
         INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED ............................... 23

CONCLUSION ....................................................................................................................... 24

## TABLE OF AUTHORITIES

Page(s)

CASES

Ashton v. Pall Corp.,
   32 F. Supp. 2d 82 (E.D.N.Y. 1999) .................................................................... 15

Baguer v Spanish Broadcasting Sys.,
   No. 04 Civ. 8393, 2010 WL 2813632 (S.D.N.Y. July 12, 2010) .................................. 17-18, 19

Boston v. McFadden Pub., Inc.,
   No. 09 Civ. 457, 2010 WL 3785541 (S.D.N.Y. Sept. 29, 2010)........................................ 13, 14

Burke v. City of N.Y.,
   No. 06 Civ. 00581, 2011 WL 31869 (E.D.N.Y. Jan. 5, 2011) .................................. 18

Casper v. Lew Lieberbaum & Co., Inc.,
   No. 97 Civ. 3016, 1998 WL 150993 (S.D.N.Y. Mar. 31, 1998) ............................................ 16

Crawford v. Dep't of Investigation,
   324 Fed. Appx. 139 (2d Cir. 2009).................................................................... 18

Deebs v. Alstom Transp., Inc.,
   346 Fed. Appx. 654 (2d Cir. 2009).................................................................... 21

DeWitt v. Lieberman,
   48 F. Supp. 2d 280 (S.D.N.Y. 1999) ................................................................ 23-24

Dixon v. Int'l Fed. of Accountants,
   No. 10-1924, 2011 U.S. Dist. App. LEXIS 6116 (2d Cir. Mar. 25, 2011)............................ 18

Emanuel v. Oliver,
   85 F. Supp. 2d 321 (S.D.N.Y. 2000) .................................................................. 19

Ferraro v. N.Y.C. Dept. of Educ.,
   No. 09 Civ. 8993, 2010 WL 3912466 (S.D.N.Y. Sept. 14, 2010)...................................... 10, 23

Franchitti v. Bloomberg L.P.,
   03 Civ. 7496, 2005 U.S. Dist. LEXIS 19285 (S.D.N.Y. Aug. 12, 2005)................................ 24

Germano v. Cornell Univ.,
   No. 03 Civ. 9766, 2005 WL 2030355 (S.D.N.Y. Aug. 17, 2005)............................................ 16

Getler v. Cornell Weill Univ. Med. College Dept. of Surgery,
   No. 05 Civ. 8550, 2007 WL 38276 (S.D.N.Y. Jan. 3, 2007) .................................................... 14

Gorzynski v. Jetblue Airways Corp.,
  596 F.3d 93 (2d Cir. 2010) ..................................................................................11, 20

Gross v. FBL Fin. Serv. Inc.,
  129 S. Ct. 2343 (2009)..................................................................................................11

Holowecki v. Federal Express Corp.,
  No. 09-3477, 2010 WL 2573864 (2d Cir. June 24, 2010)..................................11, 23

Kaplan v. Beth Israel Med. Ctr.,
  No. 07 Civ 8842, 2010 WL 1253967 (S.D.N.Y. Mar. 31, 2010) ......................12, 19

Kemp v. Metro-North R.R.,
  No. 04 Civ. 9926, 2007 U.S. Dist. LEXIS 43568 (S.D.N.Y. June 12, 2007)..........20

Lightfoot v. Union Carbide Corp.,
  No. 92 Civ. 6411, 1994 WL 184670 (S.D.N.Y. May 12, 1994) ..............................17

Mattera v. JP Morgan Chase Corp.,
  No. 08 Civ. 04040, 2010 WL 3785576 (S.D.N.Y. Sept. 30, 2010)....................20, 21

McDermott v. N.Y.C. Housing Dev. Corp.,
  No. 10 Civ. 2029, 2011 WL 167836 (S.D.N.Y. Jan. 18, 2011) ..............................17

Mereish v. Walker,
  359 F.3d 330 (4th Cir. 2004) ....................................................................................14

O'Leary v. N.Y.S. Unified Court Sys.,
  No. 05 Civ. 6722, 2007 WL 2244483 (S.D.N.Y. Aug. 6, 2007)..............................10

Raskin v. The Wyatt Co.,
  125 F.3d 55 (2d Cir. 1997) ........................................................................................14

Roman v. Cornell Univ.,
  53 F. Supp. 2d 223 (N.D.N.Y. 1999).........................................................................15

Saenger v. Montefiore Med. Ctr.,
  706 F. Supp. 2d 494 (S.D.N.Y. 2010) ..........................................................12, 17, 19

Salvatore v. KLM Dutch Airlines,
  No. 98 Civ. 2450, 1999 WL 796172 (S.D.N.Y. Sept. 30, 1999).............................16

Sellick v. Agency-Castle Point,
  No. 09 Civ. 6616, 2010 WL 2813431 (S.D.N.Y. July 16, 2010) .............................12

Siano v. Haber,
  40 F. Supp. 2d 516 (S.D.N.Y. 1999) .........................................................................19

Slattery v. Swiss Reinsurance Am. Corp.,
    248 F.3d 87 (2d Cir. 2001) ................................................................................21

Spahr v. Am. Dental Ctrs.,
    No. 03 Civ. 4954, 2006 U.S. Dist. LEXIS 14581 (E.D.N.Y. Mar. 14, 2006) .........14

Vesprini v. Shaw Contract Flooring Servs., Inc.,
    315 F.3d 37 (1st Cir. 2002) ...............................................................................13

Vinokur v. Sovereign Bank,
    701 F. Supp. 2d 276 (E.D.N.Y. 2010) ................................................................18

Weiss v. JPMorgan Chase & Co.,
    No. 06 Civ. 4402, 2010 WL 114248 (S.D.N.Y. Jan. 13, 2010) ...............................17

Williams v. City of N.Y.,
    No. 04 Civ. 1993, 2005 U.S. Dist. LEXIS 6083 (S.D.N.Y. Apr. 12, 2005).............20

**STATUTES**

New York Admin. Code §§ 8-101 *et seq.* ("NYCHRL") ...............................................15

N.Y.C. Admin. Code § 2-201 .................................................................................16

N.Y.C. Local Law No. 85 (Oct. 3, 2005) ..................................................................17

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) .....................................................................................1, 10

Defendants LVI Services, Inc. ("LVI"), LVI Parent Corp. ("Parent"), Scott E. State, Brian Simmons, Rajay Bagaria and Gerald J. Girardi (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking dismissal of the Amended Complaint (the "Compl.").

## PRELIMINARY STATEMENT

This action arises from Fried's refusal to honor his own offer to make way for the new CEO of Defendant LVI. In September 2010, Fried, the Chairman and interim CEO of LVI, persuaded defendant Scott State to take the permanent CEO position by making him an "offer he could not refuse": Fried would "remain at LVI until [State], the Board or I decide its time for me to leave . . . . [State] will be in charge and get all the room he wants from me." Less than a month after becoming CEO, State took Fried up on his offer, and asked him to consider limiting his activities on behalf of LVI to those customarily exercised by a Chairman. In response, Fried cried discrimination, and embarked on a campaign against LVI and its Board that continues to this day.

As we explain below, Fried has failed to adduce a shred of evidence that the Board's decision to offer him the opportunity to continue as Chairman of the Board and to transition to a consulting arrangement in lieu of employment by LVI was motivated by any discriminatory animus. Instead, the undisputed evidence shows that Fried had, and has, the abilities to perform a valuable role with LVI, as evidenced by the fact that the very same Board that voted to reduce his role within LVI had only months earlier tapped him to fill the interim CEO role while a permanent candidate was sought. It was not his age but, rather, his refusal to relinquish control of the reins of management to State that prompted his dismissal. As Fried testified at his deposition: "[T]he CEO role, by its title . . . should have the day-to-day and final decisions in the

1

operations of the business. And the chairman should be a person who supports the actions of the CEO and in any way that the CEO seeks that advice and counsel." (Pl. Tr., pp. 80-81.)[1]  Fried failed to follow his own advice and posed an ultimatum to the Board and to State that he, not they, would determine his role going forward with LVI, creating the rift that led to his termination.

## STATEMENT OF FACTS

LVI is an environmental remediation company specializing in, among other things, asbestos abatement, demolition, emergency/disaster response such as the response to Hurricane Katrina, and biological and chemical decontamination. (Compl., ¶ 16.)[2]  Burton Fried began his employment with LVI in 1986, and subsequently held various positions including General Counsel, President and CEO, interim President and CEO and Chairman. (Compl., ¶ 26.) Although LVI's corporate office is in New York City, for the last seven years prior to his departure from LVI, Fried worked out of a satellite office in Westport, Connecticut that LVI leased exclusively for his personal convenience. ( Compl., ¶ 27; Pl. Tr., pp. 64-66.)

**The Sale of LVI to CHS**

In or about November 2005, LVI was purchased by Code Hennessy Simmons LLC ("CHS"). As a condition of the sale and at Fried's insistence, LVI agreed that Fried would be replaced as LVI's President and CEO, and Fried expressed to the Board his wish to relinquish all day-to-day operational responsibilities to the new CEO. (Compl., ¶ 30; Pl. Tr., pp. 74-75, 81; Seltzer Aff., Exh. C.)  This new arrangement was documented in an agreement between Fried and LVI dated November 16, 2005 (the "November Agreement"). Pursuant to the November

---

[1] Copies of the pages from the transcript of Burton Fried's deposition are attached to the Affirmation of Joanne Seltzer ("Seltzer Aff.") as Exhibit B.
[2] A copy of the Amended Complaint, filed on February 3, 2011, (the "Compl.") is attached to the Affirmation of Joanne Seltzer ("Seltzer Aff.") as Exhibit A.

Agreement, Fried was charged with hiring his replacement as President and CEO. Thereafter, in his new role as Chairman, Fried would have primary responsibility for "strategic growth," at the direction of the new CEO. (Seltzer Aff., Exh. D; Pl. Tr., pp. 79-81.) Significantly, Fried's employment under the November Agreement was at-will, and LVI retained at all times the discretion to alter Fried's duties and responsibilities and to terminate Fried's employment without notice or reason. (Seltzer Aff., Exh. D; Pl. Tr., pp. 83-84.)

Due in large part to Fried's efforts, in June 2006 LVI hired Robert McNamara as its new President and CEO. (Compl., ¶ 32.) As contemplated by the November Agreement, Fried thereupon resigned from his position as President and CEO and assumed the position of Chairman. (Compl., ¶¶ 31-32; Pl. Tr., p. 77.)

**Scott State's Hire as President and CEO of LVI**

In or about April 2010, McNamara abruptly resigned as President and CEO. As a result, the Board of Directors asked Fried, who by then was 70 years old, to accept the position of interim President and CEO until a replacement for McNamara could be found. (Compl., ¶ 37; Pl. Tr., pp. 110-12.) As in 2005, Fried insisted on a prompt search for a new President and CEO to assume the day-to-day management of the business. (Compl., ¶ 38; Pl. Tr., p. 113.) LVI retained an executive search firm, Russell Reynolds, to work with Fried to identify qualified candidates for the position. (Compl., ¶ 39.) Fried, who had known individual defendant Scott State for a number of years, identified State as a candidate for the position and introduced him to LVI and the Board. (Compl., ¶ 30; Pl. Tr., pp. 116-17.) State was one of three finalists for the job and ultimately became the choice of Fried and LVI's management. (Compl., ¶ 42; Pl Tr., p. 121-22.) The Board was equally impressed by State and, upon Fried's recommendation, offered him the position of President and CEO. (Compl., ¶ 42; Pl. Tr., pp. 121-22.)

3

The offer to State was made on September 8, 2010 and negotiations thereafter ensued. As part of these negotiations, and as a condition for accepting the CEO position, State insisted that he be guaranteed the discretion to run the business as he saw fit. In an email to Fried dated September 21, 2010, Board member Brian Simmons asked Fried to have a conversation with State to assure him that he would have authority as CEO to align his team and manage the business without Fried's interference. (Seltzer Aff., Exh. E.) Simmons added: " I think it will be very important for him to hear unambiguously from you that he is in charge and you will give him the room he needs." Id. Fried responded to Simmons: "I will repeat my offer to Scott. I am prepared to remain at LVI until he, the Board or I decide its time for me to leave…an offer he can't refuse . . . . He will be in charge and get all the room he wants from me." Id. On September 22, Fried again emailed Simmons to tell him that he had spoken with State and that State "now ha[d] no concern about [his] support in his role as CEO." (Seltzer Aff., Exh. F.)[3] With assurances from both the Board and Fried that he could manage the business without interference from Fried, State accepted the offer of employment on September 23, 2010 and assumed the CEO role seven days later on October 1, 2010. (Seltzer Aff., Exh. H; Compl., ¶ 43.)

**Scott State's Transition to CEO of LVI**

State hit the ground running at LVI -- meeting and soliciting advice from key LVI management, visiting LVI's many offices, and making the types of decisions he believed necessary to help turnaround what, at that time, was a struggling business. (Seltzer Aff., Exh. AA.) During this transition period, State began to notice some reluctance on Fried's part to relinquish his interim CEO responsibilities, as he had previously assured State he would do. In addition, State had concerns about Fried's insistence that State confer with him prior to making

---

[3] Fried also expressed his willingness to remain at LVI until State, the Board or he decided it was time to leave with a number of his managers, prior to State's start of his employment with LVI. (Seltzer Aff., Exh. G.)

certain decisions. (State Tr., pp. 213-14.)[4] State's concerns were heightened after Fried sent

State a number of emails criticizing him for failing to consult with Fried on various issues such

as the suspension of the search for a Chief Information Officer and a meeting with an overseas

client. (Seltzer Aff., Exhs. J, K.) Out of frustration, on October 3, 2010, State forwarded one of

Fried's acerbic emails to LVI Board member, Robert Hogan, stating that he feared a similar

reaction every time he made a decision without consulting Fried – "exactly the issue [he] had

prior to accepting the job." (Seltzer Aff., Exh. L.) On October 5, State promised Hogan he

would "lay the ground work for an orderly transition" with Fried and that he intended "to have

him available as needed for consultation or special assignments." (Seltzer Aff., Exh. M.)

On or about October 5, 2010, State and Fried agreed to meet on October 19, 2010 to

discuss transition issues, including Fried's future duties as Chairman. (Seltzer Aff., Exh. N.) On

October 14, 2010, Fried sent State an unsolicited email listing responsibilities he purportedly had

handled as Chairman under McNamara. (Seltzer Aff., Exh. O.) To State's surprise, the

expansive list included day-to-day operational responsibilities that State envisioned would be

performed by him, such as the development and implementation of new business initiatives, the

negotiations of company acquisitions and the management of major client relations. (Id.) The

list also included responsibilities that State believed could be performed by LVI's General

Counsel, Gregory DiCarlo (such as selection of outside counsel and management of LVI

litigations and legal matters) and by other members of LVI management and staff (such as

review of LVI offers of employment and monitoring of employee air travel). (Id.; State Tr., pp.

215-18.) State shared the list of responsibilities with members of LVI's Board and sought input

_____

[4] Copies of the pages of the deposition of Scott State cited in this brief are attached to the Seltzer
Aff. as Exh. I.

on how best to handle Fried's expectations regarding his role, which State considered an issue for the Board to determine. (Seltzer Aff., Exh. P.)

**October 19, 2010 Meeting**

On October 19, 2010, State met with Fried to discuss, among other transition items, his proposed responsibilities as LVI Chairman. (Compl., ¶ 44; Pl. Tr., pp. 163-64.) At the meeting, State explained that he believed most of the duties on Fried's list would be more appropriately handled by either him or other LVI management and staff members. (Compl., ¶ 45; Pl. Tr., pp. 180-82; State Tr., p. 263.) State explained that the duties and responsibilities of LVI's Chairman should be those traditionally delegated to the role. (State Tr., pp. 263-64.) Notwithstanding his prior assurances to State that State "will be in charge and get all the room he wants from me", Fried opposed the restructuring of his role. (Seltzer Aff., Exh. Q.) State reminded Fried of his prior assurances, and as a reminder that transition planning was important, asked Fried: "Burt, you're 71 years old. How long do you expect to continue working? What if you get hit by a bus?"[5] (Pl. Tr., pp. 181-82; State Tr., pp. 264-65.) Despite State's overtures, and despite his own prior assurances, Fried refused to discuss any transition of his role.

After the meeting, State, concerned with Fried's refusal to relinquish any of his day-to-day responsibilities at LVI, asked Simmons and other Board members to intervene. (Seltzer Aff., Exh. Q.) On October 28, 2010, at Simmons's request, Fried sent him the list of responsibilities prepared for Fried's meeting with State to distribute to the Board of Directors. (Seltzer Aff., Exh. R.)

---

[5] State testified that this comment echoed a similar statement Fried made to him in a telephone conversation prior to the meeting. (State Tr., pp. 261-62.) It is worth noting that age has never been a sensitive subject for Fried until now. Over the years on countless occasions he has made light of his age and the prospect of retirement. (Seltzer Aff., Exhs. T, U.) His attributing discriminatory motives to a similarly off-hand comment by State is not credible.

On November 2, 2010, Simmons, on behalf of the Board, responded to Fried's list of responsibilities, telling Fried that the list was "much more expansive that what he had envisioned" and "[not] consistent with the sentiments [Fried] had expressed to [him]" when State was hired. (Compl., ¶ 49; Seltzer Aff., Exh. S.)  Simmons expressed his opinion of the need to transition all of Fried's day-to-day activities to State and other members of the management team. (Seltzer Aff., Exh. S.)  Simmons wrote: "It is my hope that you continue as Chairman of the board in a non-executive capacity and act as on call resource for Scott." Id.  He further proposed that he "replace [Fried's] existing employment arrangement with a consulting agreement." Id.

**The November 4th Board Meeting**

On November 4, 2010, LVI Parent held a regular board meeting to discuss a number of pending business matters. (Pl. Tr., p. 229.)  At the conclusion of the meeting, the Board went into a closed session and LVI management – except State – left the meeting. (Compl., ¶ 51; Pl. Tr., pp. 231-32.)  Thereafter, in a 30 minute speech, Fried heatedly objected to any restructuring of his role and complained of State's alleged comment at their October 19 meeting. (Pl. Tr., pp. 29-33.)  Fried and State were then asked to leave the meeting and the Board discussed how best to resolve the issue, concluding that John Schnabel, a member of the Board and longtime ally of Fried, would contact Fried to resolve what the Board viewed as a political skirmish. (Pl. Tr., p. 252; Seltzer Aff., Exh. V; Simmons Tr., pp. 107-09.) [6] Unfortunately, Schnabel was unable to broker an agreement with Fried, leaving the Board no choice but to proceed with the plan outlined in Simmons's November 2nd email. (Simmons Tr., pp. 122-25.)

---

[6] Copies of the pages of the deposition transcript of Brian Simmons ("Simmons Tr.") are attached to the Seltzer Aff. as Exhibit W.

Pursuant to that plan, the Board proposed that Fried would transition from his role as an employee of LVI to the dual role of non-executive Chairman of the Board and of consultant. (Seltzer Aff., Exh. X, pp. 3-6.) Under the proposal, Fried's employment as Chairman would end, and he would be formally offered a consulting agreement pursuant to which he would be paid an annual retainer of $150,000, plus $250 per hour for time spent in his consulting role.  This amount was intended to compensate Fried at the same level as he was previously compensated as an LVI employee. (Simmons Tr., pp. 149-50.)  Fried's initial assignment would include overseeing several litigation matters.  (Seltzer Aff., Exh. X, p. 2.)

On November 15, 2010, however, before the Board could make its formal offer of a consulting agreement to Fried, Fried sent a letter through his attorney to State threatening to sue LVI and demanding, among other things, that he be reinstated with his former responsibilities. (Seltzer Aff., Exh. Y.)  State, who was traveling at the time, did not receive the letter until November 16, 2010.  On November 16, 2010, the Board sent the consultancy agreement to Fried. (State Tr., pp. 371-74.)  Fried rejected LVI's offer and resigned his position on the Board effective November 30, 2010.  (Seltzer Aff., Exh. Z.)  LVI, as planned, terminated Fried's employment with LVI on November 30, 2010, but continued to offer Fried the consultancy arrangement through counsel.  (Seltzer Aff., ¶ 3.)  Fried rejected LVI's offer.  (Seltzer Aff., ¶ 4.)

**LVI Closes the Westport Office**

As noted above, at all relevant times, LVI operated an office in Westport, Connecticut that it had established solely for Fried's personal convenience.  (Compl., ¶ 65; Pl. Tr., pp. 64-66.) Following Fried's resignation, eight employees continued to work in the Westport office

8

including Shari Dembin, Fried's daughter. (DiCarlo Tr., pp. 79-80, 88.)[7] Dembin's

responsibilities included processing insurance and bond requests. (Compl., ¶ 66.)

    The proposal to close, or at least to minimize, the Westport office and reduce staff had

been raised by Scott State at least by October 29, 2010, prior to Fried's outburst at the November

4th Board meeting. (Seltzer Aff., Exh. AA.) Closing the Westport office ultimately became one

of many cost reducing measures LVI put in place in January 2011, including, among other

things, the decisions to eliminate LVI's marketing support function and to move LVI's New

York corporate offices to more affordable space. (Seltzer Aff., Exhs. AA, BB.)  At the time LVI

offered Fried the consulting agreement, it informed him that the Westport office was going to be

closed, and Fried was offered an alternate office from which to perform his duties as Chairman

of the LVI Parent Board. (Seltzer Aff., Exh. X.)  With Fried's rejection of the consultancy and

his resignation as a member of the Board, there was no further reason to continue to incur the

unnecessary expense of a Westport office. (Cutrone Tr., pp. 171-72.)[8]

    Accordingly, LVI determined that it would close the office and lay off five of the eight

employees working there. (DiCarlo Tr., pp. 79-80, 89-91; State Tr., p. 402.)  The three

employees who were not terminated were employees of LVI's Legal Department who were to be

transferred to another LVI office once the closure of the Westport office was completed.

(DiCarlo Tr., pp. 89-90; State Tr., p. 404.)  The reduction in force also affected individuals

outside of the Westport offices, including four Business Development Managers, a Project

Manager in Milford, Connecticut, a Branch Manager in Houston, Texas and a Claims Manager

in New York City. (State Tr., pp. 402-04; Seltzer Aff., Exh. CC.)  Dembin was one of twelve

---

[7] Copies of the pages of the deposition transcript of Gregory DiCarlo ("DiCarlo Tr.") are
attached to the Seltzer Aff. as Exhibit FF.
[8] Copies of the pages of the deposition transcript of Paul Cutrone ("Cutrone Tr.") are attached to
the Seltzer Aff. as Exhibit GG.

9

employees selected for the reduction in force for the simple reason that she performed non-critical administrative functions that could be easily absorbed by other employees at other locations with the least amount of disruption to LVI's operations. (Cutrone Tr., pp. 164-67.) Her position has not been replaced.  (Id.)

<u>**ARGUMENT**</u>

Summary judgment is proper when the moving party shows "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  The party opposing summary judgment may not rest upon "the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>O'Leary v. N.Y.S. Unified Court Sys.</u>, No. 05 Civ. 6722, 2007 WL 2244483, at *3 (S.D.N.Y. Aug. 6, 2007) (citing Fed. R. Civ. P. 56(c)).  In a discrimination case, summary judgment is appropriate where "the plaintiff relies on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct." <u>Id.</u> (citing <u>Figueroa v. New York City Health & Hosps. Corp.</u>, 500 F. Supp. 2d 224, 228 (S.D.N.Y. 2007)); <u>Ferraro v. N.Y.C. Dept. of Educ.</u>, No. 09 Civ. 8993, 2010 WL 3912466, at *2 (S.D.N.Y. Sept. 14, 2010) (Rakoff J.) (granting summary judgment in age discrimination case where the plaintiff set forth only conclusory assertions to defeat the defendant's motion).

I.    <u>**FRIED'S CLAIM OF AGE DISCRIMINATION UNDER THE ADEA SHOULD BE DISMISSED**</u>

Fried alleges that he was stripped of his job responsibilities and then terminated because of his age.  (Compl., ¶¶ 6-9.)  At his deposition, when asked what led him to believe these decisions were fuelled by discriminatory animus, Fried testified that his belief was based on State's purported statement at the October 19, 2010 meeting regarding transition planning: "You're 71 years old. How long do you want to work? What if you get hit by a bus?" (Pl. Tr., pp.16-18) and on the fact that Defendants supported State's plan to re-allocate his job

10

responsibilities and terminate his employment with LVI. (Pl. Tr., pp. 25-29.)  Even taking

Fried's allegations as true, this "evidence" is woefully insufficient to defeat Defendants' motion

for summary judgment under either the ADEA or the NYCHRL.

In Gross v. FBL Fin. Serv. Inc., 129 S. Ct. 2343 (2009), the Supreme Court held that "the

ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of'

age is that age was the 'reason' that the employer decided to act." Id. at 2350.  Thus, "[t]o

establish a disparate-treatment claim under the plain language of the ADEA, . . . a plaintiff must

prove that age was the 'but for' cause of the of the employer's adverse action."  Id.  Although the

Supreme Court noted that it "had not definitively decided whether the evidentiary framework of

[McDonnell Douglas] . . . is appropriate in the ADEA context", id. at 2349 n.2, New York courts

have continued to apply a modified version of the burden-shifting framework set forth in

McDonnell Douglas to cases brought under the ADEA.  Gorzynski v. JetBlue Airways Corp.,

596 F.3d 93, 106 (2d Cir. 2010).  Specifically, a plaintiff bringing a case under the ADEA must

first establish a *prima facie* claim of discrimination by showing that: (1) he was within the

protected age group; (2) he was qualified for the position; (3) he experienced an adverse action;

and (4) the adverse action occurred under circumstances giving rise to an inference of

employment discrimination.  Id. at 107.  If the plaintiff establishes a *prima facie*  case, the

burden shifts to the defendant to "articulate some legitimate nondiscriminatory reason for [the

adverse act]."  Id. at 106.  After the defendant satisfies the requirement, the burden then shifts to

the plaintiff to demonstrate that age was the "but for" cause of the challenged adverse

employment action.  Id. at 106; Holowecki v. Federal Express Corp., No. 09-3477, 2010 WL

2573864, at *1 (2d Cir. June 24, 2010).

Under these standards, Fried cannot possibly defeat summary judgment.  Even assuming, *arguendo*, Fried's ability to establish a *prima facie* claim, Defendants have articulated a legitimate business reason for the reduction of his job responsibilities and his termination, which Fried cannot rebut with the meager evidence he has adduced in this case.

### A.    Defendants Have Established a Legitimate Business Reason for Reducing Fried's Responsibilities and Offering Him a Consultant Contract Instead of Employment

Fried maintains that Defendants reduced his responsibilities and ultimately terminated his employment because of his age.  (Compl., ¶¶ 16-18.)  The evidence and testimony in this case, however, point to undisputed business reasons for the Board's rejection of Fried's proposed duties as Chairman under State and its offer to him of a role that he had repeatedly confirmed he would accept.

Fried's objections to the decisions taken by Defendants with respect to his future role with LVI are patently insufficient to defeat summary judgment.  "[T]he ADEA does not make employers liable for doing stupid or even wicked things; it makes them liable for discriminating, for firing people on account of their age."  Saenger, 706 F. Supp. 2d 494, 509 (S.D.N.Y. 2010) (quoting Norton v. Sam's Club, 145 F.3d 114, 120 (2d Cir. 1998).  "It is not the role of federal courts to review the correctness of employment decisions or the processes by which those decisions are made."  Sellick v. Agency-Castle Point, No. 09 Civ. 6616, 2010 WL 2813431, at *10 (S.D.N.Y. July 16, 2010).  See also, Kaplan v. Beth Israel Med. Ctr., No. 07 Civ. 8842, 2010 WL 1253967, at *6 (S.D.N.Y. Mar. 31, 2010).  Defendants' legitimate business reason for defining Fried's role as Chairman – to ensure that the new CEO and President, State, would have the freedom to manage the Company as he saw fit – is set forth in numerous documents and in unchallenged deposition testimony.  See, e.g., Seltzer Aff., Exhs. P, Q, S, E, F & G; State Tr., pp. 217-18, 263-64; Simmons Tr., pp. 89-92.

12

**B.**    **Fried Has Failed to Adduce Any Evidence to Prove that Age Was the "But For" Reason for Defendants' Actions**

Once the Defendants have articulated a legitimate non-discriminatory reason for reducing his job responsibilities and terminating his employment, the burden of proof shifts to Fried to set forth sufficient evidence to prove that age was the "but for" reason for Defendants' actions. Fried's evidence falls far short of the mark.

**1.**    **Fried's "Evidence" Falls Short**

The evidence Fried proffers in support of his claim of age discrimination consists of a single statement purportedly made by State: "Burt, you're 71 years old. How long do you expect to work?" (Pl. Tr., pp. 17-18) and the fact that the LVI Board members supported State's decision to limit Fried's day-to-day operational responsibilities in accordance with an assurance Fried himself had made to State in writing. (Pl. Tr., pp. 16-18, 21-25.) Other than this single statement, Fried admits to having absolutely no other evidence that the decisions taken by LVI and the Board were based on age. (Pl. Tr., pp. 42-52, 54-58.)

State's comment at the October 19, 2010 meeting, when placed in proper context, is nothing more than a request for clarification of how long Fried intended to retain his operational responsibilities at LVI. Courts have consistently held that remarks relating to retirement or transition planning alone, even when made by a decision maker, are insufficient to defeat a motion for summary judgment in an ADEA case. See Boston v. McFadden Pub., Inc., No. 09 Civ. 457, 2010 WL 3785541, at *11 (S.D.N.Y. Sept. 29, 2010) ("even if plaintiff was asked about his retirement plans, inquiries about retirement plans do [ ] not necessarily show animosity toward age"); Vesprini v. Shaw Contract Flooring Servs., Inc., 315 F.3d 37, 42 (1st Cir. 2002) (comment that the time had come for the plaintiff to "step back and let the young stallions run the [day-to-day] business" not sufficient to constitute direct evidence of age-based animus);

13

Mereish v. Walker, 359 F.3d 330, 337 (4th Cir. 2004) ("ambiguous remarks referring to the

process of generational change create no triable issue of age discrimination") (citing cases);

Getler v. Cornell Weill Univ. Med. College Dept. of Surgery, No. 05 Civ. 8550, 2007 WL

38276, at *11 (S.D.N.Y. Jan. 3, 2007) ("inquiries about retirement plans do not necessarily show

animosity toward age"). This is particularly so where the plaintiff was the first to raise the topic

of retirement. See Boston, 2010 WL 3785541, at *11; Spahr v. Am. Dental Ctrs., No. 03 Civ.

4954, 2006 U.S. Dist. LEXIS 14581, at *12 (E.D.N.Y. Mar. 14, 2006).

  In Raskin v. The Wyatt Co., 125 F.3d 55 (2d Cir. 1997), the Second Circuit affirmed the

grant of summary judgment to the employer in an age discrimination claim. The plaintiff,

Richard Raskin, alleged that his employer had discriminated against him by failing to promote

him and by constructively discharging him. See id. at 58. The primary evidence in support of

this claim proffered by Raskin was a statement by his supervisor that Raskin might not be

interested in a manager position because of his age and a reference to his eligibility for early

retirement. Id. at 63. Even under the higher pre-Gross standard, the Second Circuit found that

Raskin's supervisor had a legitimate reason to confirm Raskin's interest in a career change in

light of his having an option of taking early retirement and that the inquiry, arising in a

conversation about Mr. Raskin's application for a manager position, failed to support an

inference that age played a role in the defendant's decision not to offer Raskin the position. Id.

The Court concluded: "The ADEA does not make all discussions of age taboo." Id.

  In light of Fried's numerous representations to State and to the Board of Directors that he

fully intended to relinquish his responsibilities for running LVI, it is logical that State, upon

receipt of Fried's expansive list of operational responsibilities, would question Fried as to when

he intended to assume his new role. The question was not ageist; it was a legitimate inquiry into

Fried's future plans, and, as such, does not constitute evidence of discrimination under firmly established law.

Fried's other "evidence" of discrimination consists solely of the Board's agreement with State's plans to distribute operational responsibilities to other LVI managers and to himself and to clearly define for Fried the role he would assume going forward. This strategic decision, which the Board had approved of during the October 2010 restructuring, was based on the Board's judgment as to what would be in the best interest of LVI and, had previously been agreed to by Fried. This decision, standing alone, cannot constitute a discriminatory action under the ADEA. See Ashton v. Pall Corp., 32 F. Supp. 2d 82, 90 (E.D.N.Y. 1999) (diminished responsibilities did not create an inference of discrimination where employer had different expectations of how the work should be performed). See also Roman v. Cornell Univ., 53 F. Supp. 2d 223, 239 (N.D.N.Y. 1999) (removal of certain duties not automatically discriminatory because it is the employer's "prerogative…to determine what tasks [the employee] will and will not perform").

## II.  FRIED'S AGE DISCRIMINATION CLAIMS UNDER THE NEW YORK CITY HUMAN RIGHTS LAW SHOULD BE DISMISSED

In addition to his claim under the ADEA, Fried brings an age discrimination claim under the New York Administrative Code §§ 8-101 *et seq.*("NYCHRL"). Fried's claim under the NYCHRL fails for two reasons: (1) the purportedly discriminatory actions taken by Defendants impacted Fried in his Westport, Connecticut office and therefore are outside the scope of the NYCHRL; and (2) Fried cannot set forth any evidence even suggesting that the Board's decision was a pretext for age discrimination against him.

### 1.    Fried Resides and Works in Connecticut

In his Complaint, Fried unambiguously states that, during the past seven years of his employment with LVI, he has "worked from the Company's corporate Connecticut satellite office in Westport." (Compl., ¶ 27.) Fried also states in his Complaint that he is a resident of the State of Connecticut. (Compl., ¶ 15.)[9]

The NYCHRL expressly limits the applicability of its protections to acts that occur within the boundaries of New York City. See N.Y.C. Admin. Code § 2-201. See also Casper v. Lew Lieberbaum & Co., Inc., No. 97 Civ. 3016, 1998 WL 150993, at *4 (S.D.N.Y. Mar. 31, 1998). To determine the location of the discrimination, courts have looked to the location of the impact of the adverse action on the plaintiff. Salvatore v. KLM Dutch Airlines, No. 98 Civ. 2450, 1999 WL 796172, at *16 (S.D.N.Y. Sept. 30, 1999); Casper, 1998 WL 150993, at *4. In order to state a claim under the NYCHRL, Fried must show more than that LVI's headquarters are located in New York City or that the decision to offer him a consultancy in place of his employment was made in New York City. Instead, he must prove that the decision impacted *him* in New York City, which he cannot do in light of his admission that he lived and worked in Connecticut at all relevant times. See Casper, 1998 WL 150993, at *4 (finding the NYCHRL inapplicable to an employee who worked in Garden City, Long Island, even though the defendant had an office in New York City); Germano v. Cornell Univ., No. 03 Civ. 9766, 2005 WL 2030355, at *5 (S.D.N.Y. Aug. 17, 2005) (dismissing the plaintiff's NYCHRL claim even when the decision to pressure him to retire was made in New York City because the decision impacted him in his place of employment on Long Island).

---

[9] Tellingly, on May 16, 2011, Plaintiff filed a charge of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CCHR"), implicitly conceding that the NYCHRL does not govern his claim. (Seltzer Aff., Exh. DD.)

Lightfoot v. Union Carbide Corp., No. 92 Civ. 6411, 1994 WL 184670 (S.D.N.Y. May

12, 1994), is precisely on point. In Lightfoot, the plaintiff, Richard Lightfoot, like Fried here,

transferred from the defendant's New York City office to its Danbury, Connecticut headquarters.

Id. at *1. Unlike Fried, Mr. Lightfoot continued to reside in New York City after relocating his

office to Connecticut. Id. Mr. Lightfoot brought an age discrimination claim under the

NYCHRL contending that, because the defendant had an office in New York City and he

occasionally did work from his residence in the City, he should be afforded the protections of the

NYCHRL. Id. at *5. The Court concluded that the scope of the NYCHRL did not extend to

Connecticut, the place where the plaintiff suffered the impact of the purportedly discriminatory

decisions. Id. Fried, like Mr. Lightfoot, admittedly worked predominantly out of the LVI

Westport, Connecticut office where he was impacted by the decisions made by Defendants

relating to his employment, and, as such, he is outside of the protections of the NYCHRL.

Accordingly, his claim under that law should be dismissed.

### 2. Fried Has Failed to State a Claim Under the NYCHRL in Any Event

Even if Fried were somehow protected by the NYCHRL, he still cannot state a claim.

Because Gross dealt only with the ADEA, it is an open question whether a plaintiff alleging age

discrimination under the NYCHRL must establish "but for" causation. Saenger, 706 F. Supp. 2d

at 505. In the absence of authoritative law from New York State's highest court, federal courts

have examined claims under the NYCHRL under the more independent and liberal standard

accorded the NYCHRL by the Restoration Act of 2005, N.Y.C. Local Law No. 85 (Oct. 3,

2005). McDermott v. N.Y.C. Housing Dev. Corp., No. 10 Civ. 2029, 2011 WL 167836, at *6

(S.D.N.Y. Jan. 18, 2011); Weiss v. JPMorgan Chase & Co., No. 06 Civ. 4402, 2010 WL 114248,

at *2-3 (S.D.N.Y. Jan. 13, 2010). Nothing in the 2005 revisions to the NYCHRL, however,

changed the standard for establishing a disputed issue of material fact. Baguer v Spanish

17

Broadcasting Sys., No. 04 Civ. 8393, 2010 WL 2813632, at *16 (S.D.N.Y. July 12, 2010); Burke

v. City of N.Y., No. 06 Civ. 00581, 2011 WL 31869, at *5 (E.D.N.Y. Jan. 5, 2011).  The absence

of any such disputed fact here is fatal to Fried's claim.

        Under the NYCHRL analysis, which retains the McDonnell-Douglas burden-shifting

standard, once the defendant meets its burden of articulating a legitimate business reason for the

challenged decision, the presumption of discrimination "drops out of the picture" and the burden

shifts back to the plaintiff to present sufficient evidence to permit a rational finder of fact to infer

that the defendant's proffered reason is a pretext and that the defendant's employment decision is

more likely than not based in whole or in part on discrimination.  Id. (citations omitted); Vinokur

v. Sovereign Bank, 701 F. Supp. 2d 276, 287 (E.D.N.Y. 2010).  Even under this more liberal

standard, Fried's allegation of a single statement by State referring to his age and asking how

much longer he intended to work is insufficient as a matter of law to prove that the Board's

decision to reallocate Fried's duties and terminate his employment was based, even in part, on

age discrimination.  As more fully set forth in Section I (B) (1), above, a single inquiry about an

intent to retire, without more, is insufficient to raise an inference of discrimination.  This is so

even under the more liberal standards of the NYCHRL.  See Dixon v. Int'l Fed. of Accountants,

No. 10-1924, 2011 U.S. Dist. App. LEXIS 6116, at *4 (2d Cir. Mar. 25, 2011) (upholding grant

of summary judgment under NYCHRL where a plaintiff's "entire discrimination claim [was]

predicated on an isolated derogatory remark"); Crawford v. Dep't of Investigation, 324 Fed.

Appx. 139, 142 (2d Cir. 2009) (dismissing age discrimination claim under the NYCHRL where

the sole evidence was statements that the plaintiff was "too old" for Peace Officer training).

        The undisputed facts in this case, in fact, affirmatively negate any inference that

discrimination occurred.  Initially, in 2010, when Fried was 70 years, the Board asked him to

assume responsibility for running LVI until a new CEO and President could be recruited.  (Pl. Tr., p. 112.)  This Board action indicates that the Board considered Fried capable of taking on the responsibilities inherent in running LVI and militates against any inference that the decision to reallocate Fried's Chairman responsibilities only months later could be the product of discriminatory animus.  See Baguer, 2010 WL 2813632, at *15 ("Being in the protected class when hired undermines any inference of age discrimination.").  See also Emanuel v. Oliver, 85 F. Supp. 2d 321, 334 (S.D.N.Y. 2000) ("no reasonable juror could conclude" that plaintiff was fired because of his age where he was "a mere eleven months older" than when hired); Siano v. Haber, 40 F. Supp. 2d 516, 524 (S.D.N.Y. 1999) (age discrimination claim undermined where plaintiff was fired at 71, but was already 64 when she was hired).

In addition, Simmons, who offered Fried this opportunity, was the same actor who determined that Fried's status should change from employee to consultant.  Kaplan, 2010 WL 1253967, at *5.  These undisputed facts negate any possible inference that age played any role in the Board's decisions relating to Fried's employment.  See Saenger, 706 F. Supp. 2d at 510.

In light of Fried's inability to set forth facts sufficient to prove that Defendants' decision was motivated by age discrimination, the Court should dismiss his claim under the NYCHRL against all Defendants.

## III. <u>FRIED'S RETALIATION CLAIMS UNDER BOTH THE ADEA AND THE NYCHRL SHOULD BE DISMISSED</u>

In his Complaint, Fried alleges that Defendants retaliated against him by (1) excluding him from multiple facets of LVI's operations and requesting that LVI's manager direct new Company matters to State rather than to Fried (Compl., ¶¶ 55-58); (2) terminating his

employment and offering him a position as a consultant (Compl., ¶¶ 60-62); and (3) terminating

the employment of his daughter, Shari Dembin. (Compl., ¶¶ 64-71.)[10]

Retaliation claims under the ADEA and the NYCHRL are analyzed using the McDonnell

Douglas burden-shifting framework.  Gorzynski, 596 F.3d at 110.  To establish his *prima facie*

claim, plaintiff must show that (1) he participated in protected activity known to defendant; (2)

he suffered an adverse employment action and (3) a causal connection exists between the

plaintiff's engagement in the protected activity and the adverse employment action. Id. (citations

omitted).  Once established, the burden shifts to Defendants to articulate a legitimate

nondiscriminatory reason for the adverse employment action.  Mattera v. JP Morgan Chase

Corp., No. 08 Civ. 04040, 2010 WL 3785576, at *14 (S.D.N.Y. Sept. 30, 2010).  Finally, the

burden shifts back to the plaintiff to demonstrate that the reason is pretextual.  Id.

### A.  The Purported Adverse Employment Decisions Taken Against Fried Were Made Before His Discrimination Complaint

It is axiomatic that no cause-and-effect relationship between a protected activity and an

adverse employment action can be found where the alleged adverse employment action occurred

prior to the commencement of any protected activity. Kemp v. Metro-North R.R., No. 04 Civ.

9926, 2007 U.S. Dist. LEXIS 43568, at *49 (S.D.N.Y. June 12, 2007) (dismissing retaliation

claim where a transfer decision was made before the plaintiff's EEOC charge, even though the

actual transfer occurred after the charge); Williams v. City of N.Y., No. 04 Civ. 1993, 2005 U.S.

Dist. LEXIS 6083, at *42 (S.D.N.Y. Apr. 12, 2005) (finding no viable retaliation claim where

the plaintiff filed his complaint with the New York City Commission on Human Rights after his

termination).  Moreover, where timing is the only basis for a claim of retaliation, and gradual

adverse job actions began before the plaintiff ever engaged in any protected activity, an inference

---

[10] Ms. Dembin has brought a related claim, captioned Shari L. Dembin v. LVI Services, Inc.; LVI Parent Corp.; Scott E. State, No. 11 Civ. 1888, on March 17, 2011.

of retaliation is negated.  Mattera, 2010 WL 3785576, at * 16.  See also Deebs v. Alstom

Transp., Inc., 346 Fed. Appx. 654, 657 (2d Cir. 2009); Slattery v. Swiss Reinsurance Am. Corp.,

248 F.3d 87, 95 (2d Cir. 2001).

    Fried claims that he complained about age discrimination at the Board meeting of

November 4, 2010.  (Compl., ¶ 51.)  He also alleges that he reached out to Board members from

CHS and Apollo to tell them of State's alleged discriminatory treatment shortly after the meeting

with State on October 19, 2010.  (Compl., ¶ 52.)  The decision to shift Fried's day-to-day

responsibilities to other members of LVI management, however, had been contemplated by Fried

as early as 2005 and had been considered by State and members of the Board even before State

accepted the position of CEO and President. (Pl. Tr., pp. 80-81; Seltzer Aff., Exhs. E, F.)  As

early as September 19, 2010, a month before State's conversation with Fried, State, in an email

to Robert Hogan, stated: "In the best-case scenario Burt will decide to retire at some date certain

from LVI upon a new CEO being named and offer to support the business under a consulting

agreement in any way the new CEO sees fit." (Seltzer Aff., Exh. EE, p. 2.)  Moreover, as noted

above, Fried had repeatedly represented that he was "prepared to remain at LVI until [State], the

Board or I decide its time for me to leave..." Likewise, the offer to Fried of the consulting

agreement and a reduced role with LVI was initiated by Simmons in an email dated November 2,

2010, in which he wrote to Fried: "I am of the opinion that we need to transition all of your day-

to-day activities to Scott and other members of the management team.  It is my hope that you

continue as Chairman of the Board in a non-executive capacity and act as on-call resource for

Scott. . . . I would like to replace your existing employment arrangement with a consulting

agreement that compensates you for the services you will continue to provide and also as

Chairman of the Board." (Seltzer Aff., Exh. S, pp. 1-2.)  The communication of the decision to

21

transfer Fried's day-to-day responsibilities and to transition his role from employee to consultant occurred before his discrimination complaint on November 4, 2010 and even before the purported conversation he had with Board members about his meeting with State on October 19, 2010. As such, his retaliation claims on the basis of these alleged adverse actions is simply not actionable.

**B.** **Defendants Had a Legitimate Business Reason for Closing the Westport Office and Eliminating Shari Dembin's Position**

As with the decision to offer Fried a consultant agreement, the decision to close, or at least downsize, the Westport office and effect a reduction in force was considered as early as October 29, 2010. (Seltzer Aff., Exh. FF.) The fact that this decision was considered prior to the November 4, 2010 Board meeting, when Fried first threatened to sue LVI for age discrimination, negates Fried's claim that the decision was retaliatory.

Defendants have adduced unrebutted evidence of a legitimate business reason for the closing of the Westport office – one of the measures taken by State to contain costs at a time when LVI faced a significant financial shortfall. (Seltzer Aff., Exhs. AA, BB, CC; State Tr., pp. 395-400.) The other measures included the move of the New York City headquarters to a more affordable location and the termination of eleven employees in addition to Dembin, including all of the employees of the Westport office other than the legal team, which will be moved to a different location. (Seltzer Aff., Exhs. AA, CC.)

Fried has set forth no evidence that LVI's cost containment reasons for closing of the Westport office and the selection of Dembin and eleven other LVI employees are pretextual. Other than the fact that Dembin is his daughter and that she was selected for the reduction in force (Compl., ¶¶ 64, 68), Fried offers as evidence of retaliation only the fact that she was

terminated less than a month after Fried's "protected activity." (Compl., ¶ 69.)[11]  As set forth

above, an inference of discrimination is discounted where timing is the sole basis for the

inference and the adverse action had been contemplated prior to the protected activity.  See

cases, above at page 18.

Finally, and most importantly, Fried's claim of retaliation fails simply because it makes

no sense.  It is patently absurd to suggest that Defendants would close an office and terminate the

employment of twelve employees at multiple locations just to retaliate against Fried when they

could have more easily targeted Dembin alone or, at most, the staff of the Westport office.

Fried's baseless accusation that all of these cost-cutting measures were pretext to disguise LVI's

real motive of punishing him for bringing a lawsuit are no more than sheer conjecture and totally

unsupported by any competent evidence, and are therefore insufficient to defeat Defendant's

motion for summary judgment.  See Holowecki, 644 F. Supp. 2d at 353 (granting summary

judgment motion where the plaintiff "offered nothing more than conclusory allegations in

support of his age discrimination claim"); Ferraro, 2010 WL 3912466 at *2 (granting summary

judgment where plaintiff provided only "conclusory assertions").

## IV.    FRIED'S AIDING AND ABETTING CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED

As Fried has failed to set forth material issues of fact to defeat Defendants' motion for

summary judgment as to his discrimination and retaliation claims, his claims against the

individual Defendants State, Simmons, Bagaria and Girardi should be dismissed.  Under the

NYCHRL, there is a requirement that liability must first be established as to the employer before

accessorial responsibility can be found as to an alleged aider and abettor.  DeWitt v. Lieberman,

---

[11] As Mr. Fried complained of discrimination at the November 4, 2010 Board meeting, and even taking as true his allegation that he complained to individual Board members after his meeting with October 19, 2010, Fried's contention that his protected activity occurred less than a month before Dembin's termination notification on January 6, 2010 is baseless.

48 F. Supp. 2d 280, 293-94 (S.D.N.Y. 1999) (quoting Murphy V. ERA United Realty, 674

N.Y.S.2d 415, 417 (2d Dep't 1998)); Franchitti v. Bloomberg L.P., 03 Civ. 7496, 2005 U.S. Dist.

LEXIS 19285, * 34 (S.D.N.Y. Aug. 12, 2005).  Because Fried has failed to set forth sufficient

evidence to establish liability for discrimination or retaliation as against LVI or the Parent, his

claims against the individual Defendants must similarly fail.

## CONCLUSION

For the reasons set forth above, Defendants respectfully requests that the Court enter

summary judgment dismissing the Complaint in its entirety.

Dated: June 10, 2011
        New York, New York

                                    SIDLEY AUSTIN LLP


                            By: _____
                                    Nicholas H. De Baun
                                    ndebaun@sidley.com
                                    Joanne Seltzer
                                    jseltzer@sidley.com
                                    787 Seventh Avenue
                                    New York, New York 10019
                                    (212) 839-5300

                                    Attorneys for Defendants
                                    LVI Services Inc., LVI Parent Corp,
                                    Scott State, Brian Simmons, Rajay Bagaria
                                    and Gerald Girardi

NY1 7700749v.2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BURTON T. FRIED,                                    :
                                                    :
                        Plaintiff,                  :    No. 10 Civ. 9308 (JSR)(JCF)
                                                    :
            v.                                      :
                                                    :
LVI SERVICES, INC.; LVI PARENT CORP.,               :
CODE HENNESSY SIMMONS LLC d/b/a CHS                 :
PRIVATE EQUITY V LP; APOLLO                         :
INVESTMENT CORP.; SCOTT E. STATE, in his            :
official and individual capacities; BRIAN           :
SIMMONS, in his official and individual capacities; :
RAJAY BAGARIA, in his official and individual       :
capacities; GERALD J. GIRARDI, in his official      :
and individual capacities,                          :
                                                    :
                        Defendants.                 :
                                                    :
------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

THOMPSON WIGDOR LLP

85 Fifth Avenue
New York, New York 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845

*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS ....................................................................................1

     Scott State's Pre-Hire Inquires Regarding Mr. Fried.............................4

     The Hiring Of Scott State .........................................................................5

     The October 19, 2010 Age-Related Comment .........................................5

     State's October 19, 2010 Email ...............................................................6

     Mr. Fried's First Complaints of Discrimination ....................................6

     The November 4, 2010 Board Meeting ....................................................6

     The November 5, 2010 Email ...................................................................7

     Mr. Fried's Termination and Reassignment of His Job Duties ............7

     Ms. Dembin's Termination.......................................................................8

ARGUMENT........................................................................................................9

    I.   SUMMARY JUDGMENT SHOULD BE DENIED WITH RESPECT TO MR.
        FRIED'S ADEA CLAIM ......................................................................10

        A.  Mr. Fried Has Established a Prima Facie Case Under the ADEA........10

        B.  Mr. Fried Has Established "But For" Causation.................................12

            1.  Defendants' Proffered Reason for Mr. Fried's Termination is False ........12

            2.  Defendants' Real Reason for Terminating Mr. Fried was Because of his
               Age........................................................................................................13

    II.   SUMMARY JUDGMENT SHOULD BE DENIED WITH RESPECT TO MR.
        FRIED'S NYCHRL CLAIM .................................................................18

    III.   SUMMARY JUDGMENT SHOULD BE DENIED WITH RESPECT TO MR.
        FRIED'S RETALIATION CLAIMS.........................................................20

i



A. There Was A Causal Connection Between Mr. Fried's Termination And Protected Activity ....................................................................................................................21

B. A Causal Connection Between Ms. Dembin's Termination And Mr. Fried's Protected Activity ............................................................................................................23

IV.    THE INDIVIDUAL DEFENDANTS AIDED AND ABETTED IN THE DISCRIMINATION AND RETALIATION AGAINST MR. FRIED........................25

CONCLUSION ..........................................................................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Berube v. Great Atl. & Pac. Tea Co., Inc.,*
    348 F. App'x. 684 (2d Cir. 2009) ........................................................................10

*Bickerstaff v. Vassar Coll.,*
    196 F.3d 435 (2d Cir. 1999) ..............................................................................10

*Boston v. McFadden Pub., Inc.,*
    No. 09-CV-457 (RJH), 2010 WL 3785541 (S.D.N.Y. Sept. 29, 2010) ............14

*Casper v. Lew Lieberbaum & Co., Inc.,*
    No. 97-CV-3016 (JGK), 1998 WL 150993 (S.D.N.Y. Mar. 31, 1998)..............20

*Cholita Corp. v. M/V MSC MANDRAKI,*
    No. 10 CIV. 4717 (JSR), 2011 WL 1405038 (S.D.N.Y. Apr. 4, 2011) ..............9

*Crawford v. Dep't of Investigation,*
    324 F. App'x. 139 (2d Cir. 2009) ........................................................................17

*Deebs v. Alstom Transp., Inc.,*
    346 F. App'x. 654 (2d Cir. 2009) ........................................................................24

*Dixon v. Int'l Fed'n of Accountants,*
    No. 10-1924-CV, 2011 WL 1086867 (2d Cir. Mar. 25, 2011) ..........................17

*Feingold v. New York,*
    366 F.3d 138 (2d Cir. 2004) ..............................................................................25

*Germano v. Cornell University,*
    No. 03-CV-9766, 2005 WL 2030355 (S.D.N.Y. Aug. 17, 2005) ......................20

*Giarratano v. Edison Hotel,*
    No. 08-CV-1849 (SAS), 2009 WL 46444 (S.D.N.Y. Feb. 24, 2009) ...............15

*Gorzynski v. Jetblue Airways Corp.,*
    596 F.3d 93 (2d Cir. 2010) ..........................................................................10, 12

*Graham v. Long Island R.R.,*
    230 F.3d 34 (2d Cir. 2000) ................................................................................10

*Gross v. FBL Fin. Serv. Inc.,*
    129 S. Ct. 2343 (2009) ................................................................................12, 18

*Hicks v. Baines*,
    593 F.3d 159 (2d Cir. 2010) ............................................................21

*Hird-Moorhouse v. Belgian Mission to United Nations*,
    No. 03-CV-9688, 2010 WL 3910742 (S.D.N.Y. Oct. 5, 2010) .................18, 24

*Hofmann v. Dist. Council 37*,
    No. 99-CV-8636 (KMW) (JCF), 2004 WL 1936242 (S.D.N.Y. Aug. 31, 2004) ............16

*Hofmann v. Dist. Council 37*,
    No. 99-CV-8636 (GEL), 2006 WL 3476747 (S.D.N.Y. Nov. 30, 2006)..........................16

*Joseph v. Marco Polo Network, Inc.*,
    No. 09-CV-1597 (DLC), 2010 WL 4513298 (S.D.N.Y. Nov. 10, 2010)........................12

*Leibowitz v. Cornell University*,
    584 F.3d 487 (2d Cir. 2009) ............................................................12

*Lightfoot v. Union Carbide Corp.*,
    No. 92-CV-6411, 1994 WL 184670 (RPP) (S.D.N.Y. Nov. 1998)...............................20

*Loeffler v. Staten Island Univ. Hosp.*,
    582 F.3d 268 (2d Cir. 2009) ............................................................18

*Mattera v. JPMorgan Chase Corp.*,
    740 F. Supp. 2d 561 (S.D.N.Y. 2010) ....................................................12, 23

*Morris v. New York City Dept. of Sanitation*,
    No. 99-CV-4376 (WK), 2003 WL 1739009 (S.D.N.Y. Apr. 2, 2003)............................16

*Newmark v. Lawrence Hosp. Ctr.*,
    No. 07-CV-2861 (CS), 2008 WL 5054731 (S.D.N.Y. Oct. 20, 2008)......................22, 24

*O'Reilly v. Marina Dodge, Inc.*,
    No. 10-CV-2977, 2011 WL 1897489 (2d Cir. May 19, 2011)...................................14, 17

*Raskin v. The Wyatt Co.*,
    125 F.3d 55 (2d Cir. 1997) ............................................................14

*Salvatore v. KLM Royal Dutch Airlines*,
    No. 98-CV-2450 (LAP), 1999 WL 796172 (S.D.N.Y. Sept. 30, 1999)...........................20

*Schreiber v. Worldco LLC*,
    324 F.Supp. 2d 512 (S.D.N.Y. 2004) ....................................................16

*Sciola v. Quattro Piu, Inc.*,
    361 F. Supp. 2d 61 (E.D.N.Y. 2005) ................................................................16

*Shapiro v. New York City Dept. of Educ.*,
    561 F. Supp. 2d 413 (S.D.N.Y. 2008) ..............................................................17

*Silver v. N. Shore Univ. Hosp.*,
    490 F. Supp. 2d 354 (S.D.N.Y. 2007) ..............................................................22

*Slattery v. Swiss Reinsurance Am. Corp.*,
    248 F.3d 87 (2d Cir. 2001) ...............................................................................22

*Spahr v. Am. Dental Centers*,
    No. 03-CV-4954 (DRH) (ARL), 2006 WL 681202 (E.D.N.Y. Mar. 14, 2006)...............14

*Terry v. Ashcroft*,
    336 F.3d 128 (2d Cir. 2003) .............................................................................20

*Velasquez v. Gates*,
    No. 08-CV-2215 (CLP), 2011 WL 2181625 (E.D.N.Y. June 3, 2011)............................18

*Velez v. McHugh*,
    No. 09-CV-0925 (GAY), 2011 WL 778693 (S.D.N.Y. Mar. 2, 2011) ............................10

*Vesprini v. Shaw Contract Flooring Services, Inc.*,
    315 F.3d 37 (1st Cir. 2002) ..............................................................................14

*Weiss v. JPMorgan Chase & Co.*,
    No. 06-CV-4402 (DLC), 2010 WL 114248 (S.D.N.Y. Jan. 13, 2010) ............................18

*Wright v. N.Y. City Off–Track Betting Corp.*,
    No. 05-CV-9790 (WHP), 2008 WL 762196 (S.D.N.Y. Mar. 24, 2008)..........................23

*Yarde v. Good Samaritan Hosp.*,
    360 F.Supp. 2d 552 (S.D.N.Y. 2005) ..............................................................22

**STATE CASES**

*Hoffman v. Parade Publis.*,
    15 N.Y.3d 285 (2010)...........................................................................18, 20

*Williams v. N.Y. City Hous. Auth.*,
    61 A.D.3d 62 (1st Dep't 2009) .........................................................................20


**FEDERAL STATUTES AND RULES**

29 U.S.C. §§ 621 ........................................................................................................10

Fed. R. Civ. P. 56(c) ..................................................................................................9

**STATE STATUES AND RULES**

New York Administrative Code §§ 8-101 *et seq.* ("NYCHRL") ..................................................10

N.Y.C. Local Law No. 85 (Oct. 3, 2005)...................................................................20

## PRELIMINARY STATEMENT

Prior to being hired by LVI Services as its President and CEO, Scott State expressed his desire that, "in the best case scenario," Burton Fried, who was 70 years old at the time, "retire" after nearly a quarter of a century of excellent performance with the company.  Less than three weeks after Mr. State started working, he stripped Mr. Fried of all of his duties because of his age and asked Mr. Fried, "you're 71 years of age, how much longer do you expect to work?"  Mr. Fried then complained to the Board of Directors that he was being subjected to age discrimination.  When his complaints fell on deaf ears, his attorneys sent a letter to Mr. State memorializing his complaints of discrimination.  The following day, Mr. Fried was fired by Mr. State.  In a further act of retaliation, Mr. Fried's daughter, who was also a long-term employee of LVI, was terminated approximately one month after Mr. Fried complained to the Board.

## STATEMENT OF FACTS

Defendant LVI Parent Corp. ("Parent") maintains its principal place of business in New York City and is the parent and sole shareholder of Defendant LVI Services, Inc. ("LVI"). (Ex. 3, p.14; Ex. 4, p.24; Ex. 5, p.19).  Parent is approximately 95% owned by: Apollo Investment Corp. ("Apollo"), CHS Private Equity V LP ("CHS"), and Falcon Investment Advisors ("Falcon"). (Ex. 4, p.17-18).   The Board of Directors of Parent (the "Board") is currently comprised of: Defendants Rajay Bagaria ("Bagaria") and Gerald Girardi ("Girardi") from Apollo, Defendant Brian Simmons ("Simmons") and Robert Hogan ("Hogan") from CHS, John Schnabel ("Schnabel") from Falcon, Scott State ("State"), Richard Ferruci and Robert Buck. (Ex. 4, p.18-19).  While employed by LVI, Mr. Burton Fried ("Mr. Fried") was Chairman of the Board. (Ex. 4 p.19; Ex. 6, p.14).

1

LVI is an environmental remediation and demolition company that maintains its principal place of business in New York City (the "New York City Office"). (Ex. 3, p.25, 30-31; Ex. 4, p.32-33). Along with all of its subsidiaries, LVI is comprised of approximately 20 offices across the United States and has thousands of employees. (Ex. 7, p.174-175; Ex. 8, p.24-25).

Mr. Fried, who has been referred to as the "founder" of LVI, was born on February 26, 1940. (Ex. 9; Ex. 10; Ex. 11, p. 362, 364-365). Hired in 1986, he was the General Counsel of LVI until he became its President and Chief Executive Officer in 1989. (Ex. 12, p. 63-64). As President and CEO, Mr. Fried worked out of the New York City Office. (Ex. 4, p. 45).

In or around September 2003, LVI opened a satellite office to the New York City Office in Westport, Connecticut ("Westport Office"). (Ex. 12, p. 45, 64; Ex. 4, p.166). Because Mr. Fried lived in Westport, he decided to work out of the Westport Office two to three days a week and work out of the New York City Office two to three days a week. (Ex. 4, p.45-46; Ex. 12, p.65-67). Between November 2005 and July 2006, Mr. Fried worked out of the Westport Office three days a week and out of the New York City Office two days a week. (Ex. 13).

Because LVI became the dominant leader in its industry while Mr. Fried was President and CEO, Mr. Fried, in 2005, recommended to the then current owner of LVI that it find a President and CEO with experience managing a billion-dollar company. (Ex. 4, p.35-36; Ex. 12 p. 75-76). However, Mr. Fried had no intention of retiring once a new President and CEO was hired and decided to continue working for LVI as an employee with the job title of Chairman and to continue serving as Chairman of the Board. (Ex. 12, p. 77-79, 132; Ex. 13).

In or around July 2006, Robert McNamara ("McNamara") was hired by LVI as its President and CEO and Mr. Fried became Chairman of LVI. (Ex. 4, p.38-39, 41; Ex. 14). In connection with his new role, Mr. Fried envisioned working four days each week. (Ex. 12, p.

109-110).  However, after his first week as Chairman, he reverted back to working at least five days a week. (Ex. 12, p. 109-110).  As Chairman under McNamara, Mr. Fried was responsible for, among other things, strategic growth, legal matters and sales. (Ex. 7, p.35-36; Ex. 13).  As Chairman, Mr. Fried did a good job. (Ex. 7, p.37; Ex. 6, p.25-26).

While Mr. Fried was Chairman under McNamara, he was based in the Westport Office. (Ex. 13).  Despite the location of his office, he still worked in New York City for LVI. (Ex. 4, p. 45-46; Ex. 15, ¶3-5).  For example, he worked out of the New York City office on occasion and attended numerous meetings concerning LVI business in New York City. (Ex. 15, ¶3; Ex. 4, p.45-46).  He also called and/or emailed, almost daily, personnel in the New York City Office about projects in New York City and/or about issues involving the operations of the New York City Office. (Ex. 15, ¶4).  When Mr. Fried was not in New York City working, or communicating with LVI personnel in New York City concerning LVI business in New York City, he was drafting and reviewing paperwork involving LVI projects in New York City. (Ex. 15, ¶5).

In early 2010, McNamara resigned, and Mr. Fried was asked by Simmons to be the interim President and CEO of LVI until McNamara's replacement could be found. (Ex. 5, p. 31; Ex. 8, p.28-30; Ex. 12, p. 108-109).  Not only did Mr. Fried agree to serve in this capacity, but he also continued to serve as Chairman of LVI and intended to continue as Chairman after a new President and CEO was found. (Ex. 4, p.64; Ex. 7, p.38, 48-50).  While interim President and CEO, Mr. Fried did a good job. (Ex. 4, p.64-65; Ex. 6, p. 28; Ex. 8, p. 35-36).  In fact, he was specifically told by Simmons that he was "earning every penny" of his salary, and Bagaria and Girardi also commended Mr. Fried's performance by writing that "we are fortunate to have Burt Fried as interim CEO who had done a good job stabilizing the situation." (Ex. 16; Ex. 17, p. 13).

While Mr. Fried was interim President and CEO, and later as Chairman, LVI was conducting a substantial amount of business in New York City. (Ex. 7, p.44). For example, it was performing work at: (a) Madison Square Garden in connection with a $27.5 million contract; (b) 130 Liberty Street in connection with an approximately $30 million contract; (c) Hudson Yards in connection with a $10 million contract; and (d) Yankee Stadium in connection with a $3 million contract. (Ex. 7, p.39-45). The former two contracts, which Mr. Fried played a role in securing, were two of the biggest contracts that LVI had at the time. (Ex. 7, p.45-47).

While he was interim President and CEO, Mr. Fried, who was still based in the Westport Office, continued to work in New York City for LVI. (Ex. 6, p.83-85; Ex. 8, p.66-69; Ex. 15, ¶6-7). For example, he worked out of the New York City Office on occasion and continued to attend numerous meetings concerning LVI business in New York City, including four meetings in connection with the Madison Square Garden project. (Ex. 6, p.84; Ex. 7, p.45-47; Ex. 8, p.66-69; Ex. 15, ¶5). He also continued to call and/or email, almost daily, personnel in the New York City Office about projects in New York City and/or about issues involving the operations of the New York City Office. (Ex. 4, p.66-67; Ex. 8, p.66-69; Ex. 15, ¶7). He also, on a weekly basis, participated in conference calls with a client in New York City to discuss issues concerning a project in New York City. (Ex. 15, ¶7).

**Scott State's Pre-Hire Inquiries Regarding Mr. Fried**

In or around August 2010, State, who was 47 years old at the time, was introduced to Mr. Fried as a candidate for President and CEO of LVI. (Ex. 12, p. 110; Ex. 10). On September 14, 2010, before State was even hired, he inquired about how Mr. Fried could be removed as Chairman of the Board. (Ex. 18).

4



Again, before he was hired, State asked John Leonard ("Leonard"), the Chief Operating Officer of LVI, if Mr. Fried, who was 70 years old at the time, was going to retire. (Ex. 7, p.59-60, 64-65; Ex. 11, p. 115-117).  Mr. Leonard said no. (Ex. 7, p.59-60, 64-65; Ex. 11, p.130-131; Ex. 19).  In fact, Mr. Fried had often told Mr. Leonard that he intended to die in his chair. (Ex. 7, p.49).

On September 19, 2010, despite already being told by Leonard that Mr. Fried had no intention of retiring, State wrote the following in the body of a lengthier email to Hogan:

⇨       In the best-case scenario Burt will decide to retire at some date certain from LVI upon a new CEO being named and offer to support the business under a consulting agreement in any way the new CEO sees fit.  Several members of the senior team have told me that Burt will never retire because he has no other interests and nothing else to do.  That is not a healthy situation for Burt or LVI. (Ex. 11, p.131; Ex. 19).

**The Hiring Of Scott State**

On approximately September 28, 2010, State was hired by LVI as its President and CEO. (Ex. 11, p.91).  Upon State's hire, Mr. Fried assumed his prior title and job duties of Chairman of LVI. (Ex. 3, p.47; Ex. 20).  As Chairman, Mr. Fried continued to do a good job. (Ex. 7, p.76-77). During this time, Mr. Fried, who was still based in the Westport Office, continued to work in New York City for LVI. (Ex. 8, p.65; Ex. 15, ¶8).  For example, he continued to attend meetings concerning LVI business in New York City. (Ex. 8, p.65; Ex. 12, p.66-67, 255; Ex. 15, ¶8).

**The October 19, 2010 Age-Related Comment**

On October 19, 2010, Mr. Fried met with State for the first time since State was hired in New York City to discuss Mr. Fried's job duties. (Ex. 12, p.176; Ex. 21).  During the meeting, State told Mr. Fried that he was going to take away all of his duties and give them to others (who

were younger than Mr. Fried by decades) (Ex. 10; Ex. 12, p.182, 194).  When Mr. Fried asked

State why he was doing this, Mr. State admitted:

⇨        "Burt, you're 71 years of age, how much longer do you expect to
         work?"

(Ex. 7, p.117; Ex. 12, p.194).  State made this comment despite knowing that Mr. Fried wanted

to "remain active forever." (Ex. 34).  In response to State's remark, Mr. Fried told State that he

was 70 years old and that he intended to work for LVI for many years to come. (Ex. 12, p.182-

83).  Despite Mr. Fried's response, State decided to reassign his duties. (Ex. 4, p.101; Ex. 11, p.

183).

### State's October 19, 2010 Email

After he met with Mr. Fried, that same day State emailed Simmons and wrote the

following sentence in reference to Mr. Fried:

⇨        "I was clear with him that it was my objective to have him truly retire and be just
         an on call resource."

(Ex. 21).

### Mr. Fried's First Complaints of Discrimination

After this meeting and prior to the end of October 2010, Mr. Fried spoke to Bagaria,

Simmons and Schnabel, and told them that State wanted to reassign all of his duties and told

them the comment State made. (Ex. 3, p.54-57; Ex. 8, p. 44-45, 48; Ex. 12, p.194-200).

### The November 4, 2010 Board Meeting

On November 4, 2010, the Board held a quarterly meeting in New York City which Mr.

Fried attended. (Ex. 22).  At the end of the meeting, the Board discussed Mr. Fried's future role

at LVI. (Ex. 22).  During this meeting, Mr. Fried calmly told the Board that State reassigned all

of his duties to others, and also told them the age-related comment State made. (Ex. 3, p.90-91;

Ex. 5, p.43-44; Ex. 6, p.51-52; Ex. 8, p.72-73; Ex. 23, p. 41, 43-44; Ex. 33, p.75).  He also told the Board that State's actions constituted age discrimination. (Ex. 3, p.91; Ex. 6, p.51-52; Ex. 23, p.43-44; Ex. 33, p.75-76).  At the conclusion of the meeting, no decision regarding Mr. Fried's continued employment was made. (Ex. 3, p.93, 95; Ex. 5 p.73).  Instead, the Board decided to have Schnabel reach out to Mr. Fried and State to broker a resolution. (Ex. 3, p.92-93).  Further, the Board decided not to investigate Mr. Fried's complaint of age discrimination, even though Jeffrey Smith, Esq., a partner at Sidley Austin (the same firm representing Defendants) and LVI's outside counsel, was present at the Board meeting. (Ex. 4, p.23; Ex. 5, p.75; Ex. 23, p. 10, 12, 25, 81-82; Ex. 33, p.21, 76-77).

**The November 5, 2010 Email**

On November 5, 2010, State emailed his personal friend, who he was communicating with about LVI business, and wrote the following sentence in reference to Mr. Fried:

⇨　　In a battle with founder about his need to retire but Board gets it
　　　and is working to exit him with some respect.

(Ex. 9; Ex. 11, p. 362, 364-365).

**Mr. Fried's Termination and Reassignment of His Job Duties**

On November 15, 2010, Mr. Fried's attorneys hand delivered a letter to State's attention at the New York City Office to address the discriminatory conduct that Mr. Fried previously complained about. (Ex. 4, p.138-139; Ex. 24).  On November 16, 2010, a majority of the Board members (Girardi, Simmons, Hogan, Schnabel and State) discussed the November 15 letter and the employment of Shari Dembin ("Dembin"), who is Mr. Fried's daughter. (Ex. 5, p.82-84, 87-92; Ex. 8, p.138-139; Ex. 25).  The Board members, including State, decided to ignore the November 15 letter and send a letter in response. (Ex. 5, p.87-92; Ex. 8, p.145-148; Ex. 26).  The letter in response, which was sent to Mr. Fried on November 16, 2010, terminated Mr. Fried's

employment as Chairman of LVI. (Ex. 26).  The decision to terminate Mr. Fried was made by State. (Ex. 27, No. 4; Ex. 28, No. 6; Ex. 29, No. 5; Ex. 30, No. 5).  Prior to State's hire, the Board never considered firing Mr. Fried. (Ex. 3, p.53-54; Ex. 5, p.39-40).

The November 16 letter also advised Mr. Fried that he could continue to be Chairman of the Board and offered him the opportunity to work for LVI as a consultant on an hourly basis. (Ex. 26).  However, this arrangement was contingent on Mr. Fried agreeing not to sue LVI for age discrimination and retaliation. (Ex. 26).  Moreover, Mr. Fried was not guaranteed a minimum number of hours, could have been terminated at any time upon 30-days notice, and was only guaranteed $37,500.  (Ex. 26).  Mr. Fried declined the offer. (Ex. 33, p.130-131).  He resigned as Chairman of the Board on November 30, 2010; he did not resign from his position as Chairman of LVI. (Ex. 3, p.118; Ex. 31; Ex. 33, p.12, 133).

After he was fired, Mr. Fried's job duties were mostly reassigned to Tom Cullen who was 35, Gregory DiCarlo who was 44, David Pearson who was 44, Frank Aiello who was 45, John Leonard who was 46, State who was 47, Mark Canessa who was 48, Kamal Sookram who was 53, and Joseph Annarumma who was 57. (Ex. 5, p.105; Ex. 7, p.93-116; Ex. 10; Ex. 36).

**Ms. Dembin's Termination**

Ms. Dembin, who began working for LVI in April 1996 out of its New York City Office, transferred to the Westport Office in September 2003. (Ex. 4, p.148-149; Ex. 6, p.88-89; Ex. 7, p.146).  She was the Insurance/Bonding Administrator and was responsible for risk management, and administering insurance and bonding. (Ex. 7, p.147-148; Ex. 4, p.149-151; Ex. 6, p.90-91).  She made $85,000 annually and performed her job well. (Ex. 4, p.150-151, 156; Ex. 6, p.91-92; Ex. 7, p. 148).

Approximately one month after Mr. Fried complained to Bagaria, Simmons and Schnabel about being discriminated against (and as early as nine days, and as late as five weeks after Mr. Fried complained to the Board), out of the thousands of employees within the LVI organization that were evaluated for layoff, State decided to terminate Ms. Dembin, along with 10 other employees, in January 2011. (Ex. 3, p.124; Ex. 4, 161-165, 169-170; Ex. 5, p.118; Ex. 7, p.150-151, 155, 172-173; Ex. 32; Ex. 33, p.160-161).

Ms. Dembin, who performed the same duties for the past 10 years, was not laid off in connection with prior rounds of layoffs conducted by LVI. (Ex. 4, p.172-177).   Out of the 11 employees selected for layoff, six employees were from the Westport Office. (Ex. 7, p.155-162). Significantly, three employees from the Westport Office were not selected for layoff and continue to work in that office. (Ex. 4, p.168, 171; Ex. 6, p.89-90).   Notably, some of Ms. Dembin's job duties were reassigned to an employee that was not laid off from the Westport Office. (Ex. 4, p.166-167, 171; Ex. 6, p.96; Ex. 7, p.165-166).

## ARGUMENT

Summary judgment is not appropriate unless the evidence on the record demonstrates that "there is no genuine issue as to any material fact." FED.R.CIV.P. 56(c). "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and in assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Cholita Corp. v. M/V MSC MANDRAKI*, No. 10-CV-4717 (JSR), 2011 WL 1405038, at *4 (S.D.N.Y. Apr. 4, 2011). In employment discrimination cases, it is well-settled that "[c]aution should be exercised in addressing summary judgment motions . . . where intent and state of mind are at issue because 'careful scrutiny of the

factual allegations may reveal circumstantial evidence to support the required inference of discrimination.'" *Velez v. McHugh*, No. 09-CV-0925 (GAY), 2011 WL 778693, at *2 (S.D.N.Y. Mar. 2, 2011) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000)); *see also Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999) ("as discrimination will seldom manifest itself overtly, courts must be alert to the fact that [e]mployers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law") (internal quotation omitted).

I.   **SUMMARY JUDGMENT SHOULD BE DENIED WITH RESPECT TO MR. FRIED'S ADEA CLAIM**

Mr. Fried was discriminated against because of his age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq*. ("ADEA"), and the New York City Human Rights Law, New York Administrative Code §§ 8-101 *et seq*. ("NYCHRL"). As set forth below, Mr. Fried has demonstrated that genuine issues of material fact exist to preclude summary judgment on his claims.

A.   **Mr. Fried Has Established a Prima Facie Case**

In order to establish a *prima facie* case of discrimination under the ADEA, the plaintiff "must show (1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 106-107 (2d Cir. 2010). It is well-settled that a plaintiff's burden at this point is "de minimis." *See Berube v. Great Atl. & Pac. Tea Co., Inc.*, 348 F. App'x. 684, 686 (2d Cir. 2009). In this case, Defendants assume that Mr. Fried has met his de minimis burden. (D. Br., p.12). In any event, Mr. Fried can demonstrate each aspect of his *prima facie* case.

It is undisputed that at all relevant times, Mr. Fried was 70 years old.  It is also undisputed that Mr. Fried, as a 24 year employee of LVI, including 20 as its President and CEO and/or Chairman, was qualified to hold the Chairman position at the time he was fired.  (Ex. 15, ¶2).  It is also undisputed that Mr. Fried was fired as Chairman of LVI.  (Ex. 26).

With respect to the fourth prong, it is also undisputed that:

- Mr. Fried worked at LVI for 24 years before State was hired (Ex. 15, ¶2).  During his time as Chairman under McNamara, his work performance was exceptional. (Ex. 6, p.25-26; Ex. 7, p.37). A few months before State was hired, Mr. Fried was told by Simmons, he was "earning every penny" of his salary (Ex. 16), and Bagaria and Girardi said that Apollo was "fortunate to have Burt Fried as interim CEO." (Ex. 17);

- On September 14, 2010, before he was even hired, State was trying to determine how to remove Mr. Fried as Chairman of the Board; a role which did not impact State's ability to manage LVI.  (Ex. 18);

- On September 19, 2010, State emailed Hogan and wrote that "[i]n the best-case scenario Burt will decide to retire at some date certain from LVI upon a new CEO being named and offer to support the business under a consulting agreement in any way the new CEO sees fit.  Several members of the senior team have told me that Burt will never retire because he has no other interests and nothing else to do.  That is not a healthy situation for Burt or LVI." (Ex. 19);

- On October 19, 2010, when Mr. Fried asked State why he was reassigning his job duties to other employees, State said, "Burt you're 71 years of age, how much longer do you expect to work?" (Ex. 12, p.194);

- After meeting with Mr. Fried on October 19, 2010, State wrote to Simmons, "I was clear with [Mr. Fried] that it was my objective to have him truly retire and be just an on call resource." (Ex. 21);

- On November 5, 2010, State emailed his friend and told him that he was "[i]n a battle with [Mr. Fried] about his need to retire but Board gets it and is working to exit him with some respect." (Ex. 9);

- State, who is 23 years younger than Mr. Fried, made the decision to fire him.  (Ex. 10; Ex. 27, No. 4; Ex. 28, No. 6; Ex. 29, No. 5; Ex. 30, No. 5); and

- After he was fired, Mr. Fried's job duties were reassigned to employees who range from 13 to 35 years younger than him. (Ex. 5, p.105; Ex. 7, p.93-116; Ex. 10; Ex. 36).

In light of this evidence, Mr. Fried has, at the very least, created an issue of fact as to whether his termination occurred under circumstances giving rise to an inference of discrimination. *See Joseph v. Marco Polo Network, Inc.*, No. 09-CV-1597 (DLC), 2010 WL 4513298, at *10 (S.D.N.Y. Nov. 10, 2010) ("For the purposes of assessing the plaintiffs' *prima facie* case, the plaintiffs' evidence of [their supervisor's] explicit age-related comments in connection with the performance of the plaintiffs' professional duties is sufficient."); *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 573 (S.D.N.Y. 2010) ("The Second Circuit has continuously held that an inference of discrimination arises . . . when an older qualified employee is replaced by someone younger.") (collecting cases).    Accordingly, Mr. Fried has established a *prima facie* case of age discrimination.

**B.    Mr. Fried Has Established "But For" Causation**

Because Mr. Fried has met his initial burden, Defendants must articulate a legitimate, non-discriminatory reason for Mr. Fried's termination. *Gorzynski* at 107.  Defendants claim that Mr. Fried's was terminated "to ensure that the new CEO and President, State, would have the freedom to manage the Company as he saw fit." (D. Br., p.12).  Now, the burden shifts back to Mr. Fried to establish that his "age was the but for cause of the employer's adverse action." *Gross v. FBL Fin. Serv. Inc.*, 129 S. Ct. 2343, 2350 (2009).  In order to meet this burden, Mr. Fried may rely on the facts giving rise to an inference of discrimination, as well as evidence demonstrating that the reason for his termination is pretextual. *Leibowitz v. Cornell University*, 584 F.3d 487, 503 (2d Cir. 2009).

**1.  Defendants' Proffered Reason for Mr. Fried's Termination is False**

Defendants claim that Mr. Fried was terminated "to ensure that the new CEO and President, State, would have the freedom to manage the Company as he saw fit."  Issues of fact

exist regarding the veracity of this reason.  For example, before State was hired: (a) he wrote to Hogan inquiring about how to remove Mr. Fried as Chairman of the Board, a position that had no direct influence on State's day-to-day management of LVI; (b) he wrote that "in the best case scenario, Burt will decide to retire at some date certain from LVI upon a new CEO being named . . . ;" and (c) he received assurances from Mr. Fried that he would give State independence to run LVI and Mr. Fried did not interfere with State. (Ex. 4, p. 129; Ex. 6, p. 39, 65, 74; Ex. 7, p. 74-76; Ex. 33, p. 62-63; Ex. 37; Ex. 38).  In fact, Defendants do not even allege that Mr. Fried actually interfered with State.  Further, no other LVI senior managers were fired, except Mr. Fried. (Ex. 15, ¶9).

Finally, and most importantly, when Mr. Fried asked State why he was reassigning his job duties, State admitted that it was because of Mr. Fried's age by responding, "Burt, you are 71 years of age, how much longer do you expect to work?" (Ex. 12, p.194).  Defendants' explanation for State's comment, that he was inquiring into Mr. Fried's future plans, must be false because State admittedly knew that Mr. Fried had no intention of retiring from LVI prior to his comment. (Ex. 19; Ex. 34).  State's foreknowledge regarding Mr. Fried's intentions creates, at least, an issue of fact as to its context.

**2.  Defendants' Real Reason for Terminating Mr. Fried was Because of his Age**

Issues of fact also exist as to whether the real reason for firing Mr. Fried was because of his age.  On October 19, 2010, Mr. Fried met face-to-face with State at the New York City Office.  During that meeting, State told Mr. Fried that he was going to be reassigning Mr. Fried's duties to other employees.  When Mr. Fried asked State <u>why</u> he was reassigning his job duties to other employees, State said:

- "Burt you're 71 years of age, how much longer do you expect to work?"  (Ex. 12, p.194);

13

State's admission that Mr. Fried's job duties were being reassigned because of his age is direct evidence of age discrimination. Defendants' attempt to put State's discriminatory statement in context is futile. Defendants contend that State was merely clarifying "how long Fried intended to retain his operational responsibilities," and/or referring "to retirement or transition planning alone." (D. Br., p.13). This attempt to remove the discriminatory animus from State's comment is belied by the evidence because at the time, State knew that Mr. Fried had no intention of retiring from LVI. *See O'Reilly v. Marina Dodge, Inc.*, No. 10-CV-2977, 2011 WL 1897489, at *2 (2d Cir. May 19, 2011) ("Where, as here, the asserted nondiscriminatory explanations relate to and purport to justify allegedly age-related comments, a jury may consider the pretextual nature of the explanations in determining whether the comments are ageist and whether the adverse action would not have occurred but for the plaintiff's age.").

In this case, State and Mr. Fried did not discuss his retirement plans. (Ex. 11, p. 118-119). The cases Defendants cite are inapposite. For example, in *Boston v. McFadden Pub., Inc.*, No. 09-CV-457 (RJH), 2010 WL 3785541 (S.D.N.Y. Sept. 29, 2010), the Court held that discussions of retirement could not give rise to an inference of discriminatory animus because the plaintiff broached the subject himself and there was no evidence that plaintiff's retirement was discussed outside that context. *Boston* at *11. Reliance on *Raskin v. The Wyatt Co.*, 125 F.3d 55 (2d Cir. 1997), is similarly misplaced as there the defendant inquired directly with the plaintiff regarding his retirement plans during a discussion concerning the plaintiff's interest in a new position with the defendant.[1]

---

[1]    The additional case-law cited by Defendants is also inapplicable. *See e.g. Vesprini v. Shaw Contract Flooring Services, Inc.*, 315 F.3d 37, 41 (1st Cir. 2002) (granting summary judgment where alleged discriminatory remarks were made between one and two years before plaintiff's termination); *Spahr v. Am. Dental Centers*, No. 03-CV-4954 (DRH) (ARL), 2006 WL 681202, at *4 (E.D.N.Y. Mar. 14, 2006) (finding that plaintiff could not create

Defendants also claim that there is no pretext because the Board made the decision to terminate. However, each of the Individual Defendants, including State, previously swore under oath that State had made the decision to terminate Mr. Fried's employment. Defendants further claim that there is no pretext because they are entitled to the same actor inference because the Board asked Mr. Fried to serve as interim President and CEO at the age of 70. However, it is undisputed that State, Bagaria and Girardi were not on the Board at that time. Therefore, Defendants cannot get the benefit of the same actor inference.

Despite Defendants' contentions that Mr. Fried's evidence of age discrimination consists of only this single age-based comment by State, the record reveals otherwise. For example, despite being aware that Mr. Fried had no intention of retiring:

- On September 19, 2010, before he was even hired, State emailed Hogan and wrote that "[i]n the best-case scenario Burt will decide to retire at some date certain from LVI upon a new CEO being named and offer to support the business under a consulting agreement in any way the new CEO sees fit. Several members of the senior team have told me that Burt will never retire because he has no other interests and nothing else to do. That is not a healthy situation for Burt or LVI." (Ex. 19);

- On October 19, 2010, directly after the meeting with Mr. Fried where State stripped him of his job duties because of his age, State wrote to Simmons that during the meeting with Mr. Fried, he was clear that it was his "objective to have [Mr. Fried] truly retire." (Ex. 21);

- On November 5, 2010, State emailed his friend and told him that he was "[i]n a battle with [Mr. Fried] about his need to retire but Board gets it and is working to exit him with some respect." (Ex. 9);

Whether State's choice of words evinces a desire to remove Mr. Fried because of his age is a question for the jury. *See Giarratano v. Edison Hotel*, No. 08-CV-1849 (SAS), 2009 WL 464441, at *6 (S.D.N.Y. Feb. 24, 2009) (finding that the question of whether the use of the word "retirement" referred to plaintiff's age was a question to be resolved by the jury).

---

an inference of discrimination when her supervisor inquired into her retirement plans where plaintiff "repeatedly raised the topic of retirement").

This case closely mirrors *Sciola v. Quattro Piu, Inc.*, 361 F. Supp. 2d 61 (E.D.N.Y. 2005), where the Court denied summary judgment on the plaintiff's age discrimination claim. In *Sciola*, although the plaintiff's general manager was aware he had no intention of retiring, the general manager made the following age-based comments to plaintiff: (1) "why are you still working?" (2) "I would retire if I was you;" and (3) "Why don't you retire, you are sixty-three years old?" *Id.* at 63-64. The Court held that given the timing of the comments – within two years of the adverse action – a reasonable person could view the circumstances "as discriminatory as the speaker's opinion is that once an arbitrary age is reached, an individual should retire." *Id.* at 68; *see also Schreiber v. Worldco LLC*, 324 F.Supp.2d 512, 522-523 (S.D.N.Y. 2004) (denying summary judgment where decision-makers made multiple age-based comments in the context of plaintiff's employment three or four months before plaintiff left defendant); *Hofmann v. Dist. Council 37*, No. 99-CV-8636 (KMW), 2004 WL 1936242, at *10 (S.D.N.Y. Aug. 31, 2004) *report and recommendation adopted as modified*, No. 99-CV-8636 (GEL), 2006 WL 3476747 (S.D.N.Y. Nov. 30, 2006) (denying summary judgment where decision-makers told plaintiffs that they should retire and that it would be a good idea to consider retirement); *Morris v. New York City Dept. of Sanitation*, No. 99-CV-4376 (WK), 2003 WL 1739009 (S.D.N.Y. Apr. 2, 2003) (denying summary judgment where plaintiff was told multiple times that he should retire and that he was not in defendant's future plans).

In addition to the aforementioned age-related comments, as set forth above, further evidence of age discrimination exists, such as:

- Mr. Fried worked at LVI for 24 years before State was hired (Ex. 15, ¶2). During his time as Chairman under McNamara, his work performance was exceptional. (Ex. 6, p.25-26; Ex. 7, p.37). A few months before State was hired, Mr. Fried was told by Simmons, he was "earning every penny" of his salary (Ex. 16), and Bagaria and Girardi said that Apollo was "fortunate to have Burt Fried as interim CEO." (Ex. 17);

- On September 14, 2010, before he was even hired, State was trying to determine how to remove Mr. Fried as Chairman of the Board; a role which did not impact State's ability to manage LVI. (Ex. 18);

- State, who is 23 years younger than Mr. Fried, made the decision to fire him. (Ex. 10; Ex. 27, No. 4; Ex. 28, No. 6; Ex. 29, No. 5; Ex. 30, No. 5); and

- After he was fired, Mr. Fried's job duties were reassigned to employees who range from 13 to 35 years younger than him. (Ex. 5, p.105; Ex. 7, p.93-116; Ex. 10; Ex. 36).

When looking at the totality of the circumstances, State's comment clearly "bear[s] a more ominous significance." *Shapiro v. New York City Dept. of Educ.*, 561 F. Supp. 2d 413, 424 (S.D.N.Y. 2008) (Rakoff, J.) ("[w]hile it is true that the stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination, we have held that when other indicia of discrimination are properly presented . . . the jury has a right to conclude that they bear a more ominous significance"). The cases cited by Defendants are inapposite. *See Dixon v. Int'l Fed'n of Accountants*, No. 10-1924-CV, 2011 WL 1086867, at *1 (2d Cir. Mar. 25, 2011) (finding that a single derogatory remark made by someone with no role in plaintiff's termination could not give rise to an inference of discrimination); *Crawford v. Dep't of Investigation*, 324 F. App'x. 139, 142 (2d Cir. 2009) (finding that because testimony regarding statements indicative of age-bias came from one uncorroborated source, one plaintiff could not testify with specificity regarding the discriminatory statement made to him, and the statement made to another plaintiff came over a year before his termination, plaintiffs could not avoid summary judgment).

Taken as a whole, an issue of fact exists as to whether age was the "but for" cause of State's decision to fire Mr. Fried. *See O'Reilly*, 2011 WL 1897489, at *4 (finding that where plaintiff was subjected to ageist jokes, replaced by a younger employee, and demonstrated that an issue of fact existed as to whether defendant's justification for his termination was pretextual, a reasonable jury could conclude that age was the but for cause of plaintiff's termination);

*Velasquez v. Gates*, No. 08-CV-2215 (CLP), 2011 WL 2181625, at *14 (E.D.N.Y. June 3, 2011) (denying summary judgment where defendant made comments to plaintiff regarding the speed at which she worked and evidence showed that defendant's non-discriminatory reason was false).

## II.    SUMMARY JUDGMENT SHOULD BE DENIED WITH RESPECT TO MR. FRIED'S NYCHRL CLAIM

Claims under the NYCHRL must be reviewed "independently and more liberally from their federal and state counterparts." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009). Courts within the Southern District have made it clear that plaintiffs in age discrimination cases need only prove that age was "a motivating factor" for the adverse employment decision, and have explicitly rejected the application of the "but for" test to claims under the NYCHRL. *See Weiss v. JPMorgan Chase & Co.*, No. 06-CV-4402 (DLC), 2010 WL 114248, at *4 (S.D.N.Y. Jan. 13, 2010); *Hird-Moorhouse v. Belgian Mission to United Nations*, No. 03-CV-9688 (RWS), 2010 WL 3910742, at *6 n. 1 (S.D.N.Y. Oct. 5, 2010). As demonstrated in Point I above, because issues of fact exist as to whether the decision to terminate Mr. Fried's employment meets the "but for" standard of *Gross*, Mr. Fried has shown that he can meet the lower standard under the NYCHRL.

Defendants contend that the NYCHRL is inapplicable to Mr. Fried because he lives in Connecticut and maintained an office there. However, the New York Court of Appeals has held that the NYCHRL applies to non-residents if the discriminatory conduct had an impact within New York City. *Hoffman v. Parade Publis.*, 15 N.Y.3d 285, 289 (2010). Based upon the examples set forth in Mr. Fried's accompanying Declaration, the decision to terminate Mr. Fried undoubtedly had an impact in New York City.

For example, until September 2003, Mr. Fried worked exclusively out of the New York City Office. (Ex. 4, p.45). From that time, through July 2006, Mr. Fried split his time between

the New York City Office and Westport Office. (Ex. 4, p.45-46; Ex. 12, p.65-67; Ex. 13). Thereafter, although Mr. Fried used the Westport Office as his base, he continued to work in New York City for LVI by generating business, overseeing projects, and attending meetings. (Ex. 15, ¶3-5).   Even when Mr. Fried was not physically present in New York City, he made almost daily phone calls to personnel stationed in the New York City Office regarding projects in New York City, or issues concerning the operation of the New York City Office. (Ex. 15, ¶4).

Leading up to Mr. Fried's termination, he was integral in securing one of the largest contracts for LVI in New York City. (Ex. 7, p.39-47).   Moreover, Mr. Fried continued to attend meetings in New York City related to LVI projects and communicated on a daily basis with the New York City Office. (Ex. 15, ¶¶ 6-8).   Until State's hire in September 2010, Mr. Fried functioned essentially as a telecommuter through his constant communications with New York City clients and LVI employees based in New York City. (Ex. 7, p. 55-56).   In addition, State's discriminatory reassignment of Mr. Fried's job duties occurred in New York City and Mr. Fried opposed this action at a Board meeting in New York City.   Also, Mr. Fried was paid by the New York City Office from LVI's New York City controlled bank account. (Ex. 15, ¶10).   State's decision to reassign Mr. Fried's job duties, and eventually terminate him, because of his age, impacted New York City by preventing Mr. Fried from: (1) working on multi-million dollar projects he helped secure; (2) traveling to meet with LVI clients, and potential clients, in New York City; and (3) overseeing employees in the New York City Office.   As such, the NYCHRL applies to Mr. Fried.

Mr. Fried has demonstrated multiple facets in which Defendants' discriminatory conduct impacted him in New York City.   The case-law cited by Defendants is entirely inapplicable because in this case, Mr. Fried has demonstrated not only that the decision to strip him of his

duties occurred in New York City, but that this decision directly impacted him with regards to his work that occurred within New York City.[2]

A finding that the NYCHRL does not apply here would cut directly against the public policy expressed in the statute. The New York City Council amended the NYCHRL in 2005 because the statute had "been construed too narrowly to ensure protection of the civil rights of all persons covered by the law." Local Law No. 85 [2005] of City of NY [Restoration Act]; *see also Williams v. N.Y. City Hous. Auth.*, 61 A.D.3d 62, 66-69 (1st Dep't 2009) ("[t]he independent analysis [of NYCHRL claims] must be targeted to understanding and fulfilling what the statute characterizes as the City HRL's 'uniquely broad and remedial' purposes"). Dismissal of the NYCHRL claim risks doing exactly what the Restoration Act sought to prevent, namely, the narrowing of the statute's protections.

### III.   SUMMARY JUDGMENT SHOULD BE DENIED WITH RESPECT TO MR. FRIED'S RETALIATION CLAIMS

Defendants retaliated against Mr. Fried, in violation of the ADEA and NYCHRL, for complaining about discriminatory conduct by: (1) terminating his employment; and (2) terminating his daughter, Shari Dembin's, employment. In order to establish a *prima facie* case of retaliatory discharge under the ADEA and NYCHRL, a plaintiff must show: (1) he was engaged in a protected activity; (2) the defendant was aware of the protected activity; (3) he was discharged; and (4) there was a causal connection between the protected activity and the termination. *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003). A plaintiff may present proof

---

[2]      *See Germano v. Cornell University*, No. 03-CV-9766 (DAB), 2005 WL 2030355 (finding NYCHRL inapplicable to plaintiff because he did not perform any job-related duties within New York City); *Salvatore v. KLM Royal Dutch Airlines*, No. 98-CV-2450 (LAP), 1999 WL 796172 (S.D.N.Y. Sept. 30, 1999) (finding no impact in New York City where plaintiffs did not allege they were subject to any adverse employment action in New York City and alleged only that isolated offensive acts occurred in New York City); *Casper v. Lew Lieberbaum & Co., Inc.*, No. 97-CV-3016 (JGK), 1998 WL 150993 (S.D.N.Y. Mar. 31, 1998) (finding no impact in New York City where none of the harassing comments were made in New York City). Additionally, Defendants cannot rely on *Lightfoot*, No. 92-CV-6411, 1994 WL 184670 (RPP), because it is not good law after *Hoffman*. *See* 15 N.Y.3d at 289 (finding it is clear from the statute's language that the NYCHRL applies to the inhabitants of New York City).

of causation either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010). The burden that a plaintiff must meet at the *prima facie* stage is de minimis. *Id.* In this case, it is undisputed that Mr. Fried engaged in a protected activity, Defendants were aware of his protected activity, and that Mr. Fried and Ms. Dembin were terminated.

### A. There Was A Causal Connection Between Mr. Fried's Termination And His Protected Activity

There is direct evidence that Mr. Fried was terminated in retaliation for his complaints of age discrimination. Both Girardi and Schnabel testified that in direct response to Mr. Fried's November 15 complaint of age discrimination to State, the Board sent a letter to him terminating his employment. (Ex. 5, p.82-92; Ex. 8, p.138-139, 145-148; Ex. 25). The retaliatory animus was also documented by Girardi who wrote, in his contemporaneous notes, the following: "Burt-sent pre-emptive letter; ignore and send good faith letter offer to Burt Fried." (Ex. 25). The "good faith letter" referenced by Girardi is the letter that terminated Mr. Fried's employment. (Ex. 26).

There is also circumstantial evidence that Mr. Fried was terminated in retaliation for his complaints of age discrimination. Mr. Fried's earliest complaint of discrimination occurred at some point between October 19, 2010 and October 30, 2010 when Mr. Fried contacted multiple members of the Board to oppose State's decision to reassign his job duties because of his age. (Ex. 3, p.54-57; Ex. 8; p.44-45, 48; Ex. 12, p.194-200). Notably, Defendants deny that Mr. Fried complained during this period. In any event, it is undisputed that Mr. Fried complained again regarding age discrimination on both November 4 and November 15. Regardless of which date is used as the operative date of Mr. Fried's first complaint, it is undisputed that he was

terminated less than a month after he complained of age discrimination, supporting an inference of causation. *See Newmark v. Lawrence Hosp. Ctr.*, No. 07-CV-2861 (CS), 2008 WL 5054731, at *9 (S.D.N.Y. Oct. 20, 2008) (finding that an inference of retaliation was created by a temporal proximity of approximately a month and a half between protected activity and adverse action); *see also Yarde v. Good Samaritan Hosp.*, 360 F.Supp.2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation.").

Although Defendants claim that Mr. Fried contemplated transitioning his day-to-day responsibilities to LVI managers as early as 2005, the undisputed facts demonstrate that this is not the case. Rather, in 2005, Mr. Fried decided to step down only as President and CEO, and did so in July 2006 when he assumed the responsibilities as Chairman. Further, before State's hire, the Board never contemplated firing Mr. Fried. Moreover, while Simmons may have expressed his desire to offer Mr. Fried a consulting arrangement in his November 2, 2010 email, it is undisputed that such an offer was not made to until November 16. Finally, it is undisputed that the Board did not reach a conclusion regarding Mr. Fried's employment at LVI during the November 4 Board meeting. The mere fact that an employer considered an adverse action before it was implemented cannot support an award of summary judgment. *See Silver v. N. Shore Univ. Hosp.*, 490 F. Supp. 2d 354, 366 (S.D.N.Y. 2007) ("I reject defendants' argument that there cannot be a retaliation claim because the Institute had decided to fire Silver before he filed the EEOC charge" because defendant did not specify exactly when Mr. Fried was to be discharged).

All the cases cited by Defendants to negate an inference of retaliatory animus are entirely distinguishable. *See e.g. Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (finding no causal connection where the adverse employment actions were part of an

extensive period of progressive discipline which began five months before plaintiff engaged in protected activity); *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 582 (S.D.N.Y. 2010) (finding plaintiff was unable to establish a causal connection where his documented and undisputed poor performance began significantly earlier than his protected activity). In light of the direct evidence of retaliation and the temporal proximity between Mr. Fried's complaints of discrimination and his termination, issues of fact exist regarding Mr. Fried's retaliation claims.

    **B.**    **A Causal Connection Between Ms. Dembin's Termination And Mr. Fried's Protected Activity**

Mr. Fried's daughter, Ms. Dembin, began working for LVI in 1996 and had been based out of the Westport Office starting in 2003 when it opened. Throughout the entirety of her employment, Ms. Dembin was viewed as a quality performer. As stated above, it is undisputed that Mr. Fried complained regarding age discrimination on October 19, 2010 at the earliest, and November 4, 2010 at the latest. It is further undisputed that some time after November 13, 2010, Ms. Dembin's name came up for the first time during a discussion of a potential reduction-in-force ("RIF") and the first time her name appeared on a list of employees who would be affected by the RIF was on December 21, 2010, less than two months after Mr. Fried's earliest complaints of age discrimination. (Ex. 4, p.161-166; Ex. 7, p.150-151; Ex. 32; Ex. 35). Thus, an issue of fact exists based on the temporal proximity between Mr. Fried's protected activity and the decision to layoff Ms. Dembin. *Wright v. N.Y. City Off–Track Betting Corp.*, No. 05-CV-9790 (WHP), 2008 WL 762196, at *5 (S.D.N.Y. Mar. 24, 2008) (stating generally that an inference of retaliation may be created indirectly when the temporal proximity is under two months).

Defendants' legitimate, non-discriminatory reason for Ms. Dembin's termination was that LVI decided to close the Westport Office. However, Ms. Dembin's inclusion in a RIF does not

automatically shield Defendants from any liability concerning the decision to terminate her employment. *Hird-Moorhouse*, 2010 WL 3910742, at *5 ("reorganization may not be used as a pretext to remove or demote a particular employee, particularly where that employee is a member of a protected class"). Defendants rely heavily on the fact that the decision to close the Westport Office was made on October 29, 2010, however, Girardi testified that as of November 16, 2010, no decision had been made to close the office. (Ex. 5, p.86-87, 95). As case-law cited approvingly by Defendants reveals, mere contemplation of an action prior to protected activity cannot negate a retaliatory inference created by the temporal proximity between protected activity and the adverse action. *See Deebs v. Alstom Transp., Inc.*, 346 F. App'x. 654, 658 (2d Cir. 2009) (finding no inference of retaliation created where plaintiff had a previous poor performance record and was terminated on the basis of that record); *see also Silver* at 366. Even if State was contemplating closure of the Westport Office in October, it is undisputed that Ms. Dembin's name was not raised at all until after November 13, 2010. Additionally, it is undisputed that the same actor who discriminated against Mr. Fried also made the decision to terminate Ms. Dembin. Finally, prior to the RIF in January 2011, LVI had multiple layoffs in previous years and Ms. Dembin was not laid off, even though she was making $85,000 per year and allegedly had duties that "could be performed by any capable person paying attention." (Ex. 4, p.157, 175-177). Considering the temporal proximity, as well as evidence demonstrating that Defendants' non-retaliatory reason is pretexual, an issue of fact exists concerning whether Defendants' legitimate, non-discriminatory reason for Ms. Dembin's termination was pretextual. *See Newmark* at *9 (denying summary judgment where plaintiff used temporal proximity to establish the *prima facie* case and there was an issue of fact concerning defendant's stated non-retaliatory reason for termination).

24

## IV.    THE INDIVIDUAL DEFENDANTS AIDED AND ABETTED IN THE DISCRIMINATION AND RETALIATION AGAINST MR. FRIED

Under the NYCHRL, an individual who "actually participates in the conduct giving rise to a discrimination claim" may be held liable. *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004). In this case, the record demonstrates that State made numerous age-related comments regarding Mr. Fried. Even after Mr. Fried complained of discrimination to Bagaria, Simmons and Girardi, they did not investigate his complaints and continued to support State. *See Feingold* at 158 (finding an issue of fact existed concerning individual liability where the individuals failed to take remedial action to rectify a hostile work environment and then terminated plaintiff's employment based on impermissible factors). Finally, State, Girardi and Simmons participated in a call where it was decided that Mr. Fried should be fired for complaining about discrimination. Accordingly, an issue of fact exists as to aider and abettor liability.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that Defendants' motion for summary judgment be denied.

Dated: June 20, 2011
        New York, New York

Respectfully submitted,

THOMPSON WIGDOR LLP

By: /s/ Shaffin A. Datoo
        Douglas H. Wigdor
        Shaffin A. Datoo
        Matthew D. Gorman

85 Fifth Avenue
New York, New York 10003
Tel: (212) 257-6800
Fax: (212) 257-6845

*Counsel for Plaintiff*