# 13-1165-cv

## United States Court of Appeals

### for the

### Second Circuit

SHARI L. DEMBIN,

*Plaintiff,*

BURTON T. FRIED,

*Plaintiff-Appellant,*

– v. –

LVI SERVICES, INC., LVI PARENT CORP., SCOTT E. STATE,

*Defendants-Appellees.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

THOMPSON WIGDOR LLP
*Attorneys for Plaintiff-Appellant*
85 Fifth Avenue
New York, New York 10003
(212) 257-6800

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT ............................................................1

ARGUMENT ......................................................................................3

   I.   THE DISTRICT COURT ERRED BY NOT CONSIDERING WHETHER
      MR. FRIED HAD AN OPPORTUNITY TO FULLY AND FAIRLY
      LITIGATE HIS CFEPA CLAIMS IN THE NEW YORK ACTION ............3

  II.   MR. FRIED SIMPLY DID NOT HAVE AN OPPORTUNITY TO
      FULLY AND FAIRLY LITIGATE HIS CFEPA CLAIMS IN THE
      NEW YORK ACTION ....................................................................5

 III.   MR. FRIED'S ACTIONS WERE IN GOOD FAITH AND SHOULD
      NOT PREVENT THE INSTANT ACTION FROM BEING DECIDED
      ON ITS MERITS ..........................................................................8

      a.  *Mr. Fried's Belief That He Had Standing to Assert Claims Under*
         *the NYCHRL and Thus Did Not Need to Bring CFEPA Claims*
         *Immediately in the New York Action Was Justified* ............................9

      b.  *Mr. Fried Was Justified in Not Seeking A Stay and/or*
         *Moving to Amend His Complaint to Assert CFEPA Claims*
         *in the New York Action* .....................................................12

 IV.   THE PUBLIC POLICY CONCERNS UNDERPINNING THE DOCTRINE
      OF RES JUDICATA ARE SIMPLY NOT AT PLAY HERE .....................14

  V.   THE CASES CITED BY DEFENDANTS ARE INAPPOSITE ..................16

 VI.   CONTRARY TO DEFENDANTS' CONTENTIONS, THE CASES
      CITED BY THE DISTRICT COURT ARE READILY
      DISTINGUISHABLE FROM THE INSTANT ACTION ...........................19

VII.    DEFENDANTS HAVE PUT FORTH A FICTIONALIZED ACCOUNT
        OF THE FACTS BY MAKING NUMEROUS ALLEGATIONS
        DEVOID OF SUPPORT IN THE RECORD.................................................23

   CONCLUSION ......................................................................................26

# TABLE OF AUTHORITIES

## CASES

Bank Of India v. Trendi Sportswear, Inc.,
    239 F.3d 428 (2d Cir. 2000) ..........................................................................5

Barnes v. Royal Health Care LLC,
    357 Fed.Appx. 375 (2d Cir. 2009) (SUMMARY ORDER) ..................22, 23

Cayer Enterprises, Inc. v. DiMasi,
    84 Conn.App. 190 (Conn.App.2004) ............................................................5

Channer v. Dep't. of Homeland Sec.,
    527 F.3d 275 (2d Cir. 2008) ........................................................................4

Chien v. Skystar Bio Pharmaceutical,
    623 F.Supp. 2d 255 (D. Ct. 2009) ..............................................................19

Devlin v. Transp. Commc'ns Int'l Union,
    175 F.3d 121 (2d Cir. 1999) ......................................................................21

Dwyer v. Waterfront Enterprises, Inc.,
    CV126032894S, 2013 WL 2947907 (Conn. Super. Ct. May 24, 2013) .........4

Gross v. FBL Financial Services,
    557 U.S. 167 (2009)......................................................................................4

Harte v. Woods Hole Oceanographic Inst.,
    495 F. App'x 171 (2d Cir. 2012)..................................................................2

Hoffman v. Parade Publ'ns.,
    907 N.Y.S.2d 145, 148, 933 N.E.2d 744 (2010) ...........................................2

Martin v. Town of Westport,
    558 F.Supp. 2d 228 (D. Conn. 2008) .........................................16, 17, 18, 19

Martin v. Town of Westport,
    FSTCV054002886S, 2007 WL 241237 (Conn. Super. Ct. Jan. 17, 2007) ...17

Menella v. Office of Court Admin.,
    1998 WL 650816 F.3d 618 (2d Cir. 1998) (SUMMARY ORDER)............ 21

Montana v. United States,
    440 U.S. 147 (1979)...............................................................................4

Saunders v. Principal Residential Mtg., Inc.,
    11-cv-1817 (VLB), 2012 WL 4321974 (D. Ct. Sept. 20, 2012) ..................19

Sundwall v. Basil,
    05-cv-816, 2006 WL 1699594 (D. Ct. June 16, 2006).................................19

Tirozzi v. Shelby Ins. Co.,
    50 Conn.App. 680 (1998) ...........................................................................5

Tremalio v. Demand Shoes, LLC,
    3:12-CV-00357 (VLB), 2013 WL 5445258 (D. Conn. Sept. 30, 2013) .........4

Washington v. Blackmore,
    08-cv-632 (SRU), 2011 WL 572363 (D. Ct. Feb. 14, 2011)........................19

Wilkes v. Wyoming Dep't of Employment Div. of Labor Standards,
    314 F.3d 501 (10th Cir. 2002) ....................................................................21

Woods v. Dunlop Tire Corp.,
    972 F.2d 36 (2d Cir. 1992) ....................................................................20, 21

## STATUTES

Conn.Gen.Stat. §46a-101.........................................................................13

## PRELIMINARY STATEMENT

As set forth below, Mr. Fried's truly unique and unprecedented circumstances warrant a departure from the harsh, unforgiving application of the doctrine of res judicata which the District Court below endorsed. To deprive Mr. Fried of the ability to simply have his age discrimination claims finally heard and decided on their merits would serve neither judicial economy nor expediency, but will be a grave injustice that this Court should not affirm.

Indeed, Mr. Fried initiated the New York Action in late-2010 with the good faith and reasonable belief, based on common sense and leading precedent, that he could obtain redress for Defendants' violations of his civil rights under the human rights laws of the City of New York. While Mr. Fried may have also been able to assert claims under the civil rights laws of other jurisdictions, including Connecticut's, there was simply no need to do so (other than to drive up litigation costs and waste administrative and judicial resources) when all remedies and recourses he could seek were available under the NYCHRL (as well as identical standards and burden of proof as the CFEPA). However, by the time this Court heard Mr. Fried's appeal of the New York Action in late-2012, this Circuit's law concerning the NYCHRL dramatically shifted. Indeed, it was in this Court's very order affirming the New York district court that this Court, for the first time, held that an individual with significant and sustained contact with New York City, such

as Mr. Fried, would nonetheless not be protected by the NYCHRL, merely because

he "*did not work in New York City*." (A-1314).[1]

However, this abrupt determination that Mr. Fried could not avail himself of

the NYCHRL still left squarely unaddressed a key legal question – whether Mr.

Fried has put forth sufficient evidence such that a reasonable jury could find that

age was a motivating factor in Defendants' termination of his employment; an

answer to which Mr. Fried could indisputably still attain, even after Defendants

prevailed at the summary judgment stage of the New York Action, by asserting his

then unexhausted Connecticut Fair Employment Practices Act ("CFEPA") age

discrimination claims in a court.

---

[1]     Indeed, just a month before this Court issued its opinion in connection with the appeal of the New York Action, a panel of this Court held that, in order for a non-New York resident to have standing to bring a claim under New York's civil rights statutes, there must be more than an allegation that "an adverse employment decision [was] made in New York; he must also allege that the defendant's "alleged discriminatory conduct *had an impact* in New York." Harte v. Woods Hole Oceanographic Inst., 495 F. App'x 171, 172-73 (2d Cir. 2012) (emphasis added) (citing Hoffman v. Parade Publ'ns., 907 N.Y.S.2d 145, 148, 933 N.E.2d 744 (2010)). Significantly, the Harte panel did not define "impact" as only "working in," which the subsequent panel hearing the appeal of Mr. Fried's New York Action held. (A-1314). The fact that Mr. Fried's earlier appeal was a case of first impression for this Court wherein the Court held for the first time that the mere location of one's workplace was dispositive of their standing to bring NYCHRL claims, just further underscores the reasonableness of Mr. Fried's belief that he had standing to assert NYCHRL age discrimination claims, particularly given the extensive New York City connections his employment had, including, *inter alia*, that the decision to terminate his employment from LVI was made in New York City, as well as his direct involvement in securing LVI work on major New York City projects, which would go on to employ hundreds of New Yorkers. (See *infra*, Section III(a); A-773-777). As such, Mr. Fried's good faith belief and confidence in the viability of his NYCHRL claims during the pendency of the New York Action (which admittedly caused Mr. Fried to file a charge with the CHRO when he did in May, 2011), should not now be used against Mr. Fried to foreclose his ability to simply have his CFEPA claims heard on their merits,

And this is precisely what Mr. Fried then did by asking the District Court below, sitting in the state of Connecticut, to simply answer this one yet unresolved question pertaining to Connecticut's civil rights statute. However, the District Court, relying upon inapposite precedent and ignoring Mr. Fried's lack of opportunity to fully and fairly litigate his CFEPA claims in the New York Action, barred the instant action on the basis of the judicially-created procedural doctrine of res judicata, unjustly depriving Mr. Fried from having his CFEPA claims heard on their merits. Mr. Fried submits that this ruling by the District Court was in error, and respectfully asks this Court to consider Mr. Fried's truly unique circumstances, and the inequity which will result if Mr. Fried is yet again barred from simply having a court hear the merits of his age discrimination claims, and reverse the District Court's holding accordingly.

## **ARGUMENT**

### **I.    THE DISTRICT COURT ERRED BY NOT CONSIDERING WHETHER MR. FRIED HAD AN OPPORTUNITY TO FULLY AND FAIRLY LITIGATE HIS CFEPA CLAIMS IN THE NEW YORK ACTION.**

Despite Mr. Fried's compelling claims of age discrimination, he has yet to have a court examine those claims under the motivating factor standard. Instead, in dismissing his age claim, the District Court erroneously concluded that Mr. Fried was barred by the doctrine of res judicata without examining whether he had an opportunity to fully and fairly litigate his age claims under the motivating factor

3

standard.[2]  Indeed, contrary to Defendants' contentions, courts regularly analyze whether a litigant has had a full and fair opportunity to litigation her claims when determining whether to apply the doctrine of res judicata to bar a subsequent suit. In fact, the United States Supreme Court, in <u>Montana v. United States</u>, explicitly held that the application of res judicata serves "to preclude parties from contesting matters that they have had a *full and fair opportunity* to litigate."  440 U.S. 147, 153-54 (1979) (emphasis added).  Consequently, this Court, as well as courts in Connecticut, have repeatedly followed the Supreme Court's directive in <u>Montana</u> and have analyzed, prior to imposing the doctrine of res judicata to bar an action, whether a "full and fair opportunity to litigate" was available.  <u>See</u> <u>Channer v. Dep't. of Homeland Sec.</u>, 527 F.3d 275, 279 (2d Cir. 2008) ("Res judicata evokes the common law principles of judicial economy and comity. … *Provided the parties have had a full and fair opportunity to litigate the matter*…) (emphasis

---

[2]    Although the Supreme Court's endorsed the "but-for" standard of proof in the ADEA age discrimination context in <u>Gross v. FBL Financial Services</u>, 557 U.S. 167 (2009), there has yet to be a ruling from the Connecticut Supreme Court as to whether this standard applies to CFEPA age discrimination claims.  However, most Connecticut courts continue have eschewed the "but-for" standard, and instead apply the "motivating factor" standard when analyzing CFEPA age discrimination claims.  <u>See</u> <u>Tremalio v. Demand Shoes, LLC</u>, 3:12-CV-00357 (VLB), 2013 WL 5445258, at *21 (D. Conn. Sept. 30, 2013) ("under CFEPA, once the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff must only come forward with evidence that age discrimination was a contributing or motivating factor in his termination and does not have to demonstrate that his age was the "but-for" cause of the adverse action"); <u>Dwyer v. Waterfront Enterprises, Inc.</u>, CV126032894S, 2013 WL 2947907, at *8 (Conn. Super. Ct. May 24, 2013) ("in accordance with the liberal construction afforded to CFEPA, Dwyer need only plead that his physical disability was a motivating factor in his termination.").

added); <u>Bank Of India v. Trendi Sportswear, Inc.</u>, 239 F.3d 428, 439 (2d Cir. 2000) (same); <u>Cayer Enterprises, Inc. v. DiMasi</u>, 84 Conn.App. 190, 194 (Conn.App.2004) ("Res judicata requires, inter alia, a previous judgment on the merits in which the party had a *full and fair opportunity to litigate* the matter.") (emphasis added); <u>Tirozzi v. Shelby Ins. Co.</u>, 50 Conn.App. 680, 686 (1998) ("We further emphasize that where a party has *fully and fairly litigated his claims*, he may be barred from future actions on matters not raised in the prior proceeding.") (emphasis added).  As such, the District Court erred by not considering whether Mr. Fried's was able to fully and fairly litigate his CFEPA claims in the New York Action.

## II.    MR. FRIED SIMPLY DID NOT HAVE AN OPPORTUNITY TO FULLY AND FAIRLY LITIGATE <u>HIS CFEPA CLAIMS IN THE NEW YORK ACTION.</u>

Notwithstanding Defendants' incorrect contentions to the contrary, for the reasons stated below and in Mr. Fried's opening brief (<u>see</u> Brief at 24-29),[3] Mr. Fried clearly did not have a full and fair opportunity to bring forth and litigate his CFEPA claims in the New York Action.  This is demonstrated by the reality that no court has ever determined whether Mr. Fried's age was a motivating factor in Defendants' decision to terminate him, which necessarily means that there has yet

---

[3]    The Brief for Plaintiff-Appellant will be cited as "(Brief at __)," while the Brief for Defendants-Appellees will be cited herein as "(Opp. at __)."

5

to be a full adjudication of the merits of Mr. Fried's CFEPA claims - a requisite which must be met in order for the doctrine of res judicata to apply.

As Defendants note in their brief, two of the factors that may be considered in evaluating whether there has been a full and fair opportunity to litigate a claim for purposes of a res judicata analysis include whether: (1) the court in the first action lacked jurisdiction to entertain a theory or ground; and (2) whether the court would have declined to exercise jurisdiction over a theory or ground as a matter of discretion.  (Opp. at 20-21).  Here, the New York Court unquestionably lacked the authority to entertain Mr. Fried's CFEPA causes of action for the simple fact that these claims did not ripen and become actionable in any court (much less the New York district court) until the Connecticut Commission of Human Rights and Opportunities ("CHRO") released its jurisdiction over them.  In fact, the CHRO released jurisdiction over Mr. Fried's CFEPA claims on October 17, 2011, several weeks after Judge Rakoff had already granted summary judgment to Defendants on all but a single piece of Mr. Fried's ADEA retaliation claim.  Thus, the New York district court's sheer inability to even exercise jurisdiction over Mr. Fried's CFEPA until a stage at which the case was all but fully dismissed (but when the pertinent question of whether Mr. Fried's age was a motivating factor in Defendants' termination of his employment remained unresolved) clearly demonstrates that Mr. Fried lacked an opportunity to fully and fairly litigate his

6

CFEPA claims, and thus was not precluded from bringing the instant action on the basis of res judicata.

Further, even during the two day period in which Mr. Fried actually had standing to request to amend his complaint to bring CFEPA claims before the New York district court (*i.e.*, between October 17, 2011 when the New York Court first could even entertain Mr. Fried's CFEPA claims, and October 19, 2011 when the parties stipulated to dismissing the New York Action in full), there was a distinct likelihood that the court would have declined jurisdiction as a matter of discretion, given that: (1) the court had already scheduled a trial for the week of December 5, 2011 for Mr. Fried's sole surviving ADEA retaliation claim; and (2) the court had already required the parties to adhere to a highly expedited case management/discovery schedule, from which the court would likely have not been inclined to depart, particularly at that late stage of the action.

Additionally, it is indisputable that Mr. Fried's CFEPA claims were not resolved by the New York district court's decision granting Defendants' motion for summary judgment of the New York Action, as there had been no adjudication on the question of whether Mr. Fried's evidence of age discrimination met the lower, "motivating factor" standard of proof that CFEPA claims are analyzed under, given that Judge Rakoff narrowly dismissed Mr. Fried's NYCHRL claims based

on his standing to assert them, and not on their merits.[4]  Accordingly, it can hardly be said that Mr. Fried was afforded a full and fair opportunity to litigate his CFEPA age discrimination claims, rendering the District Court's holding barring this action on the basis of res judicata in error.

## III.    MR FRIED'S ACTIONS WERE IN GOOD FAITH AND SHOULD NOT PREVENT THE INSTANT ACTION FROM BEING DECIDED ON ITS MERITS.

In addition to never being afforded an opportunity to fully and fairly adjudicate his CFEPA claims, Mr. Fried's actions and decisions pertaining to the litigation of the New York Action were in good faith, rendering it inequitable and in error for the District Court to bar the instant action on the basis of res judicata. Specifically, contrary to Defendants' contentions, Mr. Fried's CFEPA claims should not have been precluded because, *inter alia*: (1) Mr. Fried, in good faith, thought he held viable New York City Human Rights Law claims, which obviated the need to bring redundant CFEPA claims, which would have wasted resources and time; (2) holding Mr. Fried at fault for not inserting a "placeholder" for Mr. Fried's CFEPA claims in his complaint in the New York Action, when there was

---

[4]    Contrary to Defendants' incorrect reading of this Court's earlier opinion in connection with the appeal of the New York Action, this Court did not conclude that Mr. Fried "had failed to set forth sufficient evidence to permit a reasonable jury to find that he had been discriminated against because of his age," (Opp. at 5), but actually found only that Mr. Fried could not meet the heightened ADEA standard of proof (which is not applicable to CFEPA age discrimination claims), which required Mr. Fried to support a finding that "but-for" his age, he would not have been terminated, and that Defendants' non-discriminatory reason for his termination was pretext for age discrimination. (A-1313).   Defendants' mischaracterization of this Court's previous holding should be disregarded.

not even a CHRO charge pending, is unreasonable; (3) faulting Mr. Fried for not requesting an early release of jurisdiction from the CHRO and then moving to amend his complaint to assert CFEPA claims is shortsighted, given that there was no guarantee that the CHRO would have granted this request, and that doing so would have been futile had there simply been a merits adjudication of Mr. Fried's NYCHRL claims (which would have invariably resolved his CFEPA claims); and (4) requesting a stay of the New York Action and/or leave to amend following the CHRO's release of jurisdiction over his CHRO claims was simply impracticable given the circumstances and procedural posture of the New York Action, and would likely have been denied.

### a. *Mr. Fried's Belief That He Had Standing to Assert Claims Under the NYCHRL and Thus Did Not Need to Bring CFEPA Claims Immediately in the New York Action Was Justified.*

Mr. Fried's decision to pursue NYCHRL discrimination from the start of the New York Action rather than redundant CFEPA claims was in good faith and soundly based on common sense and judicial precedent concerning the NYCHRL at that time. For instance, to say that Mr. Fried had extensive contacts with New York City, and that the termination of his employment by LVI had an "impact" on New York City would be a gross understatement. Indeed, Mr. Fried was born and raised in New York City, and lived in the City for over sixty-three (63) years. After attending law school in New York City, Mr. Fried spent his entire pre-LVI

career working in the City.  He then joined LVI, a New York City-based company, where he worked out of its New York City offices for the vast portion of the next twenty (20) years in which he served as LVI's President and CEO, and subsequent four (4) years serving as its Chairman.  (A-773-777).  Under Mr. Fried's leadership, LVI became the largest, most successful, and only national company in its field.  In fact, prior to his unlawful termination, Mr. Fried personally negotiated and secured LVI's involvement in some of the largest and most visible projects in New York City, including the Deutsche Bank building construction, the new Yankee Stadium construction, the Hudson Yards Redevelopment Project, and the Madison Square Garden transformation – projects which employed hundreds of New Yorkers and reshaped the landscape of New York City.  (A-773-777).  As such, it is abundantly evident that Mr. Fried's belief that his employment activities (and unlawful termination therefrom) had an "impact in New York City" such that he had standing to seek the protection of the New York City Human Rights Law (and did not need to immediately avail himself of the protection of any other local civil rights statutes) was unquestionably justified.

In addition, Mr. Fried's good faith belief that there was no need to bring CFEPA age discrimination claims in the New York Action based of his standing to seek redress under the New York City Human Rights Law until the time he filed his CHRO charge in May, 2011, is further justified when one considers that

Defendants disregarded numerous opportunities early in the New York Action to notify Mr. Fried that his standing to bring NYCHRL claims would be challenged, such as by including this argument in Defendants' motion to dismiss the New York Action, or through pleading this as an affirmative defense in their Answer to the Amended Complaint. (A-981-1002). However, as defense counsel admitted at oral argument before the District Court below, Mr. Fried was put on notice of this specific standing-based challenge to Mr. Fried's NYCHRL claims "then [the parties] began depositions in [the New York] matter" (which commenced with Mr. Fried's deposition on May 20, 2011 (see A-621)), as the parties by then "had had some conversation regarding [Mr. Fried's] ability to raise a claim under the New York City human rights law." (see Dkt. No 67 at 50-51),

As such, by Defendants' own account, as soon as it became known to Mr. Fried that his standing to bring NYCHRL claims would be challenged, and that his CFEPA age discrimination causes of action needed preservation, Mr. Fried immediately filed his charge with the CHRO on May 16, 2011. (A-288-295). Accordingly, Defendants' accusations that Mr. Fried was purposely seeking to hold CFEPA claims in his "back pocket" (Opp. at 28) and brought his CHRO charge "late" (Opp. at 15) have no merit, as the facts reveal that Mr. Fried diligently filed a charge with the CHRO at the earliest instance in which he learned that his standing to bring NYCHRL claims would be contested.

11

In addition, other than to drive up litigation costs and force Defendants to have to respond to a charge filed with the CHRO, there was little need for Mr. Fried to pursue CFEPA claims given that the CFEPA and the New York City Human Rights Law shared near-identical standards of proof (see Brief at 25, n.2), and the remedies available under the CFEPA are also available under the NYCHRL.

### b. *Mr. Fried Was Justified in Not Seeking A Stay and/or Moving to Amend His Complaint to Assert CFEPA Claims in the New York Action.*

Defendants' position that Mr. Fried could have put a "placeholder" in his complaint in the New York Action (as he did with his ADEA claims) notifying the court of his intention to amend his complaint once the CHRO released jurisdiction of his CFEPA claims (see Opp. at 15) is untenable, given that Mr. Fried only filed his charge with the CHRO (and first had standing to even seek to include a placeholder) on May 16, 2011, upon learning that Mr. Fried's NYCHRL claims may be dismissed without an adjudication of their merits. In addition, had the New York district court simply determined whether Mr. Fried's age could be found by a reasonable jury to have been a motivating factor in his termination, any CFEPA claims Mr. Fried held would have been collaterally estopped.

Further, as was noted in Mr. Fried's opening brief, the District Court below failed to consider the impracticability of requesting a stay of the New York Action

given the particular procedural posture of the New York Action at the time Defendants allege Mr. Fried should have sought a stay. (See Brief at 27-29). Indeed, Mr. Fried only had standing to request a stay of the New York Action in order to assert his CFEPA claims beginning May 16, 2011 when he filed a charge with the CHRO. However, by then, the close of fact discovery in the New York Action was a mere two weeks away, with Defendants' deadline to move for summary judgment just weeks thereafter. (A-351-352). As such, the District Court below erred when it failed to consider how highly impracticable it was for Mr. Fried to request what would have been a lengthy stay of the New York Action until the CHRO released jurisdiction of his CFEPA claims - a request likely to be rejected given Judge Rakoff's desire to hold the parties to a strict and expeditious case management plan.

Significantly, Mr. Fried did not sit on his rights once he filed a CHRO charge. Rather, when the CHRO released jurisdiction after approximately 154 days - well within the minimum 180-day period Mr. Fried would have had to wait before he could request a release (see Conn.Gen. Stat. §46a-101), but unfortunately six weeks after summary judgment was granted to Defendants without opinion, and two days before the New York Action was dismissed - Mr. Fried promptly filed his CFEPA claims with the District Court a mere six weeks after receiving the release. Accordingly, Mr. Fried's diligence runs contrary to the actions of the

13

plaintiffs in the cases the District Court relied on, in error, in its opinion.  (See, *infra*, Section VI and Brief at 30-45).

### IV.    THE PUBLIC POLICY CONCERNS UNDERPINNING THE DOCTRINE OF RES JUDICATA ARE SIMPLY NOT AT PLAY HERE.

As discussed in Mr. Fried's opening brief (Brief at 50-54), the public policy concerns that underlie the doctrine of res judicata were simply not at issue when the District Court decided to dismiss the instant action.  For one, any concern over preventing prejudice to Defendants by the filing of a second action was minimal, given that: (1) Defendants knew fully that Mr. Fried intended to vindicate his rights pursuant to the CFEPA, and would have had to defend these claims regardless of which forum they were brought; (2) the parties did not need to engage in any additional discovery whatsoever in the action below, but proceeded straight to summary judgment briefing; and (3) the parties had already largely briefed the merits of Mr. Fried's CFEPA age discrimination claims, given that the CFEPA shares virtually identical standards of proof as the NYCHRL (see Brief at 25, at n.2), and with solely the question of whether Mr. Fried can put forth sufficient evidence for a reasonable jury to find that age was a motivating factor in his termination needing resolution.

Further, Mr. Fried's decision to merely ask the District Court below, sitting in Connecticut, to apply Connecticut's civil rights statute to the facts of his case to

answer a question that had yet to be adjudicated (*i.e.*, whether Mr. Fried's evidence would meet the "motivating factor" standard of proof), but which would require the District Court to opine on a discreet issue of open Connecticut law (*i.e.*, whether the ADEA's "but-for" standard of proof should apply to CFEPA age discrimination claims), rather than ask the New York district court to make such a ruling on nuanced Connecticut law, simply did not pose the type of prejudice to Defendants or waste of judicial resources which the doctrine of res judicata was created to guard against.  Mr. Fried did not cause the District Court to expend any more resources than any other court (including the New York district court) would have to expend, but merely asked the District Court to rule on Defendants' summary judgment motion, and to preside over the trial in this matter; the same things the parties would have asked of the district court in the New York Action.

Moreover, despite Defendants' self-serving assertions to the contrary, Defendants did benefit from the dismissal of the New York Action and Mr. Fried's waiver of a trial on his remaining ADEA retaliation claim.  Indeed, it is difficult to fathom that the costs and time associated with preparing for and trying a case before a jury are not significantly more than those incurred in connection with drafting and arguing a summary judgment brief, particularly one based largely on facts and questions which had largely already been addressed (but not all decided).

Accordingly, the harsh, unforgiving, and inequitable result created by the District Court's decision to bar this action pursuant to the doctrine of res judicata leaves Mr. Fried, who dedicated 24 years of his life serving as a Senior Executive to Defendant LVI, and who was abruptly terminated and explicitly told that his age was the reason why this was occurring, yet to have a single court adjudicate the merits of one simple question: has he put forth sufficient evidence such that a reasonably jury could find that his age played a motivating factor in Defendants' decision to end his employment?  Had any of the three previous courts who have been asked this question simply answered this question – a question which Mr. Fried has no doubt will be answered in the affirmative – there would of course be no need for the instant appeal.  Nevertheless, this Court now has the opportunity to award some semblance of justice to Mr. Fried by reversing the District Court's decision to bar Mr. Fried's instant suit, and can remand this case back to the court below so that Mr. Fried can finally have his CFEPA age discrimination claims heard fully on the merits.

## V.    THE   CASES   CITED   BY   DEFENDANTS   ARE INAPPOSITE.

Contrary to Defendants' contentions, neither Martin v. Town of Westport, 558 F.Supp.2d 228 (D. Conn. 2008), nor the other cases Defendants point to as supporting the District Court's holding are on point.  Specifically, in Martin, plaintiff Robert Martin displayed an unsympathetic penchant for delay and waste

16

of judicial resources, which rightfully resulted in his second suit's dismissal on the basis of res judicata.

In Martin, plaintiff first filed a suit related to his employment against defendants on January 5, 2005 in Connecticut Superior Court ("Martin I"). Prior to filing Martin I, Martin filed a CHRO discrimination complaint on October 26, 2004, meaning that Martin could unilaterally seek a release of the CHRO's jurisdiction on May 24, 2005, or 210 days thereafter. 558 F.Supp.2d at 239. However, rather than seek a release of jurisdiction, Martin took no action, and instead waited for the CHRO to issue a release of jurisdiction *sua sponte*, which it did on January 17, 2006, or **_238_** days after Martin could have done so himself. Id.

Defendants in Martin I moved for summary judgment on March 8, 2006, which was **_288_** days after Martin first could have sought a release of jurisdiction from the CHRO, and still more than 50 days after he was issued a release of jurisdiction by the CHRO. Martin v. Town of Westport, FSTCV054002886S, 2007 WL 241237, at *2 (Conn. Super. Ct. Jan. 17, 2007) aff'd, 108 Conn. App. 710, 950 A.2d 19 (2008). On April 7, 2006, 80 days after he received his release of jurisdiction, Martin filed a second suit in Connecticut state court (which was later removed to federal court) against the same defendants alleging CFEPA violations ("Martin II"). Martin, 558 F.Supp.2d at 239.

On January 17, 2007, **_603_** days after Martin could have first sought a release of jurisdiction of his CFEPA claims, and **_303_** days after he actually received a release of jurisdiction from the CHRO, Martin I was dismissed. Id. at 239, n.4.

At the summary judgment stage, the Martin II court took issue with Martin's dilatory actions, and held that Martin II was barred by the doctrine of res judicata, finding that there was "no doubt that, after January 26, 2007 [the date the CHRO issued a release of jurisdiction], the Connecticut Superior Court _clearly had jurisdiction over Martin's CFEPA claims_." Id. at 239 (emphasis added).  The Martin II court further noted that, because Martin I was still pending in Connecticut Superior Court at the same time Martin was able to assert his CFEPA claims in court, Martin could have easily amended his complaint in Martin I to include his CFEPA claims, which "would have been vastly preferable." Id.  Thus, clearly the Martin court took offense to Martin's decision to sit on his rights and forum shop, including his failure to seek a release of jurisdiction on his own initiative, and his failure to bring his claims in a pending action which had yet to even reach the summary judgment briefing stage.  Accordingly, the court rightly held that Martin II was worthy of dismissal pursuant to the doctrine of res judicata.[5]

---

[5]     It bears noting that the Martin court, despite finding that res judicata applied to bar Martin's CFEPA claims, nevertheless proceeded to adjudicate Martin's CFEPA claims on their merits, demonstrating that the policy considerations underlying the harsh bar of res judicata,

As such, contrary to Defendants' contention, <u>Martin</u> is simply not on point, as the extraordinarily dilatory actions on the part of the <u>Martin</u> plaintiff, who literally sat on his ability to bring CFEPA claims until the very last moment (when the CHRO *sua sponte* issued a release of jurisdiction), and then, despite facing no obstacles to bringing his CFEPA claims in an already pending action against defendants, inexplicably filed a second suit, cannot be compared at all with the good faith and diligent actions of Mr. Fried.  Indeed, the plaintiff in <u>Martin</u>'s abundant opportunity to litigate his CFEPA claims in the Martin I state action can hardly compare to the lack of so much as an "adequate" opportunity for Mr. Fried to have done so in the New York Action.[6]

## VI.    CONTRARY TO DEFENDANTS' CONTENTIONS, THE CASES CITED BY THE DISTRICT COURT ARE READILY DISTINGUISHABLE FROM THE INSTANT ACTION.

---

even in egregious situations of waste and delay such as <u>Martin</u>'s, should not preclude viable claims of civil rights violations from being adjudicated fully on their merits.  558 F. Supp. at 240-246.

[6]    Further, the other cases cited by Defendants as supporting the District Court's holding (Opp. at 22-23) do not concern litigants who must meet administrative requirements which prevent a claim from being immediately brought in court, and thus are inapposite to the action at hand and should be disregarded.  <u>See Saunders v. Principal Residential Mtg., Inc.</u>, 11-cv-1817 (VLB), 2012 WL 4321974 (D. Ct. Sept. 20, 2012) (prior foreclosure action precluded subsequent action alleging fraud, conversion, and violations of TILA and RICO); <u>Washington v. Blackmore</u>, 08-cv-632 (SRU), 2011 WL 572363 (D. Ct. Feb. 14, 2011) (prior action concerning arrest and prosecution of plaintiff after leaving a bus precluded subsequent claim related to unlawful seizure aboard bus); <u>Chien v. Skystar Bio Pharmaceutical</u>, 623 F.Supp. 2d 255 (D. Ct. 2009) (dismissal of action alleging securities violations precluded subsequent action alleging new causes of action arising from same events as first action); <u>Sundwall v. Basil</u>, 05-cv-816, 2006 WL 1699594 (D. Ct. June 16, 2006) (dismissing claims arising out of same nucleus of operative facts as earlier actions involving efforts to foreclose on mechanic's lien).

Mr. Fried has already discussed at great length why the cases relied upon by the District Court in barring the instant action on the basis of res judicata are distinguishable from the matter at hand (Brief at 29-42), and will only touch upon these cases again briefly.

For one, contrary to Defendants' contentions ("Opp. at 29), in <u>Woods v. Dunlop Tire Corp.</u>, this Court <u>did</u> take into account the extraordinary length of time it took the plaintiff to assert her Title VII claims in court from when she first could have, *i.e.*, ***five years*** after she could have obtained a Right to Sue letter from the EEOC, and more than ***two and a half years*** after her first suit was dismissed. 972 F.2d 36, 38 (2d Cir. 1992). Indeed, the Court explicitly stated that "[u]nder the circumstances revealed, [it] found no reason to excuse Woods' failure to take these minimal steps necessary to preserve" her claims, *i,e,* by seeking a stay of her first filed action pending the completion of the administrative proceedings, or by moving to amend her complaint after receiving a "Right to Sue" from the EEOC. <u>Id.</u> at 41. The inexcusable length of time that plaintiff in <u>Woods</u> waited to bring forth her claims were the very "circumstances" that the Court found exceptional, which is a drastic contrast to the circumstances in the instant action wherein Mr. Fried exhibited no delay, but rather obtained a release of jurisdiction from the

20

CHRO and then brought his CFEPA claims in court at the earliest instances. (See Brief at 33-34). As such, the District Court's reliance on <u>Woods</u> was misplaced.[7]

Likewise, contrary to Defendants' assertions, the District Court also erred by relying heavily on <u>Menella v. Office of Court Admin.</u>, 1998 WL 650816, 164 F.3d 618 (2d Cir. 1998) (SUMMARY ORDER). As noted in Mr. Fried's moving brief (see Brief at 36-39), <u>Mennella</u> is highly distinguishable from this matter, as: (1) plaintiff in <u>Mennella</u> never even obtained a "Right to Sue" from the EEOC as to his Title VII claims, which in and of itself would justify dismissal of his second filed suit; (2) plaintiff in <u>Mennella</u> could have amended the complaint in his first filed action prior to its dismissal to include ADEA claims *as of right*, yet inexplicably failed to do so; and (3) unlike Mr. Fried, plaintiff in <u>Mennella</u> inexplicably sat on his rights to bring ADEA and Title VII claims, which had been cleared to be brought in court for ***more than a year*** before plaintiff finally attempted to assert them in a subsequent suit. As such, the sluggish actions of the plaintiff in <u>Mennella</u> were directly opposite that of Mr. Fried's, rendering it an error for the District Court to so profoundly rely on <u>Mennella</u> in reaching its decision.

---

[7]    Other courts have also read this Court's opinion in <u>Woods</u> as taking exception to the exorbitant amount of delay displayed by the plaintiff in bringing her civil rights claims in court, particularly when <u>Woods</u> is read in conjunction with this Court's subsequent opinion in <u>Devlin v. Transp. Commc'ns Int'l Union</u>, 175 F.3d 121 (2d Cir. 1999). <u>See Wilkes v. Wyoming Dep't of Employment Div. of Labor Standards</u>, 314 F.3d 501, 506, n.2 (10th Cir. 2002) (noting that the <u>Devlin</u> court, in part, "distinguished its holding in <u>Woods</u> based on the fact that the plaintiffs brought their second suit in <u>Devlin</u> only eleven months after bringing the first suit.").

In addition, the District Court's reliance on <u>Barnes v. Royal Health Care</u> <u>LLC</u>, 357 Fed.Appx. 375 (2d Cir. 2009) (SUMMARY ORDER) was also misplaced, and Defendants' contentions that the actions of the plaintiff in <u>Barnes</u> do not differ from Fried's action are without merit.  In <u>Barnes</u>, the plaintiff received a "Right to Sue" letter from the EEOC at a time when he could have amended his complaint in an already filed action against Defendants *as of right* in order to include his Title VII claims.  However, instead of doing this, plaintiff in <u>Barnes</u> filed a second separate suit asserting his Title VII claims, and proceeded to prosecute two simultaneous actions against the same defendants.  After the plaintiff's first filed case was dismissed at the summary judgment stage, his second case alleging Title VII claims was subsequently dismissed on res judicata grounds.

Contrary to what Defendants would like the Court to believe, Mr. Fried did not simultaneously litigate two actions against Defendants like the plaintiff in <u>Barnes</u>, nor did Mr. Fried have an opportunity to fully and fairly litigate his CFEPA claims in the New York Action.  There was no obstacle for the plaintiff in <u>Barnes</u> in bringing all his claims in one more action.  In contrast, Mr. Fried received a release of jurisdiction of his CFEPA claims (and thus the mere ability to lawfully assert them in court) at the earliest instance it could be obtained, which, unfortunately, was weeks after summary judgment was granted on all but a lone ADEA retaliation claim (including on all of his NYCHRL age discrimination

claims on a non-merits adjudication).  Mr. Fried then chose to simply ask the District Court below to answer one yet unanswered question, touching upon a discreet issue of Connecticut's civil rights law, which the District Court sitting in Connecticut was ostensibly well-equipped to determine.  As such, Mr. Fried's actions stand in stark contrast to those dilatory and wasteful actions of the plaintiff in <u>Barnes</u>, rendering <u>Barnes</u> inapposite to the instant action, and an error for the District Court to have relied upon in dismissing Mr. Fried's suit.

## VII. DEFENDANTS HAVE PUT FORTH A FICTIONALIZED ACCOUNT OF THE FACTS BY MAKING NUMEROUS ALLEGATIONS DEVOID OF SUPPORT IN THE <u>RECORD.</u>

Lastly, it is astounding that, after "almost three years" of litigation," (Opp. at 36), Defendants continue to make false and insincere factual assertions to the Court that are either not supported by the record or do not contain a citation to the record. For example, Defendants' Brief falsely states that:

I. "The Investment Memo, setting forth the prospect of CHS's purchase of LVI, expressly indicated that the sale of LVI to CHS was conditioned on Fried's retirement from the management of LVI.  (A-110.)  This understanding was also documented in the agreement between Fried and LVI dated November 16, 2005 (the "November Agreement.) (A-17; A-120-121)." (Opp. at 6-7)

- There is simply no support for Defendants' assertion that any sale of LVI to CHS was conditioned on Fried's retirement.  In fact, there is no mention whatsoever of any "retirement" by Mr. Fried in the "Investment Memo" Defendants cite (A-110), nor in the "November Agreement." (A-120-122).  In reality, prior to the sale of LVI, at both Mr. Fried's request and at the consent of the then Board, Mr. Fried

23

undertook a search for a new President and CEO who could help expand LVI to a billion dollar generating company.  (A-695-697).  CHS was fully advised of this prior to the sale, and agreed that Mr. Fried should continue the search for a President and CEO after the completion of the sale.  (See A-110 ("This transition [of Fried to an active chairman position] was planned and announced prior to initiating the sale process.")).  Contrary to what Defendants would like the Court to believe, Mr. Fried's alleged "retirement" (which itself is contrived fiction) played no part in the search for a new CEO/President at any point in Mr. Fried's tenure with LVI.

II.   "On October 14, 2010, prior to the scheduled meeting, Fried sent State an unsolicited email listing responsibilities he purportedly had handled as Chairman under McNamara.  (A-84-85; A-171-172.)" (Opp. at 10)

- Yet another half-truth, as Mr. Fried's email to State was not "unsolicited," but rather sent immediately after a telephone conversation Mr. Fried and State had, during which Mr. Fried offered to send State an email listing the duties he had as Chairman under McNamara, which would provide a guide for State as he deliberated what he would and would not like Mr. Fried to do for him.  State did not object to receiving this list of Chairman duties.  (A-786.15-16)  As such, in no way was this list "unsolicited."

III.   "At the meeting, State explained that he believed most of his duties on Fried's list would be more appropriately handled by either him or other LVI management and staff members.  (A-19 at ¶ 25; A-86-88; A-144.)" (Opp. at 11)

- Another half-truth put forth by Defendants.  In reality, at the referenced October 19, 2010 meeting, State told Mr. Fried that he intended to take away all of Mr. Fried's duties and reassign them to others.  (A-637-638).  When Fried asked State why State had made this decision, State responded bluntly:

  ➢ "Burt, you're 71 years of age, how much longer do you expect to work?" (A-768.46).

Fried was not told that he was being terminated because of his performance.  Nor was Fried told that he was being terminated because of any political differences.  Pure and simple, Fried was told that he was being terminated because of his age.

IV.    "Despite State's overtures, and despite his own prior assurances, Fried refused to discuss any transition of his role." (Opp. at 12)

- Glaringly, there is no citation to the record to support this false statement.  In reality, at no time did State offer Mr. Fried any transitional role at LVI, nor did he ever offer Mr. Fried the opportunity to take on different duties as Chairman.  State's only action was to take away <u>ALL</u> of Mr. Fried's duties without any replacing.

V.    "Thereafter, in a 30 minute speech, Fried heatedly objected to any restructuring of his role and complained of State's alleged comment at their October 19, 2010 meeting.  (A-43-47.)" (Opp. at 13).

- Another half-truth by Defendants, as there simply was no "restructuring" of Mr. Fried's role, but rather a termination motivated by age discrimination, to which Mr. Fried rightfully objected.

As such, it is readily apparent that Defendants need to resort to glaring misrepresentations of the factual record in order to convince the Court that Mr. Fried's civil rights claims are not worthy of being heard on their merits.  Accordingly, this Court should disregard all of Defendants' misleading assertions listed above, as well as those others that do not contain a citation to the record.

25

## **CONCLUSION**

For the reasons set forth herein and in the Brief for Plaintiff-Appellant, Mr. Burton T. Fried respectfully requests that this Court reverse the District Court's grant of summary judgment and remand this case to the District Court for further proceedings, and grant such other and further relief that this Court deems just and proper.

Dated: October 23, 2013
      New York, New York

                    Respectfully submitted,

                    THOMPSON WIGDOR LLP

By:     s/Douglas H. Wigdor
                 Douglas H. Wigdor
                 Tanvir H. Rahman

                 85 Fifth Avenue
                 New York, New York 10003
                 Telephone:   (212) 257-6800
                 Facsimile:    (212) 257-6845
                 dwigdor@thompsonwigdor.com
                 trahman@thompsonwigdor.com

                 *Counsel for Plaintiff-Appellant*
                 *Burton T. Fried*

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Certificate of Compliance With Type-Volume Limitation, Typeface
Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains **6,992** words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using Microsoft®

Office Word 2010 in Times New Roman font using a 14-point font size.

Dated:  October 23, 2013
      New York, New York

                                  Respectfully submitted,

                                  THOMPSON WIGDOR LLP

                  By:        s/Tanvir H. Rahman
                                Douglas H. Wigdor
                                Tanvir H. Rahman

                                85 Fifth Avenue
                                New York, New York 10003
                                Telephone:  (212) 257-6800
                                Facsimile:   (212) 257-6845
                                dwigdor@thompsonwigdor.com
                                trahman@thompsonwigdor.com

                                *Counsel for Plaintiff-Appellant*
                                *Burton T. Fried*